LISA HILL FENNING (SBN 89238)
HARRY GARNER (SBN 254942)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone: 213.243.4000
Facsimile: 213.243.4199
Lisa.Fenning@aporter.com
Harry.Garner@aporter.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:09-bk-34714 |
| DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., a California non-profit, public benefit corporation, | Chapter 11 |
| Debtor. | **EMERGENCY MOTION OF DEBTOR FOR ORDER EXTENDING TIME FOR FILING SCHEDULES AND STATEMENT; MEMORANDUM IN SUPPORT THEREOF** |
| Tax I.D. 95-1903935 | HEARING<br>Date: September __, 2009<br>Time:<br>Place: Courtroom 1475<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

LA567982

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, ANY ALLEGED SECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, THE UTILITY COMPANIES IDENTIFIED HEREIN, AND OTHER PARTIES IN INTEREST:**

Downey Regional Medical Center-Hospital, Inc., the debtor and debtor-in-possession in the above captioned case (the "**Debtor**" or "**Hospital**"), hereby moves this Court for entry of an order, pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 1007-1(e), granting Debtor additional time to file Schedules and Statement (as defined below) required by 11 U.S.C. § 521 and Bankruptcy Rule 1007 (the "**Motion**").

Debtor requests, pursuant to Local Bankruptcy Rules 2081-1(a)(2) and 9075-1(a), that the Court enter an order approving this Motion on less than 48 hours notice, upon timely notice to the Office of the United States Trustee ("**UST**"), creditors holding the twenty largest unsecured claims, Debtor's alleged secured creditors, and other parties in interest (collectively, the "**Interested Parties**").

Debtor requires a hearing on less than regular notice due to the short amount of time the Debtor has to file its Schedules and Statement. The current deadline to file them, or to get Court approval for an extension, is September 29, 2009. Given the proximity of that deadline and the complexity of the case, Debtor believes that an emergency hearing on the Motion is justified.

This Motion is based on the Memorandum of Points and Authorities below (the "**Memorandum**"); the Declaration of Robert E. Fuller in Support of the Debtor's Chapter 11 Petition and First Day Motions (the "**Fuller Declaration**"), filed with the Court concurrently herewith; and the arguments, evidence, and representations that may be presented at or prior to the hearing on this Motion.

Pursuant to LBR 9075-1(a)(7), if you wish to oppose this Motion you may present a written or oral response to the Motion at the time of the hearing on the Motion.

**WHEREFORE** Debtor respectfully requests that the Court enter an order, pursuant to Bankruptcy Rule 1007(c) and Local Bankruptcy Rule 1007-1(e), extending the deadline to file the

Schedules and Statement by thirty (30) days from September 29, 2009, the date such Schedules and Statement are otherwise required to be filed pursuant to Bankruptcy Rule 1007(c), through and including October 29, 2009, without prejudice to Debtor's ability to request additional time should it become necessary.

Dated: Los Angeles, California
September 14, 2009

Respectfully Submitted,

 /s/  Lisa Hill Fenning
Lisa Hill Fenning (SBN 89238)
Harry Garner (SBN 254942)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:   213.243.4000
Facsimile:    213.243.4199

*Proposed Counsel to the Debtor and Debtor-in-Possession*

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | Downey Regional Medical Center-Hospital, Inc., the debtor and debtor-in-possession in the |
| 3 | above captioned case (the "**Debtor**" or "**Hospital**"), hereby moves this Court (the "**Motion**") for |
| 4 | entry of an order, pursuant to Bankruptcy Rule 1007(c) and Local Bankruptcy Rule 1007-1(e), |
| 5 | extending the deadline to file the schedules of assets and liabilities and statement of financial affairs |
| 6 | by thirty (30) days from September 29, 2009, the date such filings are otherwise required to be filed |
| 7 | pursuant to Bankruptcy Rule 1007(c), through and including October 29, 2009, without prejudice to |
| 8 | Debtor's ability to request additional time should it become necessary. In support of the Motion, |
| 9 | Debtor relies upon and incorporates by reference the Declaration of Robert E. Fuller in Support of |
| 10 | the Debtor's Chapter 11 Petition and First Day Motions (the "**Fuller Declaration**"), filed with the |
| 11 | Court concurrently herewith. In further support of the Motion, Debtor, by and through its |
| 12 | undersigned counsel, respectfully states as follows: |
| 13 | **I. JURISDICTION AND VENUE** |
| 14 | 1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. |
| 15 | This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this |
| 16 | District is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein |
| 17 | are Bankruptcy Rule 1007(c) and Local Bankruptcy Rule 1007-1(e). |
| 18 | **II. PROCEDURAL STATUS** |
| 19 | 2. On September 14, 2009 (the "**Petition Date**"), Debtor commenced a case (the |
| 20 | "**Chapter 11 Case**") by filing a petition for relief under chapter 11 of the of title 11 of the United |
| 21 | States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "**Bankruptcy Code**"). |
| 22 | 3. Debtor continues to operate its business and to manage its property as a debtor and |
| 23 | debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or |
| 24 | examiner has been appointed in Debtor's Chapter 11 Case. |
| 25 | 4. No creditors' committee has been appointed in this Chapter 11 Case by the United |
| 26 | States Trustee. |

