1  Jeffry A. Davis (SBN 103299)
   Joseph R. Dunn (SBN 238069)
2  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
   3580 Carmel Mountain Road, Suite 300
3  San Diego, CA 92130
   Tel:   858 314-1500
4  Fax:   858 314-1501
   jdavis@mintz.com
5  jdunn@mintz.com

6  William W. Kannel (*Admitted Pro Hac Vice*)
   Charles W. Azano (*Admitted Pro Hac Vice*)
7  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
   One Financial Center
8  Boston, MA 02111
   Tel:   617-542-6000
9  Fax:   617-542-2241
   wkannel@mintz.com
10 cwazano@mintz.com

11 Attorneys for Wells Fargo Bank, National Association as Indenture Trustee

12

13 Lisa Hill Fenning (SBN 89238)
   Harry Garner (SBN 254942)
   ARNOLD & PORTER LLP
14 777 South Figueroa Street, 44th Floor
   Los Angeles, California 90017
15 Telephone:  213.243.4000
   Facsimile:   213.243.4199
16 Lisa.Fenning@aporter.com
   Harry.Garner@aporter.com
17
   Proposed Counsel to the Debtor and Debtor-in-Possession
18

19          UNITED STATES BANKRUPTCY COURT

20          CENTRAL DISTRICT OF CALIFORNIA

21

22 In re                              Case No.  09-bk-34714-BB

23 DOWNEY REGIONAL MEDICAL            Chapter 11
   CENTER - HOSPITAL, INC.
24                                    **ORDER REGARDING USE OF**
              Debtor.                 **CASH COLLATERAL AND**
25                                    **ADEQUATE PROTECTION**

26                                    Date:       October 13, 2009
                                      Time:       2:00 p.m.
27                                    Place:      Courtroom 1475

28

FILED & ENTERED

OCT 16 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

CHANGES MADE BY COURT

This Order Regarding Use of Cash Collateral and Adequate Protection (this "Order") is entered upon the *Emergency Motion of Downey Regional Medical Center Hospital, Inc. for Entry of an Interim Order Regarding Use of Cash Collateral and Adequate Protection* (the "Motion") and upon terms agreed to by and among Downey Regional Medical Center-Hospital, Inc. (the "Debtor"), the following affiliates of Debtor:  Downey Regional Medical Center, Inc., DRMC Properties, Inc., and DRMC Insurance Services, Inc. (collectively, the "Affiliates"), and Wells Fargo Bank, National Association, as indenture trustee (the "Indenture Trustee"), for those certain $68,845,000 California Health-Facilities Financing Authority Hospital Revenue Bonds (Downey Community Hospital), Series 1993 (the "Bonds").

Upon the terms of the Motion, and the stipulation, acknowledgement and agreement of Debtor, the Affiliates and the Indenture Trustee, the Court makes the following findings:

A.     On September 14, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, Debtor has operated its business and managed its property as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108 of the Bankruptcy Code.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

C.     On September 18, 2009 this Court entered the Interim Order Regarding Use of Cash Collateral and Adequate Protection (Dkt. No. 42) (the "Interim Cash Collateral Order") which Interim Cash Collateral Order was served by Debtor on all required parties pursuant to paragraph 33 thereof and which notice the Court finds to be appropriate, due and sufficient;

D.     By that certain Order Regarding Stipulation to Continue Hearing Dates and Deadlines for Opposition and Reply Papers Re: Application to Retain Investment

Banker [Dkt. No. 6], Motion For Approval of DIP Financing [Dkt. No. 10] and Motion For Authority Use Cash Collateral [Dkt. No. 11] the Court continued the final hearing on use of cash collateral to October 13, 2009 at 2:00 p.m. and continued the objection and response deadlines for certain parties.

E.    Whereas the Official Committee of Unsecured Creditors (the "Committee") and Siemens Medical Solutions USA, Inc., ("Siemens") filed certain objections to the Motion.

### The Bonds

F.    The Bonds were authorized and issued in the aggregate principal amount of $68,485,000 by the California Health Facilities Financing Authority (the "Authority"), pursuant to a certain Indenture dated as of August 1, 1993 (the "Original Indenture") as amended by, among other things, the First Supplemental Indenture, dated as of February 26, 2004 (the "Supplemental Indenture", together with the Original Indenture, the "Indenture"), entered into between the Authority and the Indenture Trustee.

G.    A portion of the initial proceeds of the Bonds was used to create a Bond Reserve Account and, pursuant to the terms of the Indenture the Indenture Trustee holds the Bond Reserve Account and other funds related to the Bonds (collectively, the "Bond Funds").  As of September 14, 2009, the balance of the Bond Funds was $6,785,359.53.

H.    Simultaneous with the issuance of the Bonds, the Authority loaned proceeds of the Bond issuance to Debtor pursuant to a Loan Agreement, dated as of August 1, 1993, between the Authority and Debtor (the "Original Loan Agreement"). The Loan Agreement was amended by the First Amendment to Loan Agreement dated as of February 26, 2004 (the "First Amendment," together with the Original Loan Agreement, the "Loan Agreement"). The Indenture and the Loan Agreement with all other documents related thereto are hereinafter referred to as the "Bond Documents").

-3-

I.      As security for the payment of all amounts due under the Loan

Agreement, the Debtor granted to the Authority, inter alia, (i) a first priority security

interest on Gross Operating Revenues ("Gross Receipts"), which are its accounts

receivable, revenues, income and receipts, and rights to receive the same, as set forth

more particularly in the Bond Documents, and money received or receivable by or on

behalf of the Corporation (defined as Debtor) in respect of any one or more of the

following, whether now existing or hereafter arising (in each case, to the extent that

the grant of a security interest therein is subject to Division 9 of the California

Uniform Commercial Code): (a) Accounts (defined as in the California Uniform

Commercial Code); (b) to the extent not constituting Accounts: (i) fees paid or

payable by or on behalf of users of the Corporation's health care facilities, (ii) leases,

subleases or licenses of any interest of the Corporation in any real or tangible personal

property and all rentals or license fees payable thereunder, (iii) proceeds of medical or

hospital insurance or indemnity or reimbursement programs or agreements in respect

of goods and services provided by the Corporation to users of the Corporation's health

care facilities, (iv) interest income, dividends and other distributions in the nature of

earnings on investments, to the extent that such interest income and other earnings

may be subjected to a security interest under applicable law and in accordance with

any restrictions placed upon any gift, grant, bequest, donation or contribution to which

such interest income or other earnings relate, and (v) to the extent not included in the

preceding clause (a) or in the preceding subclauses (i) through (iv), revenues derived

from the operations of the Corporation; and (c) all Proceeds of any of the foregoing,

including, without limitation, all negotiable instruments received in full or partial

settlement of any of the foregoing, but excluding, unless delivered to and held by the

Indenture Trustee pursuant to the Indenture: (x) gifts, grants, bequests, donations, and

contributions to the Corporation, (y) all "investment property" (as defined in the

California Uniform Commercial Code as in effect on the date of the First

Amendment) not (i) described in subclause (iv) of the preceding clause (b) or (ii)

constituting Proceeds of property described in such subclause (iv), and (z) Proceeds (including Proceeds in the form of Accounts) of the property described-in the foregoing clauses (y) and (z) (collectively, the Gross Receipts together with the Bond Funds, the "Prepetition Bond Collateral").

J.      Pursuant to the Bond Documents, all of the rights, remedies and benefits of the Authority under the Loan Agreement, including all of the security interests and rights and remedies granted by Debtor to the Authority in the Prepetition Bond Collateral, were assigned to the Indenture Trustee, subject to the retention of certain rights by the Authority.  The Indenture Trustee has the sole right to exercise the rights and benefits granted to the Authority under the Bond Documents.

K.      As of September 14, 2009, Debtor was indebted under the Bond Documents in the principal amount of $24,545,000.00, plus $466,525.45 in interest, with interest accruing at a per diem of $3,920.38 (the "Bond Claim").  The Bond Claim does not include any unliquidated, accrued and unpaid fees and expenses of the Indenture Trustee and its counsel incurred through the Petition Date in the approximate amount of $95,000 (the "Prepetition Expense Claim").  Such amounts, when liquidated, shall be in addition to the amount of the Bond Claim.

L.      In March 2009, Debtor and Apollo Health Street, Inc. ("Apollo") entered into a settlement agreement that provided for termination of the parties' contract and payment by Debtor of about $2.3 million to resolve disputes about amounts due to Apollo (the "Apollo Settlement").  The Apollo Settlement had a balance as of September 14, 2009 of approximately $1.2 million.  The Apollo Settlement also purported to grant Apollo a first-priority security interest (the "Prepetition Apollo Lien") in certain of Debtor's accounts receivable (the "Prepetition Apollo Collateral"). Debtor did not obtain the consent of the Indenture Trustee before granting the Prepetition Apollo Lien.

**Use of Cash Collateral and Need for Adequate Protection**

M.     The Indenture Trustee does not consent to the use of cash collateral except upon the terms and conditions of this Order. In lieu of giving the Indenture Trustee relief from stay, Debtor wishes to provide adequate protection of the liens and security interests of the Indenture Trustee in cash collateral, and the Prepetition Apollo Lien, as set forth in this Order.