LA567982

### III. BACKGROUND

#### A. The Business of the Hospital

5. The Hospital is a nonprofit general acute care and teaching hospital licensed for 199 beds located in Downey, California. The Hospital currently operates 181 staffed inpatient beds, including an intensive care unit, a neo-natal intensive care unit for newborns with special health issues, a birth center, and definitive observation units, besides general medical-surgical beds. It services approximately 14,000 inpatients per year in all services. The Hospital's average length of stay is less than 4 days on a very acute population, making it one of the most efficient in the state.

6. The Hospital offers a wide variety of clinical services and provides virtually all clinical services of a major tertiary university hospital except for organ transplants. The Hospital has 11 operating rooms, and a very busy surgical practice. It offers same day surgeries, and specializes in open heart surgery, general surgery, orthopedic surgery, and neurosurgery. It operates on over 7,000 patients annually. The Hospital also has numerous specialty outpatient services, seeing over 80,000 outpatients annually, including non-invasive cardiology, radiology, endoscopy, and physical therapy.

7. The Hospital also has an emergency room of 22 beds. The emergency room is not designated as a trauma unit, but it is equipped for and services trauma patients who are regularly brought to the Hospital in extremis or who come in via transportation other than ambulance. The emergency room services over 50,000 patients annually. Therefore, at about 2,500 patients per bed annually, it is one of the busiest in the area. The emergency room is burdened because since 2001 there have been four major emergency rooms closed on the I-105 corridor, including Martin Luther King Hospital, leaving only three remaining general emergency rooms in the area including the Hospital.[1]

#### B. The Causes of the Bankruptcy Filing

8. Although nominally profitable on an accrual basis, the Hospital has been forced to commence the Chapter 11 Case as a result of a liquidity crisis. This crisis has two primary causes.

---

[1] There is also a Kaiser Permanente Facility in the area, and although its emergency room is technically open to everyone, paramedic operators tend to take only Kaiser patients to this facility.

1  First, the Hospital has incurred substantial losses as a result of severe problems on the finance side
2  of its business (now largely corrected) due to defective charge capture practices and software billing
3  practices (the "**Charge Capture System Problems**") that resulted in the Hospital not collecting all
4  the revenues to which it would be entitled.  Second, the Hospital was incurring significant losses
5  due problems with respect to its "capitation" arrangements (the "**Capitation Program**") with
6  certain physician groups and health plans (the "**Capitation Program Problems**").  These losses
7  were so severe that the Hospital concluded it had to terminate the Capitation Program to staunch the
8  long-term hemorrhaging of cash, despite the short term cash flow interruption and claims that would
9  result.  The Hospital has taken steps to exit the Capitation Program and adopt a fee-for-service
10 model, but the exit costs are substantial.  The combination of the Charge Capture System and
11 Capitation Program Problems has left the Hospital with no cash reserves since March 2008.

12. 9. In essence, due to software and process failings, the Hospital's financial, billing and collections systems had failed to capture charges which led to incomplete bills for a significant portion of its services for nearly a decade, causing unrecoverable losses.  A cost-accounting problem caused the misallocation of costs to the capitation contracts, resulting in the Hospital's books showing a profit in capitation where none really existed.  These problems have been investigated, diagnosed, and continue to be remedied under the direction of a new chief executive officer, Kenneth Strople, who took the reins in 2007, Robert Fuller, the chief operating officer, and consultant Richard Yardley, the acting chief financial officer.  Given sufficient time to operate under a regime in which charges are properly captured, bills are complete when invoiced, and financial reports provide reliable real-time information, the Hospital should be able to repay its debts in full.

10. However, demands by certain creditors for immediate payment–and for payment of more than the Hospital believes it owes in some cases–prevented an orderly restructuring outside of bankruptcy and forced this filing.  Much of the pressure has come from the physician groups who have asserted claims in excess of $9 million against the Hospital related to the termination of the capitation contracts.

11. The exit from the Capitation Program created three distinct cash drains: (1) the tail of claims for services provided 'out-of-network' by other hospitals and health care providers, (2) the claims by the physician groups participating in the Capitation Program for risk-sharing profit splits, much of which is disputed by the Hospital (the "**Risk Share Claims**"), and (3) the transitional loss of cash occasioned by the change in business model out of capitation (where under the Hospital was paid up front, before services were rendered) to fee-for service (where under the Hospital is paid in arrears, typically up to 150 days following the rendering of services), some of which was eased by the $8.8 million in advances by the insurers who participated in the program. However, the Hospital does not have the financial capacity to bridge the costs of exiting capitation within the time frame being demanded by impacted parties. In short, this reorganization filing has resulted from demands made by parties who greatly benefitted from the Capitation Program while it was operational (the physicians), but who are now not patient enough to allow the Hospital to implement its new business model and return to financial stability before demanding payment.