N.     The terms of this Order are fair and commercially reasonable, reflect Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.     <u>Disposition</u>.  The Motion is granted on the terms set forth in this Order. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, including the Objections of the Committee and Siemens are overruled on the merits.

2.     <u>Authorization to Use Cash Collateral</u>.  Until the occurrence of a Termination Event (as hereinafter defined), Debtor is authorized to use as cash collateral (as defined in Section 363 of the Bankruptcy Code) any revenues from Gross Receipts (the "<u>Cash Collateral</u>"), *provided*, *however*, (i) that such use of Cash Collateral shall be limited solely to the securing of advances under, and payment of interest, fees, expenses and advances an d other DIP Obligations as defined in the "Final DIP Order (A) Authorizing Debtor to Obtain Postpetition Financing; (B) Granting Superpriority Expense Claims and Security Interests; and (c) Granting Other Relief Under 11 U.S.C. §§  105, 361, 363,363, and 363, F.R.B.P. 2002 and 4001; and LBRS 2002-1 and 4001-2" (the "DIP Financing Order") for the purposes of funding Permissible Uses as defined in the DIP Financing Order in the amounts and categories listed on, and in accordance with, the Budget attached hereto as Schedule A, (ii) subject, however, to the Variance as provided in the DIP Financing Order; and (iii) provided that Debtor shall be in compliance with the EBITDA Test and the Cash Flow

to Expenditure Test set forth in the DIP Financing Order or any subsequent order concerning the extension of debtor in possession financing to Debtor or the use of Cash Collateral by Debtor. Except as set forth in paragraph 18(c) hereof, upon the occurrence of a Termination Event, the Debtor may continue to use Cash Collateral for the purposes of securing existing and future advances under, and paying the DIP Loan, provided that the Debtor shall cease using Cash Collateral immediately upon Full Payment in the DIP Loan (as that term is defined in the DIP Credit Agreement which was approved under the DIP Financing Order).

3.      Exclusion from Cash Collateral.  Cash Collateral shall not include (i) any cash, securities or funds on deposit with the Indenture Trustee, such as the Bond Funds, and (ii) proceeds of any lease, sublease license or sale outside the ordinary course of business of any of the Debtor's Assets ("Extraordinary Proceeds").  Nothing in this Order or in the DIP Financing Order or any subsequent order concerning the extension of debtor in possession financing to Debtor or the use of cash collateral by Debtor shall entitle Debtor to use any portion of the Bond Funds except as specifically permitted by the Bond Documents and no lien or other interest may be granted in the Bond Funds to any third party including but not limited to the DIP Agent (as that term is defined in the DIP Financing Order) or any other debtor in possession lender. Extraordinary Proceeds shall be subject to the Mandatory Prepayments provisions of the DIP Financing Order.

4.      Prohibited Use of Cash Collateral.  Notwithstanding anything herein to the contrary, no proceeds of Cash Collateral or advances from the DIP Agent shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Bond Claim or any liens or security interests with respect thereto, or any other rights or interests of the Indenture Trustee therein, or in asserting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code against the Indenture Trustee or

any holder of the Bonds, including with respect to payments made pursuant to the Bond Documents; (ii) asserting any claims or defenses or causes of action against the Indenture Trustee or any holder of the Bonds or their respective agents, affiliates, subsidiaries, directors, office, representatives, attorneys or advisors; (iii) preventing, hindering or otherwise delaying the Indenture Trustee's assertion, enforcement or realization on the Prepetition Bond Collateral or Postpetition Bond Collateral; (iv) seeking to modify any of the rights granted to the Indenture Trustee hereunder; (v) paying any amounts on account of claims arising before the Petition Date except as set forth herein; (vi) invalidating, setting aside, avoiding or subordinating, in whole or part, any of the Indenture Trustee's liens on any Prepetition Bond Collateral; or (vii) modifying the Indenture Trustee's or any holder of the Bonds rights hereunder. Notwithstanding the foregoing, no more than $10,000 of the Cash Collateral may be made available to reimburse the Committee upon appropriate application therefor, for the Committee's fees and expenses including the fees and expenses of Committee Counsel in investigating the validity, priority, perfection and enforceability of the Indenture Trustee's liens in the Prepetition Bond Collateral.

5.    <u>Amendment or Extension of Use of Order.</u>  This Order shall not be amended without the express written consent of the Indenture Trustee, which shall be at its sole discretion.  Notice of any such amendment to this Order shall be filed with the Court and served on all parties entitled to notice in accordance with Fed R. Bankr. Proc. 4001(b) and Local Bankruptcy Rule 4001-2 or 2002-2(a)(4) including, but not limited to, the Committee.  Any such party may object to such amendment and request a hearing before the Bankruptcy Court.  If no such objection is made within 10 days of such notice, such amendment to this Order shall become final.

6.    <u>Amendment or Extension of Use of Cash Collateral.</u>  The Budget shall not be amended without the express written consent of the Indenture Trustee and the DIP Agent, which shall be at their respective sole discretion.  Any amendment or

modification of the Budget shall not require approval by the Bankruptcy Court to be effective.

### Adequate Protection Provided to the Indenture Trustee

7.      Adequate Protection Payments to the Indenture Trustee.  In consideration for the use of Cash Collateral and in consideration of the Indenture Trustee's consent to subordination of its liens pursuant to the DIP Financing Order, on and after the Petition Date, Debtor shall make adequate protection payments in an amount equal to the regularly scheduled, non-default amounts due to be paid by Debtor under the Bond Documents, including, without limitation, any amounts due for the payment of fees and expenses of the Indenture Trustee and its professionals, including the Prepetition Expense Claim (the "Adequate Protection Payments").  The fees and expenses incurred by the Indenture Trustee including the Indenture Trustee's own fees and expenses and those of it professionals shall be payable pursuant to Bankruptcy Code Section 506(b) and shall not be subject to the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code and shall be paid by Debtor without further order of the Court within 10 (ten) days of delivery to Debtor and the Committee of any invoices therefor which invoices may be redacted with respect to privileged matters. In the event of any objection to such fees by the Committee, the Committee shall provide to counsel to the Indenture Trustee, with a copy to counsel to the Debtor, a written statement stating with particularity the particular time or expense entry to which it objects and reasons therefore, or the objection may be disregarded.  If the Committee asserts such an objection the Debtor shall still timely pay all amounts which are not subject to particular objection and any remaining amounts shall be resolved by agreement between the Committee and the Indenture Trustee or by order of the Court upon application by either the Trustee or the Committee. The amounts payable by the Debtor for such fees incurred by the Indenture Trustee and its professionals in any one month shall not exceed $50,000 exclusive of expenses which shall also be paid within such period, provided that any unused amount of the $50,000

cap with respect to fees in any month may be rolled over to any subsequent month to increase such cap with respect to fees and provided further that nothing herein shall prevent the Indenture Trustee from applying to the court for any additional fees or prevent the Indenture Trustee from asserting any additional right it has to recover any fees and expenses under the Bond Documents. For the avoidance of doubt, nothing herein shall be construed to require DIP Agent to make adequate protection payments to the Indenture Trustee after an Event of Default under the DIP Financing Order, although the DIP Agent shall be permitted to do so.

8.   Lien on Certain Assets of Affiliates.  As additional adequate protection and in consideration for the use of Cash Collateral by Debtor and in consideration of the Indenture Trustee's consent to subordination of its liens pursuant to the DIP Financing Order, the Affiliates shall issue guarantees of the Bond Debt (the "Affiliate Guaranties"), which guaranties shall be secured by a first priority mortgage, lien and security interest in all real and personal property interests held by DRMC Properties, Inc. (the "Affiliate Lien"), subject only to prior valid and perfected liens, if any, existing as of the Petition Date.  Unless otherwise released with the Indenture Trustee's express written consent, the Affiliate Lien shall remain in full force and effect until the occurrence of the effective date of a plan of reorganization in the above-captioned case in which any senior exit financing by Debtor is less than or equal to $5 million in which event the Affiliate Lien shall be terminated and released.

9.   Rollover Lien.  As additional adequate protection and in consideration for the use of Cash Collateral by Debtor and in consideration of the Indenture Trustee's consent to subordination of its liens and claims pursuant to the DIP Financing Order on and after the Petition Date, the Indenture Trustee shall have a valid, perfected and enforceable continuing replacement lien and security interest (the "Rollover Lien") to the extent of any diminution in the Prepetition Bond Collateral in all assets of Debtor existing on or after the Petition Date of the same type as the Prepetition Bond Collateral, together with the proceeds, rents, products and profits

-10-

thereof, whether acquired or arising before or after the Petition Date, to the same

extent, validity, perfection, enforceability and priority of the liens and security

interests of the Indenture Trustee in the Prepetition Bond Collateral as of the Petition

Date.  The Rollover Lien shall be subject to only (i) prior valid and perfected liens

existing as of the Petition Date and (ii) the liens and claims granted to the DIP Agent

pursuant to the DIP Financing Order.