12. The immediate problem that forced the Hospital to file this Case arose from an arbitration brought by one of the physician groups and the potential for the other two groups to follow suit. The physician groups are expected to assert claims for over $9 million.

13. Alliance Physicians Medical Group ("**Alliance**"), one of the physician groups, recently filed an arbitration in an attempt to collect their alleged 'risk share' profits from 2006 to 2008. In its arbitration, Alliance claimed it was owed up to $4.7 million or more. It sought to attach the Hospital's bank accounts in the fall of 2008. The arbitrator's award is imminent, and the Hospital believes that Alliance will seek immediate enforcement by attaching the Hospital's bank accounts.

14. The threat of attachments relating to the estimated $9 million of Risk Share Claims has scared off prospective lenders who would not want the loan proceeds intended for critically needed working capital to be diverted to paying historical disputed debts. Such a diversion of funds would shut down the Hospital. The automatic bankruptcy stay will protect the Hospital from the catastrophic interruption of its operations that would result from such an attachment.

## IV. RELIEF REQUESTED

15. Pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), Debtor is required to file (i) schedules of assets and liabilities; (ii) schedules of current income and expenditures; (iii) schedules of executory contracts and unexpired leases; and (iv) statements of financial affairs (the "**Schedules and Statement**").

16. By this Motion, Debtor seeks entry of an order, pursuant to Bankruptcy Rule 1007(c) and Local Bankruptcy Rule 1007-1(e), extending the deadline to file the Schedules and Statement by thirty (30) days from September 29, 2009, the date such Schedules and Statement are otherwise required to be filed pursuant to Bankruptcy Rule 1007(c), through and including October 29, 2009, without prejudice to Debtor's ability to request additional time should it become necessary.

## V. APPLICABLE AUTHORITY

17. Pursuant to Bankruptcy Rule 1007(c), Debtor must file its Schedules and Statement on the Petition Date or within fifteen (15) days thereafter. The Debtor's fifteen day period will expire on September 29, 2009.

18. Bankruptcy Rule 1007(c) authorizes the Court to grant Debtor additional time to file the Schedules and Statement provided that such extension is supported by cause. Similarly, Local Bankruptcy Rule 1007-1(e) provides that a request for such an extension must be supported by evidence demonstrating cause.

19. Debtor expects to have claims submitted from over 3,000 creditors. Given the size and complexity of its business operations, Debtor has not had a sufficient opportunity to gather all of the necessary information to prepare and file its Schedules and Statement, although considerable progress has been made.

20. Debtor has worked diligently and has made significant progress towards completing the Schedules and Statement, and intends to complete them as quickly as possible under the circumstances. Nonetheless, Debtor needs an extension to file the Schedules and Statement. This brief extension is necessitated due to the number of Debtor's creditors, the size and complexity of Debtor's business, and the limited staffing available to gather, process and complete the Schedules and Statement during the first few weeks after the Petition Date. Even with the assistance of Omni

Management, Inc., the proposed claims and noticing agent, many tasks must be handled by Debtor staff that know the accounting system and relevant data. The task of compiling and preparing accurate schedules and statement of affairs is daunting.

21. As demonstrated in its other first day motions, Debtor has been performing many critical tasks to position itself to maximize value for its creditors. Debtor and its professionals have devoted a substantial amount of time, energy and resources to, among other things, obtaining DIP financing, negotiating the terms of use cash collateral, preparing financial projections and analyses, preparing first-day motions and filings, preparing the creditor matrix, analyzing contracts and leases, and otherwise complying with its obligations as debtor in possession. The time required to perform these tasks has necessarily limited the amount of time that Debtor has been able to commit to preparing the Schedules and Statement.

22. In light of the amount of work required to complete the Schedules and Statement, the size of Debtor's case, the substantial burdens already imposed on management by the commencement of this Chapter 11 Case, the limited number of employees available to collect the required information, the competing demands upon such employees, and the time and attention Debtor must devote to the continuing operation of Debtor's business, Debtor respectfully submits that cause exists to extend the deadline by thirty (30) days, through and including October 29, 2009. The requested extension will ensure that Debtor's Schedules and Statement are accurate and will avoid the need for Debtor to file subsequent amendments.

## VI. CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Los Angeles, California
September 14, 2009

Respectfully Submitted,

/s/ Lisa Hill Fenning
Lisa Hill Fenning (SBN 89238)
Harry Garner (SBN 254942)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone: 213.243.4000
Facsimile: 213.243.4199

*Proposed Counsel to the Debtor and Debtor-in-Possession*