10. <u>Supplemental Lien</u>.  As additional adequate protection and in

consideration for the use of Cash Collateral by Debtor and in consideration of the

Indenture Trustee's consent to subordination of its liens and claims pursuant to the

DIP Financing Order, the Indenture Trustee shall have as of the Petition Date a valid,

perfected and enforceable continuing supplemental lien and security interest (the

"<u>Supplemental Lien</u>") in all of the assets of Debtor of any kind or nature whatsoever

within the meaning of Section 541 of the Bankruptcy Code, whether acquired or

arising prepetition or postpetition, together with all proceeds, rents, products, and

profits thereof.  The Supplemental Lien shall be subject to only (i) prior, valid and

perfected liens existing as of the Petition Date and (ii) the liens and claims granted to

the DIP Agent pursuant to the DIP Financing Order.

11. <u>Superpriority Claim</u>.  As additional adequate protection and in

consideration for the use of Cash Collateral by Debtor and in consideration of the

Indenture Trustee's consent to subordination of its liens pursuant to the DIP Financing

Order – but notwithstanding anything herein that may be contained to the contrary,

solely to the extent necessary to satisfy any deficiency that may remain after resort to

any collateral that may be available to satisfy its claims – the Indenture Trustee shall

have a super-priority administrative expense claim pursuant to Bankruptcy Code

Section 507(b) against all assets of the estate including, but not limited to (i) the

causes of action and proceeds therefrom of Debtor or its estate under Sections 544,

545, 547, 548, 549, 550 and 724(e) of the Bankruptcy Code and (ii) without prejudice

to any argument that any such interest is not part of the Postpetition Bond Collateral,

the Debtor's interests, rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Post-Petition Bond Collateral (including, but not limited to, the Debtor's interest in the lease from the City of Downey to the Debtor and the leasehold improvements thereon), in each case with priority over any and all administrative expenses, diminution claims and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever (the "Superpriority Claims") including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of Debtor, any successor trustee or any creditor, in this Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of Debtor and all proceeds thereof.  The Superpriority Claim shall be subordinate only to the Superpriority Claim granted to the DIP Agent in the DIP Financing Order.

      12.   <u>Additional Liens</u>.  The Rollover Lien, the Supplemental Lien and the Affiliate Lien (collectively, the "<u>Post-Petition Bond Collateral</u>") shall be in addition to all other rights of the Indenture Trustee, including its liens and security interests in the Prepetition Bond Collateral.  The Rollover Lien, the Supplemental Lien and the Affiliate Lien shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Debtor and its estate under Section 551 of the Bankruptcy Code, (ii) with the exception of the liens and claims granted to the DIP Agent under the DIP Financing Order, any liens arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax

liability of Debtor, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in Bankruptcy Codes Section 507(a)(8), (iii) any intercompany or affiliate liens of Debtor or (iv) subordinated to or made pari passu with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise, with the exception of the liens and claims granted to the DIP Agent under the DIP Financing Order.

## Adequate Protection Provided to Apollo

13.   Junior Rollover and Supplemental Liens.  Subject to the right of Apollo to challenge the claimed superior priority of the prepetition security interests of the Indenture Trustee in the Prepetition Apollo Collateral (as set forth in Paragraph 25 below), as adequate protection for the Prepetition Apollo Lien, Apollo shall have (a) a valid, perfected and enforceable continuing junior replacement lien and security interest (the "Apollo Rollover Lien") to the extent of any diminution in the Prepetition Apollo Collateral in all assets of Debtor existing on or after the Petition Date of the same type as the Prepetition Apollo Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, and enforceability of the liens and security interests of Apollo in the Prepetition Apollo Collateral as of the Petition Date; and (b) a valid, perfected and enforceable continuing supplemental junior lien and security interest (the "Apollo Supplemental Lien") in all of the assets of Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code (except for assets subject to the Affiliate Lien) whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof.  The Apollo Rollover Lien and the Apollo Supplemental Lien shall be subject and subordinate only to (i) prior valid and perfected liens existing as of the Petition Date; (ii) the liens and claims granted to the DIP Agent pursuant to the DIP Financing

Order; and (iii) the Rollover Lien, the Supplemental Lien, and the Affiliate Lien granted to the Indenture Trustee.

14.     <u>No Further Action Required.</u>  The approval of this Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Rollover Lien, the Supplemental Lien and the Affiliate Lien granted to the Indenture Trustee, and the Apollo Rollover Lien and the Apollo Supplemental Lien granted to Apollo, whether or not the Indenture Trustee or Apollo elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; *provided, however*, upon the request of the Indenture Trustee or Apollo, Debtor and/or the Affiliates shall execute such other documents as may be reasonably requested to evidence and perfect such liens, and the Indenture Trustee or Apollo may, in their sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor and/or the Affiliates has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of their liens and security interests. The failure of the Debtor to execute any such other documentation  shall in no way affect the validity, perfection or priority of the Indenture Trustee's  liens and security interests in the Pre-petition Bond Collateral or the Postpetition Bond Collateral.  No obligation, payment, transfer or grant of security under this Cash Collateral Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act (or similar statue or common law) or subject to any defense reduction, setoff, recoupment or counterclaim.

15.     <u>Allowance of Claim and Bankruptcy Code Section 506(c) Waiver.</u>  The approval of this Order by the Court shall be a conclusive and binding determination on all parties of (x) the amount of the Bond Claim, (y) the Indenture Trustee's right to payment of the Prepetition Expense Claim; and (z) that the Indenture Trustee's

security interests in the Prepetition Bond Collateral, including, without limitation, the Cash Collateral, have been duly perfected and are in all respects valid and enforceable first priority security interests and liens and not subject to any claim under Bankruptcy Code Sections 506(c) and 552(b).

16.    Compliance With Bond Documents.  As further adequate protection of the Indenture Trustee's security interests in the Cash Collateral, Debtor shall comply with all terms and provisions of the Bond Documents, except solely for requirements that the Debtor satisfy any insufficiency in the Bond Reserve Account Requirement existing as of the Petition Date, including the maintenance of adequate insurance as required by the Bond Documents, and the payment of all claims that could become a prior lien on the Prepetition Bond Collateral or the Post-Petition Bond Collateral.  The requirements of this Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents, provided, however, in the event of any inconsistency between the Bond Documents and this Order, the terms of this Order shall control.

17.    Financial Information.  As additional adequate protection of the Indenture Trustee's security interests in the Cash Collateral and in consideration of the Indenture Trustee's consent to the subordination of its lien on certain collateral pursuant to the DIP Financing Order, Debtor shall allow the Indenture Trustee reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of Debtor in order to conduct appraisals, analyses and/or audits of the Prepetition Bond Collateral and the Post-Petition Bond Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Indenture Trustee.  Debtor shall provide to the Indenture Trustee all Borrowing Base Certificates and similar documents submitted to the DIP Agent, a copy of each monthly operating report as and when submitted to the Office of the United States Trustee the following information by the 15th of each month in the same format as provided to the Indenture Trustee prior to the petition:  General

-15-

Operating Performance Metrics from the prior month, a Cash Flow Analysis and an income statement (actual v. budget), balance sheet, statement of cash flows, statement of hospital services with key statistical indicators, report on the investment portfolio, list of operating expenses for the prior month including variances from budget in the form provided to the Indenture Trustee prior to the Petition Date (the "Additional Bond Reporting" ), which Additional Bond Reporting shall additionally be distributed to the Nationally Recognized Municipal Security Information Repositories ( the "NRMSIRS") and all other financial reporting set forth on Exhibit B.  The Indenture Trustee shall have no objection to the provision of any financial reporting provided herein to the Committee, and the Debtor shall provide the Committee with copies of the financial reports set forth herein, subject to the Committee's addressing appropriate confidentiality concerns.   Debtor shall furnish such other reports and information as may be reasonably requested from time to time by the Indenture Trustee, all such reports to be certified by Debtor's chief financial officer or chief executive officer (and such reports shall certify that all uses of Cash Collateral shall be itemized and in compliance with the Budget).

        18.    <u>Termination of Use of Cash Collateral</u>.

        (a)    Debtor's authority to use Cash Collateral pursuant to the terms of this Order will terminate without any further action by the Bankruptcy Court three (3) business days after written notification sent by the Indenture Trustee to Debtor, the DIP Agent, any Committee appointed in this case, the U.S. Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

        (i)    if Debtor fails to obtain Court approval on or before November 15, 2009 of the employment of a Chief Financial Officer ("CFO") from FTI Consulting or another firm acceptable to the Indenture Trustee, whose CFO Function shall be adequately supported by such firm's employees to a degree reasonably acceptable to the Indenture Trustee, all with a scope of service acceptable to the Indenture Trustee, in its sole and absolute

-16-

discretion, and authorizing the CFO to make (i) periodic reports on the Debtor's finances and operations in form and frequency reasonably acceptable to the Indenture Trustee and (ii) its data, analysis and personnel available to the Indenture Trustee or its professionals on reasonable notice and at reasonable times, to answer the Indenture Trustees or it professionals' questions with respect to the matters within such scope of service;

(ii)   the failure to remain in compliance with the EBITDA Test and the Cash Flow Expenditure Test set forth in the DIP Financing Order as if such tests were set forth herein and regardless of whether the DIP Financing Order has been entered or whether any obligations are outstanding under any debtor in possession financing facility;

(iii)   the failure of Debtor to timely pay all fees due under 28 U.S.C. §1930;

(iv)   Debtor assumes, rejects, terminates or stipulates to relief from the automatic stay with respect to its contracts with Siemens or Cymetrix or fails to oppose relief from stay or other relief sought by Siemens or Cymetrix without the Indenture Trustee's consent;

(v)   If the Revenue Cycle Assessment contemplated in the Debtor's Application for Order Authorizing Debtor to (A) Employ and Retain FTI Consulting, Inc. to Provide an Interim Chief Financial Officer and Temporary Employees and (B) to Designate William Reilly as Interim Chief Financial Officer (Docket No. 97) is not delivered to the Trustee on or before October 28, 2009;

(vi)   Debtor's Chapter 11 case is dismissed or converted to a proceeding under Chapter 7 of the Bankruptcy Code;

(vii)   the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy

-17-

Code); or (z) the date Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(viii)   the closing of a sale of all or substantially all of Debtor's assets;

(ix)    the Bankruptcy Court suspends Debtor's bankruptcy case under Section 305 of the Bankruptcy Code;

(x)     Except for defaults existing on the petition date or defaults related to the failure to satisfy any deficiency in the Bond Reserve Account Requirement (as defined in the Indenture) existing as of the Petition Date, Debtor defaults or is in further breach of any term of the Bond Documents (other than if solely as a result of the filing of the within Chapter 11 bankruptcy case);

(xi)    Debtor fails to comply with, keep, observe or perform any of its agreements or undertakings under this Order;

(xii)   entry of an order confirming a plan in this bankruptcy case;

(xiii)  this Order becomes stayed, reversed, vacated, amended, suspended or otherwise modified in any respect without the prior written consent of the Indenture Trustee;

(xiv)   an adversary proceeding, contested matter or other action is commenced by Debtor, or any other person or entity, challenging the validity, extent, enforceability, priority or extent of the Indenture Trustee's liens or claims or otherwise seeking to impair the Indenture Trustee's position;

(xv)    imposition of orders, penalties or fines by any governmental agency or unit which does or could, if not cured promptly, result in the cessation of operations of Debtor;

(xvi)   the Indenture Trustee objects in writing to the Debtor with a copy to the DIP Agent to any Sixteen Week Forecast as that term is defined in the DIP Financing Order; or

(xvii)   any Termination Date under the DIP Financing Order or any agreement related thereto.

(b)   <u>Right to Use Cash Collateral Notwithstanding a Termination Event</u>.  Notwithstanding the expiration of the three (3) business day period referenced above in section 18(a) and the failure of the Debtor to cure any Termination Event that is curable or the Bankruptcy Court to order otherwise, (i) the Debtor may continue to use Cash Collateral for the purposes of securing advances under and paying the DIP Loan and making the adequate protection payments set forth in paragraph 7 hereof, provided that the Debtor shall cease using Cash Collateral immediately upon Payment in Full of the DIP Loan, and (ii) the automatic stay shall be lifted with respect to the Post-Petition Bond Collateral and the Prepetition Bond Collateral, *provided, however*, that the Indenture Trustee and Apollo shall not take any action to collect, seize, realize upon, or foreclose upon any Post-Petition Bond Collateral, Prepetition Bond Collateral, Prepetition Apollo Collateral that is also DIP Collateral until the Payment in Full of the DIP Loan, *provided*, *further*, that notwithstanding the above or anything in the DIP Financing Order, the Indenture Trustee may collect, seize, realize upon or foreclose upon its Affiliate Liens and/or its Supplemental Liens but solely on such assets that are subject to such liens and not also part of the Indenture Trustee's Rollover Lien and the Prepetition Bond Collateral if Debtor has not timely made all adequate protection payments under paragraph 7 hereof, as more fully set forth in any intercreditor agreement that may be entered into between the Indenture Trustee and the DIP Agent not materially inconsistent with the terms hereof, *provided, further*, that upon Payment in Full of the DIP Loan the automatic stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its pre- and post-petition liens and security interests in the Prepetition Bond Collateral the Post-Petition Bond Collateral and the Prepetition Apollo Collateral shall be lifted all without further Order of the Bankruptcy Court, unless during such same (3) business day period, a

party or entity, including the Debtor, obtains an Order of the Bankruptcy Court re-imposing the automatic stay.

(c)  <u>Termination Without Notice and Restricted Rights to Use of Cash Collateral</u>.  In the event that the Debtor fails to make any of the adequate protection payment contemplated by paragraph 7 hereof within five business days of their due date, the Debtor's authority to use Cash Collateral shall automatically terminate. Notwithstanding such automatic termination of  the Debtor's authority to use Cash Collateral (i) the Debtor may continue to use Cash Collateral and Prepetition Apollo Collateral for the sole purpose of paying down the DIP Loan and for paying any other DIP Obligations in the nature of protective advances with respect to the DIP Collateral (as that term is defined in the DIP Financing Order) provided that such protective advances do not take the form of advances to the Debtor, **except as set forth in the intercreditor agreement referenced below, or as otherwise agreed to by the DIP Agent and the Indenture Trustee**  (the "Protective Advances"), and provided further that the Debtor shall cease using Cash Collateral immediately upon Payment in Full of the DIP Loan and (ii) the automatic stay shall be lifted with respect to the Post-Petition Bond Collateral, the Prepetition Bond Collateral and the Prepetition Apollo Collateral, *provided, however*, that the Indenture Trustee and Apollo shall not take any action to collect, seize, realize upon, or foreclose upon any Post-Petition Bond Collateral, Prepetition Bond Collateral or Prepetition Apollo Collateral that is also DIP Collateral until the Payment in Full of the DIP Loan, *provided, further*, that notwithstanding the above or anything in the DIP Financing Order, the Indenture Trustee may collect, seize, realize upon or foreclose upon its Affiliate Liens and/or its Supplemental Liens but solely on such assets that are subject to such liens and not part of the Indenture Trustee's Rollover Lien and the Prepetition Bond Collateral if Debtor has not timely made all adequate protection payments under paragraph 7 hereof, as more fully set forth in any intercreditor agreement that may be entered into between the Indenture Trustee and the DIP Agent not materially inconsistent with the terms

-20-

hereof which intercreditor agreement may provide for certain stand still periods as agreed to between the DIP Agent and the Indenture Trustee and further define the nature of the Protective Advances.

19.    <u>Release and Waiver</u>.  Debtor hereby waives, releases and discharges the Indenture Trustee and all holders of the Bonds and their respective affiliates, agents, attorneys, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Bonds and the Bond Documents, any aspect of the prepetition relationship between the Indenture Trustee, and/or all holders of the Bonds, and Debtor, and any other acts or omissions by the Indenture Trustee and/or all holders of the Bonds in connection with either the Bond Documents or the Indenture Trustee's and holders of the Bonds prepetition relationship with Debtor.  Further, Debtor waives any and all rights to object to or contest the amount of the Bond Claim or the amount, validity, extent, priority, perfection, or enforceability of the Indenture Trustee's security interests in the Prepetition Bond Collateral and agrees that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.  Debtor also waives any and all rights to object to or contest the amount, validity, perfection or enforceability of the Prepetition Apollo Lien, but reserves its right to object to or contest the priority of the Prepetition Apollo Lien.

20.    <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of the Indenture Trustee to assert a claim under Bankruptcy Code Sections 364(c) and/or 507(b) on a basis subordinate to the Section 364(c) superpriority claim in favor of the DIP Agent.

21.    <u>Deemed Request for Stay Relief</u>.  This Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Prepetition Bond Collateral as of the Petition Date and for adequate protection for the use of cash collateral as of the Petition Date.

22.   <u>Carve Out</u>.  In consideration of Debtor's acknowledgement of the debt due and owing the Indenture Trustee, Debtor's waiver of any claims under Section 506(c) or 552(b) of the Bankruptcy Code or otherwise, and in exchange for the agreement that Debtor, Debtor's professionals, and other professionals retained in these cases shall not seek any further reduction in, carve-out from, or lien waivers with respect to the Prepetition Bond Collateral or the Post-Petition Bond Collateral, the Indenture Trustee consents to a carve out from the assets of the estate (which shall be the same carve out, and not in addition to the carve out, proposed by the DIP Agent) for certain expenses and professional fees incurred during the pendency of this bankruptcy case (the "<u>Carve Out</u>")  For purposes hereof, Carve Out shall mean the sum of Court and UST Fees, Potential Chapter 7 Fees and Post Default Professional Fees as defined and limited in subparagraphs (a) through (d) below:

(a)   All fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in subparagraph (c) below) ("<u>Court and UST Fees</u>");

(b)   Fees and expenses up to $15,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in subparagraph (c) below) (the "<u>Potential Chapter 7 Trustee Fees</u>");

(c)   To  the extent allowed by the Court, all professional fees and expenses (the "<u>Post Default Professional Fees</u>") which had not for any reason been paid to or held by Professional Persons (as defined below) prior to the first business day following the earlier of the delivery by (x) the DIP Agent of a notice of an Event of Default which specifies a Termination Date under the DIP Credit Agreement or the DIP Financing Order or (y) the delivery by the Indenture Trustee of a notice of the occurrence of a Termination Event, whether such Post Default Professional Fees are allowed by the Bankruptcy Court prior to or after delivery of such notice of an Event of Default or the occurrence of a Termination Event, and incurred by (i) persons or

firms retained by Debtor pursuant to section 327, 328 or 363 of the Bankruptcy Code, (ii) the Committee and any other statutory committee hereafter appointed in the Case, or (iii) a patient care ombudsman appointed pursuant to section 333 of the Bankruptcy Code (collectively, the "Professional Persons").

(d)    The Carve-Out to provide for the potential liabilities for Court and UST Fees, Potential Chapter 7 Fees and Post Default Professional Fees shall be in an amount of $500,000 and, for the avoidance of doubt, shall not be affected or enlarged by the Variances (as defined in the DIP Financing Order).

(e)    For the purpose of clarity, the Carve Out shall not be reduced by (i) amounts paid to Professional Persons or on account of Court and UST Fees by Debtor prior to the delivery by the DIP Agent or the Indenture Trustee of the notices described in subsection (c) of this paragraph or (ii) retainers received by Professional Persons prior to the filing of the Case.

(f)    Except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee or the Prepetition Bond Collateral under Sections 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise.  The Carve Out is intended to be a single carve-out in conjunction with the Carve Out provided in the DIP Financing Order and not in addition thereto.

23.    Modification of Stay.  The automatic stay imposed by virtue of Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Indenture Trustee to take any action authorized or contemplated by this Order or the Bond Documents (as the same may be modified by this Order) and to carry out the terms thereof, including, without limitation, (i) the receipt of payments to be made by Debtor to the Indenture Trustee and the payment of amounts due to the holders of the Bonds, (ii) the application, allocation or payment from any of the funds or accounts maintained by the Indenture Trustee in accordance with the terms of the Bond Documents, and (iii) the payment of all fees and expenses of the Indenture Trustee and its professionals by Debtor.

24.    <u>Preservation of Rights</u>.  If any or all of the provisions of this Order are, at any time, modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority, or other benefit conferred under this Order prior to such stay, modification or vacation.

25.    <u>Binding Effect</u>.  This Order, including but not limited to paragraph 19 hereof, shall be binding on all parties in this case, including, but not limited to, the Debtor and any successors thereto, the DIP Agent, Apollo, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this case, and the Official Committee of Unsecured Creditors (the "<u>Committee</u>"); provided, however, that this Order is without prejudice to the rights of (a) the Committee to challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim, the pre-petition security interests of the Indenture Trustee, or the Prepetition Apollo Lien (but not, for the purposes of clarity, any rights, liens, claims or priorities arising under the DIP Financing Order or the DIP Credit Agreement) (a "<u>Committee Challenge</u>"); and (b) for Apollo to challenge the claimed superior priority of the prepetition security interests of the Indenture Trustee in the Prepetition Apollo Collateral (an "<u>Apollo Challenge</u>").  Any Committee Challenge must be made on or before December 24, 2009, after which time challenges shall be deemed finally and conclusively barred. Any Apollo Challenge must be made by December 17, 2009, after which time all such challenges shall be deemed finally and conclusively barred. The Indenture Trustee reserves any and all defenses, claims, and counterclaims, with respect to any such challenge, including but not limited to in the event of an Apollo Challenge the right to respond by challenging the validity, extent, priority, perfection and enforceability of the Prepetition Apollo Lien in the Prepetition Apollo Collateral.  Provided further that notwithstanding the above the DIP Agent and the Indenture Trustee may challenge the validity, amount, perfection, priority, extent or enforceability of the Apollo Settlement and/or the Prepetition Apollo Lien and the Debtor shall be entitled to challenge the priority of the Prepetition Apollo Lien.  For the avoidance of doubt until and in the

absence of a timely and successful Apollo Challenge the Indenture Trustee's liens and security interests in the Prepetition Apollo Collateral will be senior and prior to those of Apollo.

26.    <u>No Competing Liens</u>.  Except as set forth herein or in the DIP Financing Order, Debtor shall not grant liens on, or security interests in the Prepetition Bond Collateral or the Post-Petition Bond Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise.

27.    <u>Reservation of Rights</u>.  Except as provided in this Order, neither Debtor nor the Indenture Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of Debtor or the Indenture Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of Debtor or the Indenture Trustee to exercise any of their rights and remedies under the Bankruptcy Code at any time.  In particular, the Indenture Trustee reserves its rights to seek modification of this Order.

28.    <u>Further Relief</u>.  Nothing herein shall (i) preclude the Indenture Trustee or Apollo from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (ii) prevent (a) the Indenture Trustee from asserting at some later time that its liens and security interests in the Prepetition Bond Collateral are not being adequately protected within the meaning of Section 361 of the Bankruptcy Code or (b) Apollo from asserting at some later time that its liens and security interests in the Prepetition Apollo Collateral are not being adequately protected within the meaning of Section 361 of the Bankruptcy Code, *provided, however*, that except as set forth in paragraph 18 in the case of the Indenture Trustee, that (i) the Indenture Trustee and Apollo may not interpose any objection to the Debtor's  use of Cash Collateral for the purposes of securing advances under and paying the DIP Loan prior to Payment in Full of the DIP Loan and paying the adequate protection payments under paragraph 7 hereof (ii) neither the Indenture Trustee nor Apollo shall seek or be granted relief from the automatic stay with respect

to any Post-Petition Bond Collateral, Prepetition Bond Collateral or Prepetition Apollo Collateral that is also DIP Collateral until the Payment in Full of the DIP Loan *provided*, *further*, that notwithstanding the above or anything in the DIP Financing Order, the Indenture Trustee may be granted relief from stay to collect, seize, realize upon or foreclose upon its Affiliate Liens and/or its Supplemental Liens but solely on such assets that are subject to such liens and not part of the Indenture Trustee's Rollover Lien and the Prepetition Bond Collateral if Debtor has not timely made all adequate protection payments under paragraph 7 hereof as more fully set forth in any intercreditor agreement that may be entered into between the Indenture Trustee and the DIP Agent not materially inconsistent with the terms hereof.

29.   <u>No Control</u>.  The Indenture Trustee shall not be deemed to be in control of the operations of  Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of Debtor, notwithstanding its consent to this Order and extending financial accommodations of any type, kind or nature under this Order.

30.   <u>No Third Party Beneficiaries</u>.  No rights are created hereunder for the benefit of any third party, any creditor (other than the DIP Agent), or any direct, indirect or incidental beneficiary.

31.   <u>Effectiveness</u>.  The rights and obligations of the parties under this Order shall be effective and enforceable as of the Petition Date.  This Order shall be deemed effective immediately and, for the avoidance of doubt, Federal Rule of Bankruptcy Procedure 6004(h) shall not apply hereto.  If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, extent, priority or enforceability of any obligations incurred prior to the actual receipt of written notice by the Indenture

Trustee of the effective date of such reversal, modification, vacatur or stay or (ii) the

validity, extent or enforceability of the liens and claims granted hereunder.

32.    <u>Notices</u>.  All notices, requests, demands, waivers and other

communications required or permitted to be given under this Order shall be in writing

and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by

first-class, registered or certified mail, return receipt requested, postage prepaid, or (c)

sent by next-day or overnight mail or delivery or (d) sent by facsimile.

    (a) If to Debtor to:


      Robert E. Fuller
      Executive Vice President
      Downey Regional Medical Center-Hospital, Inc.
      11500 Brookshire Avenue
      Downey, CA 90241
      e-mail: Rob.Fuller@DRMCI.org.


     with a copy to:


      Lisa Hill Fenning, Esq.
      Arnold & Porter, LLP
      777 South Figueroa Street, 44th Floor
      Los Angeles, CA  90017-5844
      Fax:  213-243-4199
      e-mail:  lisa.fenning@aporter.com

    (b) If to the Indenture Trustee to:


      Gavin Wilkinson
      Vice President
      Wells Fargo Corporate Trust Service
      MAC #N9311-115
      625 Marquette Avenue, 11th Floor
      Minneapolis, MN 55479


     with a copy to:

1

William W. Kannel, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
Fax : 617-542-2241
e-mail: wkannel@mintz.com

2

3

4

5

6    33.    <u>No Encumbrance of Avoiding Power Recoveries</u>.  Notwithstanding

7 anything contained herein to the contrary, none of the Rollover Lien, the

8 Supplemental Lien, the Apollo Rollover Lien or the Apollo Supplemental Lien shall

9 encumber any causes of action or proceeds therefrom of the Debtor or its estate under

10 Sections 544, 545, 547, 548, 549, 550 and 724(e) of the Bankruptcy Code.

11 <div align="center"># # #</div>

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 DATED: October 16, 2009

_____
United States Bankruptcy Judge

27

28

-28-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE A**

**BUDGET**

1
2
3
4
5

## SCHEDULE B

6

## REPORTING REQUIREMENTS

7
8      1.    The Debtor[*] will provide Wells Fargo Bank, National Association, as
indenture trustee (the "Indenture Trustee") with all written financial information or
9      reporting on the same terms currently provided in the Bond Documents (as defined in
the Order Regarding Use of Cash Collateral and Adequate Protection (the "Cash
10     Collateral Order")).

11
12     2.    From and after entry of the Cash Collateral Order, Debtor shall also
deliver to the Indenture Trustee the following:

13
14          a.    On the first Business Day following Debtor's request for an the
initial Interim DIP Advance, a Borrowing Base Report calculating the Borrowing
15     Base as of the close of business as of the day of the request for the Interim DIP
Advance;

16
17          b.    On each Funding Date or as reasonably requested by the Indenture
Trustee or as provided to the Agent, the Debtor's good faith estimates of amounts of
18     Receivables that are subject to offset by any Governmental Entity;

19
20          c.    Daily, on each Business Day, beginning on the Business Day
following the entry of the Interim DIP Order, a report, as of the close of the
21     immediately preceding Business Day, stating the Debtor's actual cash balances, in
form and in detail reasonably satisfactory to the Indenture Trustee;

22
23          d.    Weekly, on each Thursday, beginning with Thursday of the first
week following entry of the DIP Financing Order, a Variance Report, together with a
24     certification from an Authorized Officer certifying that the report fairly presents the
results of operations of the Debtor for such period and stating the Debtor's compliance
25     with, or identifying any areas of the Debtor's non-compliance with the financial
covenants of the DIP Financing Order or the DIP Credit Agreement ;
26

27

28     ---
       [*] Capitalized terms on this Schedule B that are not otherwise defined within this Schedule B, shall have the meanings
       ascribed to them in the *Secured Super-Priority Debtor in Possession Loan and Security Agreement*.

-30-

e.    Weekly, on each Wednesday, beginning with Wednesday of the first week following entry of the Interim DIP: (a) irrespective of whether Debtor has requested an Interim DIP Advance, a Borrowing Base Report calculating the Borrowing Base as of the close of business of Tuesday of the previous week, together with supporting information supporting information; (b) a "Sixteen Week Forecast" (as defined in the DIP Financing Order); (c) an "Actual Cash Flows Report" (as defined in the DIP Financing Order) for the week ending on the preceding Wednesday (together with comparative figures set forth in each of the Actual Cash Flows Reports previously delivered to the Indenture Trustee), together with a certification from an Authorized Officer certifying that the report fairly presents the financial condition and results of operations of the Debtor for such period; (d) patient census, and changes in the patient volume and patient mix since the prior report, at the Debtor's hospital facility; and (e) any other matters material to the Debtor's continuing operation of its business;

f.    Monthly, on or prior to the 10th day of each month, a copy of the Monthly Report, together with a revised Borrowing Base Report based on reconciliations and adjustments reflected in such Monthly Report, certified by the chief financial officer of the Debtor.

g.    Monthly, as soon as available and in any event no later than 30 days after the end of each month that is not the last month of a fiscal quarter and 45 days after the end of each month that is the last month of a fiscal quarter of the Debtor: (i) combined and combining balance sheets, income statements and statements of changes in cash flow of the Debtor as of the end of such month or quarter; (ii) a Compliance Certificate; (iii) a statistical report, including census, statistics and such other information as may be requested by the Indenture Trustee; and (iv) if adjusted from the prior month's value, internally prepared cost report settlement estimates with respect to Governmental Entities;

h.    Annually, as soon as available and in any event within 90 days after the end of each fiscal year of the Debtor: (i) a copy of any and all audited individual and combined and combining financial statements (together with explanatory notes thereon) and the auditor's unqualified report letter for such year for the Debtor, containing financial statements for such year audited by independent certified public accountants of recognized standing acceptable to the Indenture Trustee and a copy of any management letter or written report submitted to the Debtor by independent certified public accountants with respect to the business, condition (financial or otherwise), operations, prospects, or properties of the Debtor; (ii) a Compliance Certificate; and (iii)  a report satisfactory in form to the Indenture Trustee, listing all material insurance coverage maintained as of the date of such report by the Debtor and all material insurance planned to be maintained by the Debtor in the subsequent fiscal year;

i.    As and when reported to the United States Trustee, all reports and operating statements;

j.    Promptly (and in no event later than one Business Day following the Debtor obtaining actual knowledge thereof), Debtor shall deliver to the Indenture Trustee notice in reasonable detail of: (i) any breach by the Debtor of any covenants or representations and warranties under the Cash Collateral Order or any DIP Document, including upon discovery of a breach of the Eligibility Criteria; (ii) the occurrence of any default or any event of default under the Cash Collateral Order or any DIP Document, such notice to be accompanied by a statement of the Authorized Officer of the Debtor setting forth details of such default or event of default, and the action that the Debtor has taken and/or proposes to take with respect thereto; (iii) any lien asserted or claim made against any collateral granted to the Indenture Trustee under the Cash Collateral Order other than a permitted lien; (iv) the occurrence of any other event that could reasonably be expected to adversely affect the value of any equipment, inventory, real property or other assets of the Debtor, or the interest of the Indenture Trustee therein; (v) any notice of any investigations or audits (including cost reports or similar audits regarding the valuation of receivables payments) of the Debtor being conducted by any federal, state or county Governmental Entity or its agents or designees, and the results thereof; or (vi) any matter that could reasonably be expected to have or result in a Material Adverse Effect;

k.    As soon as available: (i) copies of each financial statement, report, notice or proxy statement sent by the Debtor to its stockholders (or similar parties) generally; (ii) copies of each press release or other statement made available by the Debtor to the public concerning developments in the business of the Debtor; and (iii) copies of any statement or report furnished by the Debtor to any other party pursuant to the terms of any indenture, loan, or credit or similar agreement and not otherwise required to be furnished to the Indenture Trustee or the Agent or any Lender pursuant to the Bond Documents or the DIP Documents; and

l.    Upon request of the Indenture Trustee or when the Agent makes such a request, such other information respecting the Receivables, the equipment, inventory, real property, or other assets of the Debtor, the other Collateral or the condition or operations, financial or otherwise, of the Debtor as the Indenture Trustee or the Agent or any of the Lenders may from time to time reasonably request.

m.    As and when reported to the Committee, all reports given or required to given to he Committee under any order or agreement between the Debtor and the Committee.

n.    The Revenue Cycle Assessment.

    o.  Tot the extent not provided for above any additional financial reporting provided the DIP Agent.  For the avoidance of doubt the above reporting in this Exhibit B shall be provided by the Debtor regardless of whether the DIP Financing Order or DIP Credit Agreement is in place.

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
|---|---|

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  16501 Ventura Boulevard, Suite 440, Encino, California, 91436-2068

A true and correct copy of the foregoing document described as **[PROPOSED] ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>October 12, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):

On <u>October 13, 2009</u>  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>October 13, 2009</u>  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Ctrm. 1475
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/13/09 | Nova George | /s/ Nova George |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><br>          Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
|---|---|

**ADDITIONAL SERVICE INFORMATION (if needed):**

Via Court NEF

Mark A. Kadzielski - mkadzielski@fulbright.com
Andrew M. Valdez - avaldez@fulbright.com
Michael M. Parker - mparker@fulbright.com
Kevin P. Duthoy - kevin.duthoy@bewleylaw.com
Vanessa L Au  - vanessaau@paulhastings.com
Mark Bradshaw - mbradshaw@shbllp.com
Martin J Brill  - mjb@lnbrb.com
Richard W Brunette - rbrunette@sheppardmullin.com
Russell Clementson - russell.clementson@usdoj.gov
Dawn M Coulson - dcoulson@eyclaw.com
Jeffry A Davis - jadavis@mintz.com
Mark D Houle - mark.houle@pillsburylaw.com
Raffi Khatchadourian - raffi@hemar-rousso.com
William H. Kiekhofer - wkiekhofer@mcguirewoods.com
Randy P Orlik - rorlik@coxcastle.com
Daniel H Reiss - dhr@lnbrb.com
Christopher O Rivas - crivas@reedsmith.com
Nathan A Schultz - schultzn@gtlaw.com
Steven J Schwartz - sschwartz@dgdk.com
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
Edmund G. Brown, Jr., Attorney General of the State of California - wendi.horwitz@doj.ca.gov

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

**In re Downey Regional Medical Center-Hospital, Inc.**
**Case No. 2:09-bk-34714-BB**
**2002 Service List**

| | |
|---|---|
| **Debtor**<br>Downey Regional Medical Center<br>11500 Brookshire Avenue<br>Downey, CA 90241-7010 | **Counsel for Prime Healthcare Management, Inc.**<br>Shulman Hodges & Bastian LLP<br>Mark Bradshaw<br>26632 Towney Centre Dr., Suite 300<br>Foothill Ranch, CA  92610-2808 |
| **Debtor's Counsel**<br>Counsel for Downey Regional Medical Center<br>Lisa Hill Fenning<br>Arnold & Porter LLP<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844 | **Counsel for Tenet Healthcare Corporation**<br>Tenet Health Care<br>Lynn E Iba<br>1500 South Douglass Road<br>Anaheim, CA  92806 |
| **UST**<br>United States Trustee<br>725 South Figueroa Street. 26th Floor<br>Los Angeles, CA 90017 | **Indenture Trustee for Secured Bonds**<br>California Health Facilities Financing Authority<br>915 Capitol Mall, Suite 590<br>Sacramento, CA 95814 |
| **Counsel to OCC**<br>Daniel Reiss<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>William W. Kannel<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| Martin J. Brill<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Charles W. Azano<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| **Counsel for Blue Cross**<br>Creim Macias Koenig & Frey LLP<br>Stuart I. Koenig<br>633 West 5th Street, 51st Floor<br>Los Angeles, CA 90071 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Jeffry Davis<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA  92130 |
| **Counsel for Siemens Medical Solutions, USA**<br>Reed Smith LLP<br>Marsha Houston, Christopher Rivas<br>355 South Grand Avenue, Suite 2900<br>Los Angeles, CA  90071 | Wells Fargo Corporate Trust Services<br>Attn: Gavin Wilkinson<br>625 Marquette Avenue<br>MAC N9311-115<br>Minneapolis, MN 55479 |
| Reed Smith LLP<br>Claudia Springer<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA  19103 | **Proposed DIP Lender**<br>Counsel for Healthcare Finance Group<br>William Kiekhofer<br>Jodie M. Grotins<br>McGuireWoods<br>1800 Century Park East, 8th Fl.<br>Los Angeles, CA 90067 |

| | |
|---|---|
| **Proposed DIP Lender**<br>Healthcare Finance Group<br>Robert D. Lynch<br>199 Water Street, 20th Floor<br>New York, New York 10038 | **Lienholders of Record**<br>Cerner Corp<br>2800 Rockcreek Parkway<br>Kansas City, MO 64117-2521 |
| **Secured Creditor**<br>Apollo Health Street Inc<br>2 Broad Street<br>Bloomfield, NJ 07003 | Cisco Systems Capital Corporation<br>170 West Tasman Drive<br>MS SJ13-3<br>San Jose, CA 95134 |
| **Counsel for Apollo Health Street, Inc.**<br>Philip Kraft<br>Law Office of Mark J. Skapik, APC<br>250 West First Street, Suite 330<br>Claremont, CA 91711 | Cobe Cardiocascular, Inc.<br>1185 Oak Street<br>Lakewood, CO 80215-4407 |
| **Lienholders of Record**<br>Alaris Medical System, Inc.<br>10221 Wateridge CR<br>San Diego, CA 92121 | Computer Sales International, Inc.<br>10845 Olive Boulevard<br>Suite 300<br>St. Louis, MO 63141 |
| Bank of the West<br>9001 East Whittier Boulevard<br>Pico Rivera, CA 90660 | Computer Sales International, Inc.<br>9990 Old Olive Street Road<br>St. Louis, MO 63141 |
| Bank of the West<br>201 North Civic Drive<br>Suite 360 B<br>Walnut Creek, CA 94596 | Dade Behring Financial Services<br>10 Riverview Drive<br>Danbury, CT 06810 |
| Baxter Healthcare Corporation<br>Attn: Gail D Alesandro - DF6/3W<br>1 Baxter Parkway<br>Deefield, IL 60015 | E.I. Du De Nemours & Co<br>Barley Mill Plaza #24-2224<br>Wilmington, DE 19807 |
| Cadwell Laboratories, Inc.<br>909 North Kellogg Street<br>Kennewick, WA 99336 | E.I. Du De Nemours & Co<br>1007 Market Street<br>Wilmington, DE 19801 |

| Lienholders of Record | Lienholders of Record |
|---|---|
| E.I. Dupont De Nemours & CO<br>Finance - Credit<br>CRP728-1330<br>4417 Lancaster Avenue<br>Wilmington, DE  19805 | Olympus Corp<br>4 Nevada Drive<br>Lake Success, NY 11042-1114 |
| Employment Development Department<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 | Philips Medical Capital LLC<br>1111 Old Eagle School Road<br>Wayne, PA 19087 |
| First Bank of Highland Park<br>1835 First Street<br>Highland Park, IL 60035 | Sanwa Bank<br>Attn: Rick Lopez, VP<br>Pico Rivera Office<br>9001 East Whittier Blvd<br>Pico Riveria, CA 90660 |
| First Interstate BK of Calif Trustee<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017 | Sovereign Bank<br>3 Huntington Quadrangle<br>Suite 101N<br>Melville, NY 11747 |
| Graybar Financial Services<br>201 West Big Beaver Road<br>Troy, MI 48084 | Terumo Caediovascular System<br>6200 Jackson Road<br>Ann Arbor, MI 48103 |
| Johnson & Johnson Finance Corporation<br>501 George Street<br>New Brunswick, NJ 08901 | The BK of Tokyo, Ltd.<br>640 West Sixth Street<br>Los Angeles, CA 90017 |
| Lanier Worldwide, Inc.<br>4667 North Royal Atlanta Drive<br>Tucker, GA 30084-3802 | U.S. Bank National Association<br>400 City Center<br>Oshkosh, WI 54901 |
| Leasing Associates of Barrington, Inc.<br>33 West Higgins Road<br>Suite 1030<br>South Barrington, IL 60010 | United California Bank<br>9001 East Whittier Boulevard<br>Pico Rivera, CA 90660 |

| | |
|---|---|
| **Other Interested Parties**<br>California Department of Public Health<br>Licensing and Certification<br>County of Los Angeles District Office<br>12440 East Imperial Highway, Suite 200<br>Norwalk, CA 90650 | **Other Interested Parties**<br>State of California - Health and Human Services<br>Agency<br>Medi-Cal<br>Department of Health Care Services<br>1501 Capital Avenue<br>Sacramento, CA 95814-5005 |
| California Department of Public Health<br>Health Facilities Inspection Division<br>Branch Chief: James L. Lawson. Ph.D., RN<br>12440 East Imperial Highway, Suite 522<br>Norwalk, CA 90650 | **Request for Special Notice Parties**<br><br>Counsel for Applecare Medical Group<br>Eric Klein<br>Sheppard Mullin Richter & Hampton LLP<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067 |
| Centers for Medicare & Medicaid Services<br>7500 Security Boulevard<br>Baltimore MD 21244-1850 | Counsel to Edmund G. Brown, Jr.<br>Office of the Attorney General<br>Wendi A. Horwitz<br>300 S. Spring St., Suite 1702<br>Los Angeles, CA  90013 |
| Franchise Tax Board<br>Attention: Bankruptcy<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Counsel to The Regents of the University of California<br>Charles F. Robinson and Eric K Behrens<br>University of Southern California<br>Office of the General Counsel<br>111 Franklin Street, 89th Floor<br>Oakland, CA  94607-5200 |
| Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114 | Counsel to United PacificCare<br>Karl Block<br>Loeb & Loeb<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA  90067 |
| Los Angeles County Tax Assessor<br>500 W. Temple St. Room 225<br>Los Angeles, CA 90012-2770 | Counsel to Presbyterian Intercommunity Hosp.<br>Mark A. Kadzielski<br>Andrea M. Valdez<br>Fulbright & Jaworski L.L.P.<br>555 S. Flower St., Suite 4100<br>Los Angeles, CA  90071 |
| Meyer Christian & Associates<br>Attn Tim Denton<br>15061 Springdale Street, Suite 113<br>Huntington Beach, CA  92649 | Counsel to Presbyterian Intercommunity<br>Hosp.Michael M. Parker<br>Fulbright & Jaworski L.L.P.<br>300 Covent Street, Suite 2200<br>San Antonio, TX  78205-3792 |
| Office of the Attorney General<br>State of California<br>Registry of Charitable Trusts<br>1300 I Street, Suite 125<br>Sacramento, CA  95814-2951 | Counsel to Presbyterian Intercommunity Hosp.<br>Kevin P. Duthoy<br>Bewley Lassleben & Miller<br>13215 E. Penn Street, Suite 510<br>Whittier, CA  90602 |

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><br>Debtor(s). | CHAPTER:  11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
| --- | --- |

**NOTE TO USERS OF THIS FORM**:
1)  Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2)  The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to he judgment or order. As of October ___, 2009, the following person(s) are currently on the Electronic Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9021-1.1**

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><div align="right">Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
|---|---|

**ADDITIONAL SERVICE INFORMATION** (if needed):

**By Court NEF**

Mark A. Kadzielski - mkadzielski@fulbright.com
Andrew M. Valdez - avaldez@fulbright.com
Michael M. Parker - mparker@fulbright.com
Kevin P. Duthoy - kevin.duthoy@bewleylaw.com
Vanessa L Au  - vanessaau@paulhastings.com
Mark Bradshaw - mbradshaw@shbllp.com
Martin J Brill  - mjb@lnbrb.com
Richard W Brunette - rbrunette@sheppardmullin.com
Russell Clementson - russell.clementson@usdoj.gov
Dawn M Coulson - dcoulson@eyclaw.com
Jeffry A Davis - jadavis@mintz.com
Mark D Houle - mark.houle@pillsburylaw.com
Raffi Khatchadourian - raffi@hemar-rousso.com
William H. Kiekhofer - wkiekhofer@mcguirewoods.com
Randy P Orlik - rorlik@coxcastle.com
Daniel H Reiss - dhr@lnbrb.com
Christopher O Rivas - crivas@reedsmith.com
Nathan A Schultz - schultzn@gtlaw.com
Steven J Schwartz - sschwartz@dgdk.com
United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
Edmund G. Brown, Jr., Attorney General of the State of California - wendi.horwitz@doj.ca.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9021-1.1**

**In re Downey Regional Medical Center-Hospital, Inc.**
**Case No. 2:09-bk-34714-BB**
**2002 Service List**

| | |
|---|---|
| **Debtor**<br>Downey Regional Medical Center<br>11500 Brookshire Avenue<br>Downey, CA 90241-7010 | **Counsel for Prime Healthcare Management, Inc.**<br>Shulman Hodges & Bastian LLP<br>Mark Bradshaw<br>26632 Towney Centre Dr., Suite 300<br>Foothill Ranch, CA  92610-2808 |
| **Debtor's Counsel**<br>Counsel for Downey Regional Medical Center<br>Lisa Hill Fenning<br>Arnold & Porter LLP<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844 | **Counsel for Tenet Healthcare Corporation**<br>Tenet Health Care<br>Lynn E Iba<br>1500 South Douglass Road<br>Anaheim, CA  92806 |
| **UST**<br>United States Trustee<br>725 South Figueroa Street. 26th Floor<br>Los Angeles, CA 90017 | **Indenture Trustee for Secured Bonds**<br>California Health Facilities Financing Authority<br>915 Capitol Mall, Suite 590<br>Sacramento, CA 95814 |
| **Counsel to OCC**<br>Daniel Reiss<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>William W. Kannel<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| Martin J. Brill<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Charles W. Azano<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| **Counsel for Blue Cross**<br>Creim Macias Koenig & Frey LLP<br>Stuart I. Koenig<br>633 West 5th Street, 51st Floor<br>Los Angeles, CA 90071 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Jeffry Davis<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA  92130 |
| **Counsel for Siemens Medical Solutions, USA**<br>Reed Smith LLP<br>Marsha Houston, Christopher Rivas<br>355 South Grand Avenue, Suite 2900<br>Los Angeles, CA  90071 | Wells Fargo Corporate Trust Services<br>Attn: Gavin Wilkinson<br>625 Marquette Avenue<br>MAC N9311-115<br>Minneapolis, MN 55479 |
| Reed Smith LLP<br>Claudia Springer<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA  19103 | **Proposed DIP Lender**<br>Counsel for Healthcare Finance Group<br>William Kiekhofer<br>Jodie M. Grotins<br>McGuireWoods<br>1800 Century Park East, 8th Fl.<br>Los Angeles, CA 90067 |

| | |
|---|---|
| **Proposed DIP Lender**<br>Healthcare Finance Group<br>Robert D. Lynch<br>199 Water Street, 20th Floor<br>New York, New York 10038 | **Lienholders of Record**<br>Cerner Corp<br>2800 Rockcreek Parkway<br>Kansas City, MO 64117-2521 |
| **Secured Creditor**<br>Apollo Health Street Inc<br>2 Broad Street<br>Bloomfield, NJ 07003 | Cisco Systems Capital Corporation<br>170 West Tasman Drive<br>MS SJ13-3<br>San Jose, CA 95134 |
| **Counsel for Apollo Health Street, Inc.**<br>Philip Kraft<br>Law Office of Mark J. Skapik, APC<br>250 West First Street, Suite 330<br>Claremont, CA 91711 | Cobe Cardiocascular, Inc.<br>1185 Oak Street<br>Lakewood, CO 80215-4407 |
| **Lienholders of Record**<br>Alaris Medical System, Inc.<br>10221 Wateridge CR<br>San Diego, CA 92121 | Computer Sales International, Inc.<br>10845 Olive Boulevard<br>Suite 300<br>St. Louis, MO 63141 |
| Bank of the West<br>9001 East Whittier Boulevard<br>Pico Rivera, CA 90660 | Computer Sales International, Inc.<br>9990 Old Olive Street Road<br>St. Louis, MO 63141 |
| Bank of the West<br>201 North Civic Drive<br>Suite 360 B<br>Walnut Creek, CA 94596 | Dade Behring Financial Services<br>10 Riverview Drive<br>Danbury, CT 06810 |
| Baxter Healthcare Corporation<br>Attn: Gail D Alesandro - DF6/3W<br>1 Baxter Parkway<br>Deefield, IL 60015 | E.I. Du De Nemours & Co<br>Barley Mill Plaza #24-2224<br>Wilmington, DE 19807 |
| Cadwell Laboratories, Inc.<br>909 North Kellogg Street<br>Kennewick, WA 99336 | E.I. Du De Nemours & Co<br>1007 Market Street<br>Wilmington, DE 19801 |

| **Lienholders of Record** | **Lienholders of Record** |
|---|---|
| E.I. Dupont De Nemours & CO<br>Finance - Credit<br>CRP728-1330<br>4417 Lancaster Avenue<br>Wilmington, DE 19805 | Olympus Corp<br>4 Nevada Drive<br>Lake Success, NY 11042-1114 |
| Employment Development Department<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 | Philips Medical Capital LLC<br>1111 Old Eagle School Road<br>Wayne, PA 19087 |
| First Bank of Highland Park<br>1835 First Street<br>Highland Park, IL 60035 | Sanwa Bank<br>Attn: Rick Lopez, VP<br>Pico Rivera Office<br>9001 East Whittier Blvd<br>Pico Riveria, CA 90660 |
| First Interstate BK of Calif Trustee<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017 | Sovereign Bank<br>3 Huntington Quadrangle<br>Suite 101N<br>Melville, NY 11747 |
| Graybar Financial Services<br>201 West Big Beaver Road<br>Troy, MI 48084 | Terumo Caediovascular System<br>6200 Jackson Road<br>Ann Arbor, MI 48103 |
| Johnson & Johnson Finance Corporation<br>501 George Street<br>New Brunswick, NJ 08901 | The BK of Tokyo, Ltd.<br>640 West Sixth Street<br>Los Angeles, CA 90017 |
| Lanier Worldwide, Inc.<br>4667 North Royal Atlanta Drive<br>Tucker, GA 30084-3802 | U.S. Bank National Association<br>400 City Center<br>Oshkosh, WI 54901 |
| Leasing Associates of Barrington, Inc.<br>33 West Higgins Road<br>Suite 1030<br>South Barrington, IL 60010 | United California Bank<br>9001 East Whittier Boulevard<br>Pico Rivera, CA 90660 |

| **Other Interested Parties** | **Other Interested Parties** |
|---|---|
| California Department of Public Health<br>Licensing and Certification<br>County of Los Angeles District Office<br>12440 East Imperial Highway, Suite 200<br>Norwalk, CA 90650 | State of California - Health and Human Services<br>Agency<br>Medi-Cal<br>Department of Health Care Services<br>1501 Capital Avenue<br>Sacramento, CA 95814-5005 |
| California Department of Public Health<br>Health Facilities Inspection Division<br>Branch Chief: James L. Lawson. Ph.D., RN<br>12440 East Imperial Highway, Suite 522<br>Norwalk, CA 90650 | **Request for Special Notice Parties**<br><br>Counsel for Applecare Medical Group<br>Eric Klein<br>Sheppard Mullin Richter & Hampton LLP<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067 |
| Centers for Medicare & Medicaid Services<br>7500 Security Boulevard<br>Baltimore MD 21244-1850 | Counsel to Edmund G. Brown, Jr.<br>Office of the Attorney General<br>Wendi A. Horwitz<br>300 S. Spring St., Suite 1702<br>Los Angeles, CA  90013 |
| Franchise Tax Board<br>Attention: Bankruptcy<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Counsel to The Regents of the University of<br>California<br>Charles F. Robinson and Eric K Behrens<br>University of Southern California<br>Office of the General Counsel<br>111 Franklin Street, 89th Floor<br>Oakland, CA  94607-5200 |
| Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114 | Counsel to United PacificCare<br>Karl Block<br>Loeb & Loeb<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA  90067 |
| Los Angeles County Tax Assessor<br>500 W. Temple St. Room 225<br>Los Angeles, CA 90012-2770 | Counsel to Presbyterian Intercommunity Hosp.<br>Mark A. Kadzielski<br>Andrea M. Valdez<br>Fulbright & Jaworski L.L.P.<br>555 S. Flower St., Suite 4100<br>Los Angeles, CA  90071 |
| Meyer Christian & Associates<br>Attn Tim Denton<br>15061 Springdale Street, Suite 113<br>Huntington Beach, CA  92649 | Counsel to Presbyterian Intercommunity Hosp.<br>Michael M. Parker<br>Fulbright & Jaworski L.L.P.<br>300 Covent Street, Suite 2200<br>San Antonio, TX  78205-3792 |
| Office of the Attorney General<br>State of California<br>Registry of Charitable Trusts<br>1300 I Street, Suite 125<br>Sacramento, CA  95814-2951 | Counsel to Presbyterian Intercommunity Hosp.<br>Kevin P. Duthoy<br>Bewley Lassleben & Miller<br>13215 E. Penn Street, Suite 510<br>Whittier, CA  90602 |