MCGUIREWOODS LLP
WILLIAM H. KIEKHOFER, III, SBN 94022
JODIE M. GROTINS, SBN 261409
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210
wkiekhofer@mcguirewoods.com
jgrotins@mcguirewoods.com

Attorneys for Healthcare Finance Group, Inc.

FILED & ENTERED

OCT 19 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re

DOWNEY REGIONAL MEDICAL
CENTER-HOSPITAL, INC.,

    Debtor and Debtor-in Possession..

CASE NO. 2:09-bk-34714-BB

Chapter 11

**FINAL DIP ORDER (A) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION
FINANCING; (B) GRANTING
SUPERPRIORITY EXPENSE CLAIMS
AND SECURITY INTERESTS; AND
(C) GRANTING OTHER RELIEF UNDER
11 U.S.C. §§ 105, 361, 362, 363 AND 364,
F.R.B.P. 2002 AND 4001; AND
LBRS 2002-1 AND 4001-2**

Hearing:
Date:    October 13, 2009
Time:    2:00 p.m.
Crtrm.:  Courtroom 1475

This matter came before this Court for a final hearing on October 13, 2009 (the "Final

Hearing"); a preliminary hearing having been held on September 17, 2009, and this Court having

entered the Interim DIP Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364(c), and 364(e) and

Fed. R. Bankr. P. 4001 and 9014 (A) Authorizing Debtor To Obtain Postpetition Financing; (B)

Granting Superpriority Expense Claims And Security Interests; And (C) Prescribing Form and

Manner of Notice and Setting Time for Final Hearing (the "Interim DIP Order"); and this Court

having determined to enter this final order (the "Final DIP Order") upon the Motion (the

"Motion") filed on September 14, 2009 by the above-captioned Debtor, pursuant to sections 105,

361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of title 11 of the

United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

Local Rules for the Bankruptcy Court for the Central District of California (the "Local Bankruptcy

Rules"), seeking, among other things:

i)        authorization for Debtor to enter into and to be bound by, and the approval

of (A) the provisions of that certain Secured Super-Priority Debtor In Possession Loan and

Security Agreement (the "DIP Credit Agreement"), by and among Debtor, as borrower, the

lenders party thereto (the "DIP Lenders") from time to time and Healthcare Finance Group,

Inc., as administrative and collateral agent for such lenders (in such capacity, the "DIP

Agent") and (B) the provisions of the other documents, agreements and instruments

reasonably necessary to document the financing and transactions contemplated herein,

including without limitation deposit account control agreements, one or more lockbox

agreements, mortgages and any other documents granting a lien upon, or control (for

Uniform Commercial Code purposes) of the DIP Collateral (as defined below) as security

for payment of the Final DIP Facility (collectively, the "Ancillary DIP Agreements"; the

DIP Credit Agreement, the Ancillary DIP Agreements, the Interim DIP Order and the Final

DIP Order, collectively, the "DIP Documents"), and that the DIP Documents are entered

into in connection with postpetition financing (the "DIP Loan" or the "DIP Financing")

consisting of a superpriority and senior, priming lien-secured credit facility (collectively,

the "Final DIP Facility") pursuant to which Debtor may (a) borrow through the DIP Agent

from the DIP Lenders revolving loans up to an aggregate principal amount outstanding at

any time not to exceed $10,000,000 (inclusive of the Initial Advance as defined in the

Interim DIP Order) (the "DIP Commitment") under the terms of the DIP Documents in

order to provide working capital loans (each a "DIP Advance") for Debtor until the

Termination Date (as defined below) in an amount sufficient to prevent immediate and

\10011481.9

irreparable harm to the estate and (b) pay fees to the DIP Agent of $330,000 (the "Facility Fee"), (x) 50% of which was payable upon earlier of (i) the Initial Advance or (ii) the initial incurrence of a Minimum Usage Fee as defined in paragraph 15(b)(v) below and (y) 50% payable on the earlier of five (5) business days after entry of this Final DIP Order or 30 days after entry of the Interim DIP Order;

ii) authorization for Debtor to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

iii) authorization to appoint Cymetrix to act as DIP Agent's hot back up servicer to service the Debtor's accounts receivable in the event that Debtor is no longer deemed able to perform this function satisfactorily,

iv) limitation of Debtor's right to surcharge any DIP Collateral (as defined below) under sections 506(c) and 552(b) of the Bankruptcy Code;

Debtor having served notice pursuant to sections 102(1), 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b) and (c) and Local Bankruptcy Rules 4001-2, 2002-2(a)(4) and 9013, of the Motion, the relief requested therein on a final basis and the Final Hearing on, among others, Debtor's Twenty Largest unsecured creditors as set forth in the list filed by Debtor pursuant to Bankruptcy Rule 1007(d) (the "Twenty Largest Creditors List"); the Indenture Trustee under that certain Amended and Restated Indenture dated August 1, 1993, as amended by that certain first Supplemental Indenture dated as of February 26, 2004 (as so amended, the "Indenture") between Debtor and Norwest Bank Minnesota, National Association now known as Wells Fargo Bank, National Association, as Indenture Trustee, (the "Indenture Trustee"); Apollo Health Street, Inc. ("Apollo"); all known holders of liens on Debtor's assets, the Office of the United States Trustee for the District of California (the "United States Trustee") and all other parties as required by paragraph 33 of the Interim DIP Order;

The Debtor having filed this Chapter 11 case (the "Case") on September 14, 2009 (the "Petition Date");

\10011481.9

1    An interim hearing on the Motion (the "Interim Hearing") having been conducted on

2  September 17, 2009, and the Court having entered the Interim DIP Order upon the record of the

3  Interim Hearing;

4    An Official Committee of Creditors Holding Unsecured Claims (the "Committee") having

5  been appointed on September 25, 2009, the Committee having selected (i) proposed counsel who

6  filed Opposition to the Motion and appeared at the Final Hearing, and (ii) a proposed financial

7  advisor who submitted a declaration in support of the Committee's Opposition to the Motion.

8    The Court having heard and considered concurrently with the Motion the

9  the Debtor's Motion To Approve the "Final Order Regarding Use Of Cash Collateral and

10  Adequate Protection" (the "Final Cash Collateral Order") with regard to the use of cash collateral

11  claimed by the Indenture Trustee and Apollo, and having approved and granted the Final Cash

12  Collateral Order;

13    Upon the record made by Debtor at the Interim Hearing and the Final Hearing, the

14  Declaration of Robert E. Fuller dated September 14, 2009 in support of First Day Pleadings, the

15  Declarations of Howard N. Brand, Robert D. Lynch and Robert E. Fuller dated October 7, 2009

16  record in this Case, and having considered the Responses and Oppositions filed by the Committee,

17  London & Pacific Capital Advisers, LLC ("LPCA") and Siemens Medial Solutions USA, Inc.

18  ("Siemens") and the evidence and argument offered in support thereof (collectively, the

19  "Objections"), and the Debtor' Evidentiary Objections to Declarations of Robert Lang and Eric

20  Weissman, and Siemens' objection having been resolved, and the Committee's objection, LPCA's

21  objection and all other objections having been overruled, and it appearing that the Indenture

22  Trustee and Apollo do not object to the approval of this Final DIP Order, and that interests of all

23  other holders of liens on the DIP Collateral (as defined below) are also adequately protected, and

24  after due deliberation and consideration and sufficient cause appearing therefor:

25    **IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

26    1.    ***Disposition***.  The Motion is granted on a final basis on the terms set forth in this

27  Final DIP Order.  Any objections to the relief sought in the Motion or this Final DIP Order that

28  have not been previously resolved or withdrawn, including the Objections and all reservations of

\10011481.9

1    rights contained therein, are overruled on the merits.  The Interim DIP Order, as modified by this

2    Final DIP Order, is hereby ratified and confirmed, and this Final DIP Order shall be valid, binding

3    and enforceable on all parties in interest and fully effective immediately upon entry.

4        2.    ***Jurisdiction and Venue***.  This Court has jurisdiction over the Case and the Motion

5    as a core proceeding and over the parties and property affected hereby under 28 U.S.C. §§ 157(b)

6    and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  No request has

7    been made for the appointment of a trustee or examiner.

8        3.    ***Notice***.  Under the circumstances, the notice given by Debtor of the Motion, the

9    relief requested therein, and the Final Hearing pursuant to Bankruptcy Rules 2002, 4001(b) and (c)

10    and Local Bankruptcy Rules 4001-2, 2002-2(a)(4) and 9013 constitutes appropriate, due and

11    sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b) and (c) and Local

12    Bankruptcy Rules 4001-2, 2002-2(a)(4) and 9013.

13        4.    ***Findings Regarding the DIP Financing.***

14        a.    The DIP Credit Agreement and the Ancillary DIP Agreements, having been

15    negotiated in good faith and at arm's length between all parties thereto, all of which were or have

16    been represented by experienced counsel and financial advisers, are fair and reasonable under the

17    circumstances, are for reasonably equivalent value and fair consideration, are enforceable in

18    accordance with their terms, and have been and shall be deemed to have been entered into and

19    extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

20        b.    Debtor does not have available sources of working capital and financing to

21    carry on the operation of its business without obtaining the DIP Financing.  Debtor needs funding

22    of the DIP Financing as authorized herein (i) to finance, among other things, the orderly

23    continuation of the operation of its business; (ii) to maintain business relationships with vendors,

24    suppliers and customers; (iii) to finance payroll; (iv) to make capital expenditures to the extent set

25    forth in the DIP Budget (as defined below); (v) to satisfy other working capital and operational

26    needs; (vi) to pay the Facility Fee, 50% of which was paid on the entry of the Interim DIP Order

27    and 50% is payable on the earlier of five (5) business days after entry of this Final DIP Order or

28    30 days after entry of the Interim DIP Order, and to pay Prepetition Financing Expense Deposit

\10011481.9

1  Insufficiency (as defined below) and DIP Agent's Fees and Expenses (as defined below) pursuant

2  to the terms hereof; (vii) to provide for payment of the professional fees of the Debtor and the

3  Committee ("Professional Fees")  pursuant to the Orders of this Court, and, if necessary, for

4  funding of the Carve Out (as defined below); (viii) to pay such items as are set forth by line item

5  in the DIP Budget; (ix) to the extent and in the amounts (a) reflected in the DIP Budget and (b)

6  required by the Final Cash Collateral Order, payment of the regularly scheduled, non-default

7  amounts due to be paid by Debtor to the Indenture Trustee under the terms of the relevant Bond

8  Documents ("Bond Payments"); (x) to the extent and in the amounts (a) reflected in the DIP

9  Budget and (b) required by the Final Cash Collateral Order, payment of other amounts required by

10  the Final Cash Collateral Order, including amounts necessary to pay the fees and expense of the

11  Indenture Trustee, including fees of counsel and professionals, but (a) excluding any amounts

12  payable to the Indenture Trustee to satisfy or cure any deficiency in the Bond Reserve Account

13  Requirement under, and as that term is defined therein, the Indenture, to the extent that such

14  deficiency existed on the Petition Date, (b) including amounts payable to the Indenture Trustee to

15  satisfy or cure any deficiency in the Bond Reserve Account Requirement arising after the Petition

16  Date, limited to the amounts of any Bond Payments that had been covered by the DIP Budget and

17  were not paid by the Debtor after the Petition Date, (c) but excluding any penalty or premium

18  payable by the Debtor to the Indenture Trustee arising from the Debtor's failure to make Bond

19  Payments that were provided for in the DIP Budget; (xi) as and to the extent provided in the DIP

20  Budget and approved by the Court, to pay fees and expenses to HNB Capital, LLC ("HNB") in the

21  amount of 1.25 % of the committed amount of the Final DIP Facility (the "Placement Fee"); (xi)

22  fees payable to Cymetrix as and when it acts as DIP Agent's hot back up servicer of the Debtor's

23  accounts receivable in the event that Debtor is deemed not able to service the accounts receivable,

24  including but not limited to backup fees for data retention and preparedness; (xiii) as and to the

25  extent provided in the DIP Budget and approved by the Court, to pay the fees and expenses of FTI

26  Consulting, Inc. ("FTI") for providing an interim Chief Financial Officer ("CFO") to the Debtor

27  and provide the CFO with support staff to perform the CFO's duties and to provide staffing for an

28  analysis of the Debtor's revenue cycle, including revenue recognition and the testing of the

\10011481.9

appropriateness of contractual allowances and credits (the "Revenue Cycle Assessment") and for such other activities for which FTI or another financial advisor may hereafter be engaged by the Debtor and approved by the Court; and (xiii) for other lawful purposes in the ordinary course of Debtor's business not prohibited by the DIP Credit Agreement or this Final DIP Order ("Permissible Uses").

c.      The access of Debtor to sufficient working capital and liquidity through borrowings under the Final DIP Facility is vital to the preservation and maintenance of the going concern values of Debtor and to a successful reorganization of Debtor.  Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Credit Agreement and the DIP Documents and is unable to obtain adequate unsecured credit allowable under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtor is also unable to obtain secured credit from sources other than the DIP Lenders that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement and Superpriority Claims as defined and set forth herein.  The terms of the DIP Credit Agreement, including but not limited to the limitation of DIP Advances to not greater than seventy-five percent (75%) of the net collectible value of the Eligible Receivables and (ii) payment of the Facility Fee, are fair and commercially reasonable and in the best interests of creditors.

d.      The Debtor ascertained following the Interim Hearing that its working capital needs could be met with a DIP Commitment of $10,000,000 instead of the $15,000,000 requested to be approved on a final basis in the Motion.  The DIP Agent and DIP Lenders agreed to that reduction in the DIP Commitment, and to a reduction in the DIP Agent's Facility Fee from $380,000 to $330,000.  The reduction in the DIP Commitment will cause the DIP Agent's Exit Fee (as defined below) to decrease by $100,000.  The reduction in the DIP Agent's Facility Fee, while not fully proportionate to reduction of the DIP Commitment, is fair and commercially reasonable, was negotiated at arms length by qualified professionals on behalf of the Debtor, and is in the best interests of creditors.

e.      The terms of the DIP Credit Agreement, the Ancillary DIP Agreements and

\10011481.9

1  this Final DIP Order are fair and commercially reasonable, reflect Debtor's prudent exercise of

2  business judgment consistent with its fiduciary duties and constitute reasonably equivalent value

3  and fair consideration.

4          f.        The amounts paid to DIP Agent as expense deposits prior to Debtor's

5  decision to structure this financing as debtor in possession financing, and in connection with the

6  prepetition structuring and documentation of the Final DIP Facility (the "Prepetition Financing

7  Expense Deposits") are fair, reasonable, appropriate, and benefited the Debtor, *provided, however*,

8  that within ten (10) calendar days after entry of this Final DIP Order, DIP Agent shall disclose to

9  the Debtor, the Indenture Trustee and the Committee the amount of the Prepetition Financing

10 Expense Deposits and the amount of any professional or other fees and expenses charged against

11 and paid from the Prepetition Financing Expense Deposits, *further provided* that any unused

12 Prepetition Financing Expense Deposit shall be credited against the Debtor's postpetition

13 indemnification obligation in respect to DIP Agent's post-petition attorneys fees and expenses (but

14 not any other fees) payable pursuant to paragraph 15 and 16 hereof, and *further provided* that

15 Debtor is authorized to pay postpetition with advances under the DIP Loan which may be paid by

16 the DIP Agent and charged as DIP Advances pursuant to paragraph 15(c) below or otherwise any

17 amounts of DIP Agent's attorneys fees and expenses incurred by DIP Agent prepetition which are

18 not paid in full from the Prepetition Financing Expense Deposits (the "Prepetition Financing

19 Expense Deposit Insufficiency").

20         g.        The DIP Credit Agreement, the Ancillary DIP Agreements and the terms of

21 the Final DIP Facility have been negotiated in good faith and at arm's length among Debtor and

22 the DIP Agent, and all of Debtor's obligations and indebtedness arising under, in respect of or in

23 connection with the Final DIP Facility, the DIP Credit Agreement and the Ancillary DIP

24 Agreements, including without limitation, any and all amounts due, whether now existing or

25 hereafter arising, under the DIP Credit Agreement or any Ancillary Agreement, including any and

26 all DIP Advances (whether extended under the Interim DIP Order or this Final DIP Order),

27 interest, penalties, fees, charges, premiums, indemnities and costs owed or owing to the DIP Agent

28 or any of the DIP Lenders by the Debtor (including, without limitation, the Facility Fee and the

\10011481.9

1    Exit Fee), in each instance, whether absolute or contingent, direct or indirect, secured or

2    unsecured, due or not due, primary or secondary, joint or several, arising by operation of law or

3    otherwise, and all interest and other charges thereon, including post-petition interest (collectively,

4    the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP

5    Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy

6    Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

7    Code, and the DIP Obligations, the DIP Liens (as defined below) and the Superpriority Claims (as

8    defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in

9    the event that this Final DIP Order or any provision hereof is vacated, reversed or modified, on

10   appeal or otherwise, or modification of the terms of the financing authorized by this Final DIP

11   Order.

12          h.      Debtor has requested immediate entry of this Final DIP Order under

13   Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2 and waiver of any applicable

14   stay under Bankruptcy Rule 6004(h).  Absent granting the relief sought by this Final DIP Order,

15   Debtor's estate will be immediately and irreparably harmed.  Consummation of the financing

16   under this Final DIP Order and the DIP Credit Agreement is therefore in the best interest of

17   Debtor's estate consistent with its fiduciary duties.

18          5.      ***Authorization of the DIP Financing Under the DIP Credit Agreement.***

19          a.      ***DIP Advances***.  Subject to the satisfaction of the conditions precedent set

20   forth in the DIP Credit Agreement and this Final DIP Order, pursuant to and upon entry of this

21   Final DIP Order, Debtor's authority to enter into the DIP Financing and be bound by the

22   provisions of the DIP Credit Agreement as provided by the Interim DIP Order is ratified,

23   continued and confirmed by this Final DIP Order, and the Debtor's payment of 50% of the Facility

24   Fee upon the entry of the Interim DIP Order is ratified and confirmed.  Debtor is hereby, based on

25   entry of this Final DIP Order, authorized (i) to borrow the DIP Advances, (ii) to pay interest, fees

26   and expenses related to DIP Advances to the extent necessary as a source of working capital,

27   including, (iii) to pay the remaining 50% of the Facility Fee on the earlier of five (5) business days

28   after entry of this Final DIP Order or 30 days after entry of the Interim DIP Order, (iv) to pay the

-9-

\10011481.9

1  remaining 50% of the Placement Fee payable on the earlier of five (5) business days after entry of

2  this Final DIP Order, and (v) do all other things and execute and deliver all other documents,

3  instruments and agreements contemplated by the DIP Credit Agreement, the Ancillary

4  Agreements, and this Final DIP Order.

5          b.      Debtor is obligated to repay the DIP Obligations under the DIP Credit

6  Agreement in accordance with the terms of this Final DIP Order and the DIP Credit Agreement.

7  The proceeds of the DIP Advances shall be used for the purposes, and subject to the terms and

8  conditions, set forth herein and in the DIP Credit Agreement.

9          c.      The DIP Loan, including without limitation, all DIP Advances, will be

10  made available only after cash dominion arrangements satisfactory to the DIP Agent have been

11  effected so that available balances in all deposit accounts of Debtor (except its operating account)

12  are swept daily to Designated Lockboxes and Lockbox Accounts (as defined below).

13          d.      The Debtor is hereby authorized (i) to engage Cymetrix to act as its primary

14  servicer of its accounts receivable collection activity in the ordinary course of business, (ii) to

15  engage Cymetrix to act as the DIP Agent's hot back up servicer for the Accounts to be activated in

16  the event that Debtor is no longer deemed able to perform this function satisfactorily, (iii) to

17  replace Cymetrix with a servicer acceptable to DIP Agent and on terms and conditions acceptable

18  to DIP Agent in its reasonable discretion, it being hereby determined that Cymetrix's engagement

19  (or the engagement of a replacement servicer pursuant hereto) in such capacities does not

20  constitute the appointment of a professional and therefore that approval of Cymetrix or a

21  replacement servicer in such capacities pursuant to section 327 of the Bankruptcy Code is not

22  required and (iv) to grant a collateral assignment of the Debtor's contract with Cymetrix to the DIP

23  Agent for the benefit of DIP Lenders.

24      6.      *Lockboxes Established Pursuant to Final DIP Order.*

25          a.      As a condition precedent to any funding of the Final DIP Facility, the

26  Debtor shall have caused any bank currently in control of any lockbox(es) and lockbox account(s),

27  and other bank accounts to execute control or similar agreements in favor of the DIP Agent for the

28  benefit of DIP Lenders pursuant to which the DIP Agent will have exclusive control over such

-10-

1    lockbox(es) and account(s) in accordance with this paragraph 6 and the DIP Credit Agreement.

2              b.    With respect to accounts receivable owing to Debtor by governmental

3    payors, Debtor shall establish a remittance account (the "Governmental Remittance Account") to

4    receive remittances from such governmental payors. The Debtor shall direct (i) all government

5    payors to remit directly to the Governmental Remittance Account and (ii) the holder of such

6    Governmental Remittance Account to further remit all collections and other receipts received in

7    the Government Remittance Account to the DIP Agent.

8              c.    With respect to all other accounts receivable, Debtor will irrevocably direct

9    all non-governmental payors to remit all amounts due, payable or paid upon such accounts

10    receivable to one or more lockboxes (the "Designated Lockboxes") and lockbox accounts (the

11    "Designated Lockbox Accounts") under the DIP Agent's exclusive control.

12              d.    Debtor is authorized to enter into one or more tri-party agreements among

13    Debtor, DIP Agent and each bank described above in order to effectuate the foregoing remittance

14    arrangements.

15              e.    Debtor is required to notify all payors (including both pre-petition and post-

16    petition) to remit payments to the Designated Lockboxes and Designated Lockbox Accounts, as

17    applicable, for deposit, and Debtor will remit all amounts it receives in kind to the Designated

18    Lockboxes and Designated Lockbox Accounts, as applicable.

19              f.    All cash collections, wire transfers, electronic funds and other cash proceeds

20    of Receivables (as defined in the Credit Agreement) deposited or transferred into the Designated

21    Lockboxes and Designated Lockbox Accounts will be swept to the DIP Agent daily to be applied

22    (i) first, to expenses incurred with respect to the administration and servicing of the DIP Credit

23    Agreement, maintenance of the DIP Agent's lien and/or  the DIP Lenders' lien on the DIP

24    Collateral and all fees, expenses and collection costs that are due and payable, if any, pursuant to

25    the DIP Credit Agreement or the indemnification provision set forth in paragraph 16 below; (ii)

26    second, to all fees, interest and expenses that are due and payable to the DIP Agent and DIP

27    Lenders; (iii) third, to the reduction of the principal amount of the DIP Loan; (iv) fourth, to any

28    other DIP Obligations owing to the DIP Lenders or the DIP Agent and (v) fifth to Debtor.  For the

\10011481.9

purposes of calculating the Borrowing Base (as defined below) and the Non-Utilization Fee

hereunder, collections shall be applied as of the date of receipt in the Collection Account.  For all

other purposes, including calculation of interest expense on the DIP Loan and any other DIP

Obligation, and any amounts owing under the DIP Loan and any other DIP Obligation, all

collections of Accounts shall be applied hereunder following a clearance period of three (3)

business days after receipt of Collections by DIP Lender in its Collection Account as such terms

are defined in the DIP Credit Agreement.

       7.    ***Mandatory Prepayments.***  Unless otherwise agreed by DIP Agent in its sole and

absolute discretion, and except as provided below, the DIP Loan, and all DIP Obligations, shall be

mandatorily and permanently prepaid and the maximum amount of the DIP Loan and the DIP

Commitment, and any other DIP Obligation, shall be permanently reduced by net proceeds

received from all Extraordinary Receipts (as defined in the DIP Credit Agreement), including, but

not limited to, dispositions of DIP Collateral outside the ordinary course of business, including all

proceeds from sales of equipment, fixed assets, proceeds of other sales of DIP Collateral (but

excluding, for the purpose of clarity, Debtor's collection of its accounts receivable in the ordinary

course of business, which shall be swept to the Designated Lockboxes and Designated Lockbox

Accounts, but shall not permanently reduce the maximum amount of the DIP Loan or the DIP

Commitment), all insurance proceeds from any casualty to DIP Collateral and all proceeds of any

condemnation award in respect of any DIP Collateral (but excluding insurance or condemnation

award proceeds to the extent reasonably required and expected to be used to replace or repair

facilities or equipment that are necessary for Debtors' business operations) ("Collateral Disposition

Proceeds"), *provided, however,* that the DIP Liens on the Land will be released without requiring

mandatory prepayment if the Land (as defined below) is either sold at the fair market value or

refinanced on commercially reasonable terms based on the fair market value of the Land, in each

case as agreed upon by DIP Agent and Debtor (or, if they cannot agree or if another party in

interest disputes their agreed upon fair market value or the commercial reasonableness of loan

terms, as determined by the Court at a duly noticed valuation hearing conducted in proceedings

under Bankruptcy Code Sections 363 (as respects a sale of the Land) or 364 (as respects a

\10011481.9

1   refinancing of the Land), *further provided* that no Event of Default has occurred at or prior to the

2   closing of such sale or refinancing, and *provided further*, that if an Event of Default has

3   theretofore occurred, DIP Agent may, in its sole and absolute discretion, require application of the

4   net proceeds of any sale or refinance of the Land as a permanent pay down of the DIP Loan.  All

5   Collateral Disposition Proceeds and other Extraordinary Receipts (subject to the exclusions set

6   forth herein) shall be promptly deposited to a Designated Lockbox or Designated Lockbox

7   Account, as applicable, and swept to reduce the DIP Loan.

8         8.    ***Termination Date.***  Subject to compliance with the terms and conditions of the DIP

9   Credit Agreement and this Final DIP Order, Debtor is authorized, during the period from the date

10  of entry of this Final DIP Order through and including the Termination Date (defined below) to

11  borrow the DIP Advances.  The term "Termination Date" means the earliest of (a) one (1) year

12  from and after the date of the entry of the Interim DIP Order (the "Scheduled Maturity Date"), (b)

13  the date (if any) specified as the Termination Date in any notice of an Event of Default delivered

14  by the DIP Agent to the Debtor, the United States Trustee, the Indenture Trustee, and the

15  Committee, which notice shall be deemed given immediately upon docketing in the Court's ECF

16  system, or (c) the effective date of a plan of reorganization in the Case.  If the DIP Agent and

17  Debtor consent to an extension of the Scheduled Maturity Date or the Termination Date, they shall

18  notify the Indenture Trustee, the United States Trustee, Apollo, the Ombudsman and the

19  Committee.

20        9.    ***Requests for DIP Advances.***  Subject to the limitations of this Final DIP Order and

21  the DIP Credit Agreement, including the limitation to Permissible Uses and the DIP Financial

22  Covenants (as defined below), so long as the Termination Date has not occurred and no Event of

23  Default has occurred and is continuing, Debtor may request DIP Advances by delivering to the

24  DIP Agent, a report, prepared in accordance with the definitions and criteria applicable to

25  Borrowing Base Reports as defined in the DIP Credit Agreement and signed by an authorized

26  signer on behalf of the Debtor (each, a "Borrowing Base Report"), setting forth a borrowing base

27  ("Borrowing Base") as of any date of determination thereof, equal to the DIP Advance Rate (as

28  defined below), less applicable reserves established by DIP Agent pursuant to the DIP Credit

\10011481.9

Agreement.  DIP Advances may be requested on not less than one (1) Business Day's advance

notice to the DIP Agent and not more frequently than once per day, with a maximum borrowing

limitation of seventy-five percent (75%) of the net collectible value of the Eligible Receivables

("DIP Advance Rate").  Borrowing Base Reports will be deemed to be Debtor's representation

and warranty that (i) the DIP Advances requested are necessary to fund Debtor's operating

expenses after utilization and application of all other available cash of Debtor, (ii) the intended

uses thereof are Permissible Uses and are consistent with the terms of this Final DIP Order and the

DIP Credit Agreement and are necessary in order for Debtor to satisfy its obligations in the

ordinary course of business or as otherwise permitted under this Final DIP Order and the DIP

Credit Agreement; (iii) Debtor has observed and performed in all material respects all applicable

obligations and requirements contained in this Final DIP Order and the DIP Credit Agreement,

and satisfied each condition to the requests for DIP Advances contained in this Final DIP Order

and the DIP Credit Agreement to be observed, performed or satisfied by it, and (iv) no Event of

Default under this Final DIP Order or the DIP Credit Agreement, and no event or condition that

with notice or the lapse of time, or both, would constitute an Event of Default, has occurred and is

continuing under this Final DIP Order or the DIP Credit Agreement.

10.    ***DIP Budget.***  Debtor will only use the proceeds of DIP Advances for Permissible

Uses, including, subject to the Variance (as defined below), the costs and expenses associated with

the operation of Debtor's business and the conduct of the Case, in the amounts and categories of

Debtor's budget delivered to and agreed by the DIP Agent prior to entry of the Interim DIP Order

and which was thereby approved (the "Interim DIP Budget"), as amended by the Sixteen Week

Forecasts (defined below), which shall set forth by line item (i) net cash flow (including cash

receipts and cash disbursements), (ii) expenditures detail, including projected administrative

claims, critical vendor claims and settlements, regularly scheduled Bond Payments and other

adequate protection payments required to be paid under the Final Cash Collateral Order, and (iii)

Borrowing Base, projected by Debtor on a weekly basis for a rolling time period from the week

immediately following the then current week, to the week which is 16 weeks following the then

current week, in form and substance acceptable to, and approved in writing by, DIP Agent (each, a

\10011481.9

"Sixteen Week Forecast").  Each successive Sixteen Week Forecast shall, when so accepted by the DIP Agent in its sole and absolute discretion, replace the Interim DIP Budget or, as the case may be, the prior Sixteen Week Forecast, and thereafter shall constitute the budget governing the DIP Documents until replaced, upon its acceptance by the DIP Agent, by the successive  week's Sixteen Week Forecast (each, when so accepted by the DIP Agent, the "DIP Budget").

11.    ***Reporting Requirements.***  Debtor will provide the DIP Agent with any written financial information or reporting on the same terms as provided in the DIP Credit Agreement and this Final Order.  In addition, from and after entry of this Final DIP Order, Debtor shall deliver to the DIP Agent, the Indenture Trustee, and the Committee the following:

a.    Irrespective of whether Debtor has requested a DIP Advance, on each Wednesday, beginning with Wednesday of the first week following entry of this Final DIP Order, a Borrowing Base Report calculating the Borrowing Base as of the close of business of Tuesday of each week, together with supporting information in form and substance acceptable to the DIP Agent.

b.    The first Business Day following Debtor's request for a DIP Advance (and prior to the funding of the DIP Advance), a Borrowing Base Report calculating the Borrowing Base as of the close of business as of the day of the request for the DIP Advance.

c.    On each Wednesday, Debtor shall report (i) patient census, and changes in the patient volume and patient mix since the prior report, at the Debtor's hospital facility and (ii) any other matters material to the Debtor's continuing operation of its business.

d.    On each Wednesday Debtor shall deliver its Sixteen Week Forecast,

e.    On each Wednesday Debtor shall deliver a report, for the week ending on the preceding Wednesday, of actual net cash flow (including cash receipts and cash disbursements) and expenditures (payments on accounts payable) in each case comparing Debtor's actual performance to the DIP Budget, in a form reasonably satisfactory to the DIP Agent, and a certification from an Authorized Officer (as defined in the DIP Credit Agreement) certifying that the reports fairly present the financial condition and results of operations of Debtor for such period (each an "Actual Cash Flows Report").

\10011481.9

1        f.      On each Thursday, after delivery of the Actual Cash Flow Report, Debtor

2  shall deliver to the DIP Agent a reasonably detailed explanation for any Variance (as defined

3  below) in the Actual Cash Flows Report from the DIP Budget and stating the Debtor's compliance

4  with, or identifying any areas of the Debtor's non-compliance with the Financial Covenants of this

5  Final DIP Order or the DIP Credit Agreement, in a form reasonably satisfactory to the DIP Agent,

6  (each, a "Variance and Compliance Report").

7        g.     On each Business Day Debtor shall deliver to the DIP Agent a report, as of

8  the close of the immediately preceding Business Day, stating Debtor's actual cash balances, in

9  form and in detail reasonably satisfactory to the DIP Agent.

10       h.     As and when reported to the United States Trustee, all reports and operating

11  statements.

12       i.      As and when reported to the Indenture Trustee, all reports given or required

13  to be given to the Indenture Trustee under the Final Cash Collateral Order.

14       j.      As and when reported to the Committee, all reports given or required to be

15  given under any order or agreement between the Debtor and the Committee.

16       k.     On or before October 28, 2009, the Debtor and FTI will provide the

17  Revenue Cycle Assessment and such back-up materials as DIP Agent may reasonably request.

18       l.      The DIP Agent, through its employees, expert consultants, counsel, and

19  financial advisors, shall have access to the CFO, the employees of FTI, who may assist the CFO

20  (or, if for any reason FTI is not appointed, such other consultant or similar firm who is providing

21  or assisting the CFO), Cymetrix, the Debtor's employees, independent contractors to whom the

22  Debtor outsources, financial accounting or accounts receivable collection and monitoring

23  companies, and the Debtor's premises and non-attorney-client privileged business records at

24  reasonable times and to a reasonable extent.  The Debtor will cooperate, consult with and provide

25  the DIP Agent's employees, counsel, consultants and advisors all non-attorney-client privileged

26  information and reports as provided in the DIP Credit Agreement or as otherwise reasonably

27  requested by DIP Agent.  (Items (a) through (l), individually and collectively, the "Reporting

28  Requirements").

\10011481.9

12.    **_DIP Financial Covenants_**

    a.    **_Cash Flow to Expenditure Tests_.**  As measured at any time,

    i.   the Debtor's actual disbursements measured for the lesser of four (4) weeks or the number of full weekly periods after entry of the Interim DIP Order preceding and inclusive of the weekly period being considered (each, an "Applicable Period") shall not be in the aggregate more than 115% of projected cumulative, weekly disbursements in the DIP Budget for the Applicable Period;

    ii.   the Debtor's actual cumulative disbursements for an Applicable Period (other than in respect of salary and employee benefits) on a line item basis shall not be more than 125% of projected cumulative disbursements in the pertinent line item of the DIP Budget for such Applicable Period, provided that there shall be no permitted variation from the DIP Budget for Bond Payments;

    iii.   the Debtor's actual cumulative disbursements for an Applicable Balance in respect of salary and employee benefits shall not be greater than 115% of projected cumulative, weekly disbursements in the DIP Budget for such Applicable Period;

    iv.   For any Applicable Period, if (a) the "Cumulative Net Cash Flow" in the DIP Budget is a negative number,  the Cumulative Net Cash Flow as reported in the Weekly Reports for such Applicable Period must not be less than 115% of such negative number, or (b) the Cumulative Net Cash Flow in the DIP Budget is a positive number, the Cumulative Net Cash Flow as reported in the Weekly Reports for such Applicable Period must not be less than 85% of such positive number, *provided however*, if the Variance (as defined below) is less than $100,000 it will not be considered a Default under this Covenant.  The "Variance" is the absolute value

\I0011481.9

difference between the DIP Budget Cumulative Net Cash Flow and the (Actual) Cumulative Net Cash Flow reported in the Weekly Reports for any Applicable Period.

v.    Each of the foregoing Cash Flow to Expenditure Tests shall be measured and tested on a weekly basis, commencing on the Petition Date and shall collectively be referred to as the "Cash Flow to Expenditure Tests").

b.    ***EBITDA Test***.  EBITDA (as defined below) of the Debtor and its Subsidiaries on a consolidated basis and calculated on a monthly basis shall not be less than $1,200,000.  As used herein, "EBITDA" of any Person for any period means, the sum of (a) net income (or net loss) of such Person during such period (calculated before extraordinary items, provided, however, that bankruptcy expenses, including but not limited to fees and expenses accrued by or paid to Professional Persons (as defined below) shall not be deemed extraordinary items) plus (b) the total of the following, in each case (unless otherwise indicated) to the extent included in determining such net income (or net loss):  (i) interest expense (including that portion attributable to Capital Leases in accordance with GAAP (as such terms are defined in the DIP Credit Agreement) and capitalized interest) during such period; plus (ii) the greater of income taxes accruing, paid or payable during such period; plus (iii) depreciation and amortization expense; minus (iv) gains from asset dispositions outside of the normal course of business minus (v) pension liability adjustment to the extent that such an adjustment increases pension liability and has been excluded in determining such net income (or net loss), determined in each case in accordance with GAAP.  For the purposes of determining EBITDA of any Person for any period, "net income (or net loss)" means and refers to the amount set forth on the applicable financial statements of such Person for such period as "Net Increase/Decrease in Unrestricted Assets" ("EBITDA Test").

c.    The Cash Flow to Expenditure Tests and the EBITDA Test shall be referred to as the "DIP Financial Covenants".

\10011481.9

d.       The Debtor shall not request DIP Advances in an amount greater than the
collectible value of the Eligible Receivables multiplied by the DIP Advance Rate.

13.       ***DIP Loan Covenants***.  Debtor shall observe all covenants in the DIP Credit
Agreement, the DIP Documents and in this Final DIP Order at all times prior to the Termination
Date and the indefeasible payment in full of all outstanding DIP Advances and DIP Obligations.
In addition, without the prior written consent DIP Agent (which consent shall not be unreasonably
withheld), the Debtor will not assume, reject, terminate or stipulate to relief from automatic stay
with respect to its contracts with Siemens or Cymetrix, and if reasonably requested by DIP Agent,
the Debtor will oppose relief from the automatic stay or other relief sought by Siemens or
Cymetrix in respect thereto.  Debtor shall, within thirty days after entry of this Final DIP Order,
obtain the agreement in form satisfactory to the  DIP Agent in its discretion providing for Siemens
to continue providing to DIP Agent the products, personnel, services and rights provided to the
Debtor under its contracts with Siemens on terms no less favorable than the terms of Siemens
contracts with the Debtor, provided, however, for the avoidance of doubt, that nothing in this Final
DIP Order shall obligate Siemens in regard to such an agreement.

14.       ***Implementation, Supplementation and Modification of DIP Credit Agreement***.
In furtherance of this Final DIP Order and without further approval of this Court:

a.       Debtor is authorized and directed to perform all acts, to make, execute and
deliver all instruments and documents (including, without limitation, the execution or recordation
of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust,
control agreements and financing statements), and to pay all fees that may be reasonably required
or necessary for Debtor's performance of its DIP Obligations and this Final DIP Order, including,
without limitation, the non-refundable payment to the DIP Agent, as the case may be, of the
Facility Fee, the fees referred to in the DIP Credit Agreement and in this Final DIP Order and
reasonable costs and expenses as may be due from time to time, including, without limitation, fees
and expenses of the professionals retained as provided for herein and in the DIP Credit
Agreement;

b.       The DIP Agent and Debtor may agree in writing executed by both of them

\10011481.9

1   to (x) the execution, delivery and performance of one or more waivers, consents or forbearances

2   under the DIP Credit Agreement (it being understood that no further approval of the Court shall be

3   required for waivers, consents or forbearances under the DIP Credit Agreement, or any

4   amendment, waiver, consent or forbearance fees paid in connection therewith); (y) to make any

5   non-material amendments or modifications to the DIP Credit Agreement, including any

6   amendment or modification to correct a typographical or scrivener's error or otherwise to conform

7   to the provisions of this Final DIP Order (each a "Non-Material Modification"); and (z) to make

8   any Material Modification or Amendment (as defined below) to the DIP Credit Agreement;

9   *provided* that notice of any Material Modification or Amendment to the DIP Credit Agreement

10   shall be filed with the Bankruptcy Court and served by Debtor on the Indenture Trustee, the

11   Committee and their respective counsel, and the United States Trustee, whom shall each have five

12   (5) business days from the date of such filing within which to object in writing to such proposed

13   Material Modification or Amendment; *provided further* that if the Indenture Trustee, the

14   Committee or the United States Trustee timely objects to any such Material Modification or

15   Amendment to the DIP Credit Agreement, then such Material Modification or Amendment shall

16   only be permitted pursuant to an order of this Court after notice and a hearing.  For purposes of

17   this paragraph, a "Material Modification or Amendment of the DIP Credit Agreement" shall mean

18   any modification or amendment that operates to (1) shorten the maturity of the extensions of credit

19   under the DIP Credit Agreement, (2) increase the aggregate amount of any of the DIP

20   Commitment, (3) increase the rate of interest or any other existing fees or charges payable

21   thereunder (other than to the extent contemplated in the DIP Credit Agreement as in effect on the

22   date hereof), (4) expand the scope of the DIP Liens, or (5) otherwise modify the DIP Credit

23   Agreement in a manner materially less favorable to Debtor and its estate, but Material

24   Modification or Amendment of the DIP Credit Agreement shall exclude any forbearance or waiver

25   which may occur after a notice of an Event of Default.  The Debtor shall send notice to the

26   Committee, the United States Trustee and the Indenture Trustee of any Non-Material Modification

27   but Non-Material Modifications need not be filed with the Court and shall take effect immediately

28   and shall remain effective unless determined, on motion of a party, to constitute a Material

\10011481.9

1 Modification or Amendment of the DIP Credit Agreement, in which event such modification shall

2 be governed by this sub-paragraph;

3         c.        To the extent that a variance of the expenditures related to patient services

4 in the Cumulative Cash Flow as reported in the Weekly Report exceed the expenditures related to

5 patient services in the DIP Budget for such Applicable Period due to increases in patient volumes,

6 patient mix or acuity above those levels normally incurred or reasonably anticipated at the time of

7 the preparation of the DIP Budget, and such increases in patient volumes or acuity are expected to

8 result in commensurately higher levels of Accounts, the Debtor may request (and, if so, shall

9 provide supporting operational statistical information to support such request) from the DIP Agent

10 a waiver of default under the Cash Flow to Expenditure Tests. Based upon its reasonable

11 judgment, the DIP Lenders may in their sole discretion consent to such waiver of a default; and

12         d.        Debtor is authorized and directed to perform all other acts required under or

13 in connection with the DIP Credit Agreement.

14         15.    ***Interest, Fees and Expenses.***  Debtor shall pay the following, all as more

15 particularly set forth in the DIP Credit Agreement:

16         a.        ***Interest*.**  On the first business day of each month, current cash payment of

17 all accrued and unpaid interest on the DIP Obligations at the rate equal to 3-month LIBOR plus

18 6.25% per annum, in each case, payable for the immediate prior month (or portion thereof), in

19 arrears, and payable on the Termination Date or thereafter on demand.  Irrespective of prevailing

20 market LIBOR at any time, the rate set for 3-month LIBOR by the DIP Credit Agreement shall not

21 be less than 2.75%.  On the occurrence and during the continuation of an Event of Default, interest

22 will be payable on all DIP Obligations at a rate that is 4% above the otherwise applicable rate.

23 Interest calculations will be based on a 360 day year and actual days elapsed.  None of the fees,

24 costs and expenses payable under this paragraph shall be subject to separate or prior approval by

25 this Court and no recipient of these payments shall be required to file a motion or interim or final

26 fee application pursuant to the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy

27 Code in regard thereto.

28         b.        ***Fees Payable to DIP Agent.***

\10011481.9

i.    The Facility Fee as described above.

ii.    ***Collateral Tracking Fee.***  0.50% per annum, accruing daily but payable monthly, on the average outstanding balance.

iii.    ***Non-Utilization Fee***.  0.50% per annum, accruing daily but payable monthly, on the difference between the DIP Commitment (as defined in the DIP Credit Agreement) and the average outstanding balance.

iv.    ***Exit Fee.***  2.0% of the DIP Commitment (as defined in the DIP Credit Agreement), upon permanent repayment of DIP Obligations and reduction of the DIP Commitment or any portion thereof at any time, provided that the Exit Fee will be credited against the facility fee related to a chapter 11 plan exit financing facility provided that the DIP Agent and the DIP Lenders, in their discretion, provide post reorganization senior financing ("Exit Fee").

v.    ***Minimum Usage Fee.***  A fee, accruing daily but payable monthly, equal to interest that would have accrued but for the actual amount of the outstanding Interim DIP Advances being less than $4,000,000 at any time from the entry of the Interim DIP Order and upon entry of this Final DIP, and $5,000,000 at any time from the Incremental Facility Effective Date (as defined in the DIP Credit Agreement) until the Termination Date ("Minimum Usage Fee").

vi.    ***Wire Transfer Fees***.  $40.00 per wire transfer, or such other amount as is reasonably necessary to reimburse DIP Agent for its out-of-pocket expense for bank charges and overhead in connection with execution and confirmation of wire transfers.

c.    The Prepetition Financing Expense Deposit Insufficiency, if any, and all accrued and unpaid fees and expenses incurred after the Petition Date which are payable on account of professional services rendered to the DIP Agent or the DIP Lenders, or any of their respective affiliates, with regard to the negotiation, documentation and implementation of the DIP

\10011481.9

1   Credit Agreement or its participation in, or enforcement of rights in regard to, the Final DIP

2   Facility, or pertaining to the Case ("DIP Agent and Lenders Fees and Expenses"), including but

3   not limited to the reasonable fees and disbursements of counsel, financial advisors and other

4   consultants for the DIP Agent and the DIP Lenders, or any of their respective affiliates, within ten

5   (10) calendar days after receipt by the Debtor and the Committee of invoices from these

6   professionals (which may be redacted to remove the DIP Agent's attorney-client privileged

7   communications).  Unless the Debtor or the Committee notifies the DIP Agent that it objects to

8   any portion of the DIP Agent's fees within such ten (10) calendar days ("DIP Agent and Lenders

9   Fees and Expenses Objection"), DIP Agent may pay DIP Agent and Lenders Fees and Expenses

10   by making a DIP Advance and the amount thereof shall be added to the DIP Loan.  Any DIP

11   Agent and Lenders Fees and Expenses Objection shall state with particularity the particular time

12   or expense entries to which the Debtor or the Committee, as applicable, objects and the reasons

13   therefor, or the DIP Agent may disregard such objection.  The Court's decision of a DIP Agent and

14   Lenders Fees and Expenses Objection shall be determined under the reasonableness standards

15   applicable to a secured creditor's fees, costs and charges pursuant to Bankruptcy Code Section

16   506(b).  If the Debtor or the Committee asserts a DIP Agent and Lenders Fees and Expenses

17   Objection, the DIP Agent shall exclude from the DIP Advance the portion of DIP Agent and

18   Lenders Fees and Expenses that are specified in the DIP Agent and Lenders Fees and Expenses

19   Objection until it has been resolved by agreement between the Debtor or the Committee, as

20   applicable, and the DIP Agent, Court Order, or otherwise, but it may make a DIP Advance for any

21   DIP Agent and Lenders Fees and Expenses (or the portion thereof) that are not specifically

22   objected to in a DIP Agent and Lenders Fees and Expenses Objection.

23           d.      The Prepetition Financing Expense Deposits are approved and deemed to

24   have been indefeasibly paid to DIP Agent and not subject to avoidance or offset by Debtor or the

25   Estate, subject only to DIP Agent's obligation to credit any unused portion of the Prepetition

26   Financing Expense Deposits against the indemnification of fees and expenses as provided in the

27   following paragraph (subject to the right of the Debtor or the Committee to file a DIP Agent and

28   Lenders Fees and Expenses Objection in connection with the payment of the Prepetition Financing

\10011481.9

Expense Deposit Insufficiency).

           e.    *Fees Payable to HNB:*  1.25% of the DIP Commitment.

      16.    ***Indemnification.***  Debtor shall indemnify the DIP Agent and DIP Lenders (and their  directors, officers, employees, agents, attorneys, affiliates and advisors, collectively, the "Indemnitees") on the terms provided in Section 2.05 of the DIP Credit Agreement, and will reimburse, indemnify, pay and hold Indemnitees harmless from and against DIP Agent and Lenders Fees and Expenses, *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such indemnified liabilities are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee, and *provided further* that DIP Agent will credit against Debtor's post-petition indemnification obligation as respect to DIP Agent's attorneys fees any unused portion of the Prepetition Financing Expense Deposits.

      17.    ***Effectiveness of DIP Credit Agreement***.  From and after entry of the Interim DIP Order (the "Effective Date") and continuing from and after entry of this Final DIP Order, the DIP Credit Agreement constituted and constitutes a valid and binding obligation of Debtor, enforceable against Debtor in accordance with the terms of this Final DIP Order for all purposes during the Case, any subsequently converted case of Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal of the Case.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement or this Final DIP Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

      18.    ***Conditions Precedent to the Final DIP Facility.***  Conditions precedents to the DIP Agent's and the DIP Lenders' obligations to fund subsequent DIP Advances under the Final DIP Facility shall include but are not limited to:

           a.    Debtor shall be in compliance with all applicable laws and regulations, and shall have obtained all licenses, consents and approvals necessary to operate its business and shall

\10011481.9

1  have obtained all material and appropriate approvals pertaining to all applicable governmental,

2  ERISA, retiree health benefits, workers' compensation and other requirements, regulations and

3  laws including Environmental Laws (as defined in the DIP Credit Agreement).

4          b.      Agreement of Cymetrix to act as DIP Agent's hot back up servicer to

5  service the Accounts in the event that Debtor is no longer deemed able to perform this function

6  satisfactorily, the granting of a collateral assignment of Cymetrix's contract with the Debtor to DIP

7  Agent, accompanied by Cymetrix's written consent to such assignment, all in form acceptable to

8  DIP Agent.

9          c.      The DIP Agent shall have received and been satisfied with all applicable

10  orders entered by the Bankruptcy Court in the event special authority is needed.

11          d.      No unwaived Event of Default has occurred under the DIP Credit

12  Agreement, and no event or condition that with notice or the lapse of time, or both, would

13  constitute an Event of Default, has occurred and is continuing under the DIP Credit Agreement.

14          e.      The DIP Agent shall have received an Intercreditor Agreement between the

15  DIP Agent, the Indenture Trustee and such other parties as the DIP Agent deems necessary in its

16  sole discretion, satisfactory to DIP Agent in its sole and absolute discretion.

17          f.      The Court shall have approved the appointment of an interim CFO

18  acceptable to DIP Agent, with a scope of service acceptable to the DIP Lenders and DIP Agent.

19          g.      DIP Agent shall have received a "drive-by" appraisal of the Land (as

20  defined below) in form acceptable to DIP Agent in its sole and absolute discretion.

21          h.      The DIP Agent shall have received such additional documents, information

22  and materials as the DIP Agent may reasonably request.

23          i.      Satisfactory legal due diligence review, including but not limited to the

24  Debtor's disclosure to the DIP Agent of the extent and amount of rights of setoff or recoupment

25  arising from Debtor's capitation or risk sharing contracts or agreements by claimants which are

26  account debtors of the Debtor.

27          19.    ***DIP Liens.***  As security for the DIP Obligations, effective and perfected upon the

28  date of entry of the Interim DIP Order, which effectiveness and perfection is continued by the

\10011481.9

1   entry of this Final DIP Order, and without the necessity of the execution or recordation of filings

2   by Debtor, of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds

3   of trust, control agreements, financing statements or other similar documents, or the possession or

4   control by the DIP Agent for the benefit of DIP Lenders of, or over, any DIP Collateral, the

5   following security interests and liens are hereby granted to the DIP Agent for its own benefit and

6   for the benefit of DIP Lenders on all tangible and intangible assets of Debtor, whether now

7   existing or hereafter arising, and whether or not encumbered prior to the petition date, including,

8   but not limited to:  (i) all Accounts generated post-petition and proceeds thereof, (ii) all pre-

9   petition Accounts and proceeds thereof, (iii) all intangibles, (iv) real property and the

10   improvements thereon (the "Land"), (v) all other assets of Debtor including but not limited to

11   inventory and equipment, and (vi) any and all cash of Debtor (whether maintained with the DIP

12   Agent, any of the DIP Lenders, or otherwise), and the proceeds of all the foregoing  (clauses (i)

13   through (vi) collectively, but excluding any and all cash or other property received by Debtor in

14   the form of gifts, charitable donations, bequests or grants that are by their terms, restricted in the

15   manner in which they may be utilized by Debtor to the extent, and only to the extent, that such

16   restrictions would prohibit the granting of any such bequests or grants as collateral or prohibit the

17   payment of any such bequests or grants to the DIP Agent for the benefit of DIP Lenders, the "DIP

18   Collateral"), *provided, however*, that DIP Collateral shall not include (i) Debtor's claims and

19   causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy

20   Code and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance

21   Actions") and (ii) any funds or accounts held or maintained by the Indenture Trustee under the

22   terms of the Indenture, including but not limited to the Bond Funds as that term is defined in the

23   Final Cash Collateral Order (all such liens and security interests granted to the DIP Agent for the

24   benefit of DIP Lenders pursuant to the Interim DIP Order, this Final DIP Order and the DIP Credit

25   Agreement, the "DIP Liens"), with the following priorities, and subject, in this Case, to the Carve

26   Out:

27           a.  ***Senior, Priming, First Priority Priming Lien on Substantially All Assets.***

28   Except as provided in subparagraph (b) below, pursuant to section 364(d) of the Bankruptcy Code,

\10011481.9

1    a valid, binding, continuing, enforceable, fully-perfected, senior and priming first priority senior

2    security interest in and lien upon all DIP Collateral except leased or purchase money-financed

3    equipment of Debtor which was on the petition date herein subject to valid and perfected pre-

4    petition security interests.

5              b.    *Junior DIP Lien*.    DIP Agent for the benefit of DIP Lenders is granted a

6    junior lien pursuant to Section 11 U.S.C. § 364(c)(3) on leased or purchase money-financed

7    equipment of Debtor which was on the Petition Date subject to valid and perfected security

8    interests.

9              c.    For avoidance of doubt, the DIP Agent consents to a junior and fully

10   subordinate lien on all property of the estate to be granted in favor of the Indenture Trustee

11   pursuant to an adequate protection or cash collateral stipulation between Debtor and the Indenture

12   Trustee which is reasonably acceptable to DIP Agent and is approved by the Court, and a junior

13   and fully subordinate lien on all property of the estate in favor of Apollo, subject, however, to all

14   defenses and objections to Apollo's lien and claim.

15             d.    Notwithstanding any contrary provisions of the DIP Credit Agreement,

16   Debtor is not required to assign the lease with the City of Downey as collateral for the DIP

17   Obligations.

18        20.    *Superpriority Claims*.

19             a.    In the event and to the extent that the DIP Collateral does not satisfy in full

20                   the DIP Obligations as determined in accordance with paragraph 20(b)

21                   below, then, subject to the Carve Out, pursuant to section 364(c)(1) of the

22                   Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior

23                   administrative expense claims against Debtor with priority over any and all

24                   unpaid administrative expenses, diminution claims and all other claims

25                   against Debtor, now existing or hereafter arising, of any kind whatsoever

26                   (the "Superpriority Claims"), including, without limitation, all other unpaid

27                   administrative expenses of the kind specified in sections 503(b) and 507(b)

28                   of the Bankruptcy Code, and over any and all administrative expenses or

\10011481.9

other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c),
507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at
all times be senior to the rights of Debtor, any successor trustee or any
creditor, in this Case or any subsequent proceedings under the Bankruptcy
Code, whether or not such expenses or claims may become secured by a
judgment lien or other non-consensual lien, levy or attachment, which
allowed claims shall be payable from and have recourse to all pre- and post-
petition property of Debtor and all proceeds thereof.  The Superpriority
Claims granted hereunder shall also have recourse to any and all proceeds
or property (net of the costs of the recovery or disposition of such property)
in respect of (i) any and all proceeds of Avoidance Actions (the "Avoidance
Action Proceeds") whether or not such proceeds or property is recovered
from a judgment, settlement or otherwise, and (ii) the Debtor's interests,
rights, choses in action, or claims of any kind whatsoever, choate or
inchoate, present or residual, which for any reason cannot be made subject
to the DIP Lien (except for the Bond Funds, as that term is defined in the
Final Cash Collateral Order) including, including, but not limited to, the
Debtor's interest in the lease from the City of Downey, to the Debtor and the
leasehold improvements located thereon (the "Unencumbered Assets").
Prior to Payment In Full Of The DIP Loan and all DIP Obligations (as
defined the DIP Credit Agreement), Debtor shall not sell, pledge,
hypothecate or otherwise encumber any Avoidance Action Proceeds or
Unencumbered Assets.

b.  Prior to the DIP Agent on behalf of the DIP Lenders demanding payment on
account of the Superpriority Claims against any Unencumbered Assets or
Avoiding Power proceeds, the DIP Agent and DIP Lenders shall have used
commercially reasonable efforts (i) to the extent commercially appropriate,
to collect, and (ii) to the extent commercially appropriate, to liquidate the

-28-

\10011481.9

DIP Collateral to pay in full the DIP Obligations, in the cases of both

subclauses (i) and (ii) hereof, for a period of seventy-five days after the later

of a (A) a Termination Date, (B) the denial of a Relief from Default Motion,

and (C) the termination of any stay or injunction applicable to DIP Agent or

DIP Lenders based upon a Relief from Default Motion, provided, however,

that the Debtor or the Committee may seek relief from the Court based on

the equities.

21.    ***Carve Out.***  For purposes hereof, Carve Out shall mean the sum of Court and UST

Fees, Potential Chapter 7 Fees and Post Default Professional Fees as defined and limited in

subparagraphs (a) through (d) below:

a.    All fees required to be paid to the Clerk of the Bankruptcy Court and to the

Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus

interest at the statutory rate (without regard to the notice set forth in subparagraph (c) below)

("Court and UST Fees");

b.    Fees and expenses up to $15,000 incurred by a trustee under section 726(b)

of the Bankruptcy Code (without regard to the notice set forth in subparagraph (c) below) (the

"Potential Chapter 7 Trustee Fees");

c.    To the extent allowed by the Court, all professional fees and expenses (the

"Post Default Professional Fees") which had not for any reason been paid to or held by

Professional Persons (as defined below) prior to the first business day following the earlier of the

delivery by (x) the DIP Agent of a notice of an Event of Default which specifies a Termination

Date under this Final DIP Order or the DIP Credit Agreement or (y) the delivery by the Indenture

Trustee of a notice of the occurrence of a Termination Event as that term is used in the Final Cash

Collateral Order, whether such Post Default Professional Fees are allowed by the Bankruptcy

Court prior to or after delivery of such notice of an Event of Default or the occurrence of a

Termination Event, and incurred by (i) persons or firms retained by Debtor pursuant to section

327, 328 or 363 of the Bankruptcy Code, (ii) any statutory committee hereafter appointed in the

Case, or (iii) a patient care ombudsman (the "Ombudsman") appointed pursuant to section 333 of

\10011481.9

1  the Bankruptcy Code (collectively, the "Professional Persons").

2         d.     The carve out to provide for the potential liabilities for Court and UST Fees,

3  Potential Chapter 7 Fees and Post Default Professional Fees shall be in an amount of $500,000

4  (the "Carve Out") and, for the avoidance of doubt, shall not be affected or enlarged by the

5  Variances.  The DIP Agent may in is sole and absolute discretion establish collateral reserves or

6  availability blocks from the Borrowing Base for the Carve Out.

7         e.     For the purpose of clarity, the Carve Out shall not be reduced by (i)

8  amounts paid to Professional Persons or on account of Court and UST Fees by Debtor prior to the

9  delivery by the DIP Agent or the Indenture Trustee of the notices described in subsection (c) of

10  this paragraph or (ii) retainers received by Professional Persons prior to the filing of the Case.

11         f.     The Carve Out under the Final Cash Collateral Order and this Final DIP

12  Order shall constitute a single Carve Out.

13     22.     ***Limitation on Charging Expenses Against DIP Collateral.***  Except to the extent of

14  the Carve Out, no expenses of administration of this Case or any future proceeding that may result

15  from this Case, including liquidation in bankruptcy or other proceedings under the Bankruptcy

16  Code, may be charged against or recovered from the DIP Collateral under sections 506(c) and

17  552(b) of the Bankruptcy Code or any similar principle of law, without the prior written consent of

18  the DIP Agent, and no consent of the DIP Agent may be implied from any other action, inaction,

19  or acquiescence by the DIP Agent, provided however that DIP Agent shall be deemed to have

20  consented to the payment in the ordinary course of business of operating expenses provided for in

21  the approved DIP Budgets.  Except on the terms as provided in this Final DIP Order and the DIP

22  Credit Agreement, Debtor is enjoined and prohibited from (i) using the DIP Loan; (ii) using the

23  DIP Collateral; (iii) applying to any court for an order authorizing the use of the DIP Collateral or

24  Unencumbered Assets as collateral for debtor in possession financing other than the Final DIP

25  Facility under the DIP Credit Agreement, the DIP Documents and this Final Order.

26     23.     ***Perfection of DIP Liens.***

27         a.     The DIP Agent is hereby authorized, but not required, to file or record any

28  one or more financing statements, trademark filings, copyright filings, patent assignments, real

-30-

\10011481.9

1    estate mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments

2    (collectively, "Notice Filings") in any jurisdiction, or take possession of or control over, or take

3    any other action in order to validate and perfect the liens and security interests granted to the DIP

4    Agent hereunder.  The DIP Liens granted under the Interim DIP Order and this Final DIP Order,

5    shall constitute valid and duly perfected security interests and liens, and the DIP Agent is hereby

6    not required to file or record any Notice Filings which otherwise may be required under federal or

7    state law in any jurisdiction, or take any action, including taking possession, to validate and

8    perfect such security interests and liens, and such liens and security interests shall be deemed

9    valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or

10   subordination, as of the Effective Date.  The failure of Debtor to execute any documentation

11   relating to the enforceability, priority or perfection of the DIP Liens shall in no way affect the

12   validity, perfection or priority of the DIP Liens.

13                  b.      If the DIP Agent, in its sole discretion, elects to file any Notice Filings or

14   otherwise to confirm perfection of such DIP Liens, Debtor shall cooperate with and assist in such

15   process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the

16   filing and recording of a certified copy of the Interim DIP Order, the Final DIP Order or any such

17   Notice Filings, and all such documents shall be deemed to have been filed and recorded at the time

18   of and on the Effective Date.  Any error, omission or other defect in any such filing shall not affect

19   the validity, enforceability, priority or perfection of any DIP Liens granted under the Interim DIP

20   Order, this Final DIP Order or rights under the DIP Credit Agreement.

21                  c.      A certified copy of this Final DIP Order or the Interim DIP Order may, in

22   the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition

23   to or in lieu of such Notice Filings, and all filing offices are hereby authorized and directed to

24   accept such certified copy of this Final DIP Order or the Interim DIP Order for filing and

25   recording. The DIP Liens may be perfected against the Land by recordation of the Interim DIP

26   Order and/or this Final DIP Order or Abstract thereof in the appropriate state or county filing

27   office.

28                  24.    *Events of Default*.  In addition to the Events of Default under the DIP Credit

\10011481.9

Agreement, which are incorporated herein and constitute events of default hereunder, the following shall constitute events of default (each, an "Event of Default") under this Final DIP Order:

        a.      If Debtor fails to obtain Court approval on or before November 15, 2009 of the employment of a Chief Financial Officer ("CFO") from FTI or another similar firm acceptable to DIP Agent, whose CFO function shall be adequately supported by FTI's (or such other firm's) employees to a degree reasonably acceptable to DIP Agent, all with a scope of service acceptable to the DIP Agent, in its sole and absolute discretion, and authorizing the CFO to make (i) periodic reports on the Debtor's finances and operations in form and frequency reasonably acceptable to DIP Agent, and (ii) its data, analysis and personnel available to the DIP Agent or its professionals on reasonable notice and at reasonable times, to answer the DIP Agent's and its professionals' questions with respect to the matters within such scope of service.

        b.      If the Revenue Cycle Assessment is not delivered to DIP Agent on or before October 28, 2009.

        c.      The Case is dismissed or converted to a Chapter 7 case; or if a Chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the business of Debtor (powers beyond those established in section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Case and the order appointing such trustee, responsible officer or examiner shall not have been reversed or vacated within 3 days of entry thereof.

        d.      The Bankruptcy Court enters an order granting relief from the automatic stay to the holder or holders of a security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Debtor which have an aggregate value in excess of $50,000.

        e.      An order is entered reversing, amending, supplementing, suspending or staying this Final DIP Order.

        f.      If Debtor creates, incurs or causes to exist any postpetition liens or security interests other than those granted pursuant to the Interim DIP Order or this Final DIP Order, to which the DIP Agent has not consented in writing which exceeds $50,000 at any one time,

\10011481.9

1    provided, however, that DIP Agent and the DIP Lenders shall be deemed to have consented to

2    liens junior to the DIP Liens in favor of the Indenture Trustee and Apollo.

3              g.        If the Debtor (1) suffers any judgment on a post-petition obligation or (2)

4    the Court allows an administrative claim which (A) is not contemplated by the DIP Budget (within

5    permitted Variance parameters), (B) not covered by insurance, and (C) the enforcement of the

6    judgment or payment of the administrative claim has not been stayed or agreed by the claimant to

7    be deferred, or (3) if the Debtor compromises an account receivable, which, in each case, will

8    reasonably foreseeably have an adverse impact on the Debtor's cash flow or Borrowing Base in the

9    DIP Budget in excess of $50,000 (the occurrences described in subclauses (1), (2) and (3) hereof,

10   each an "Adverse Budget Impact"), unless the Adverse Budget Impact has been (a) identified as a

11   line item by amount and creditor or account debtor, as the case may be, on a Rolling Sixteen Week

12   Forecast, and (b) such Rolling Sixteen Week Forecast has been approved by the DIP Agent and

13   has become the DIP Budget, it being understood that the filing of a motion to approve the

14   incurrence of an Adverse Budget Impact shall not constitute an Event of Default provided that the

15   conditions of subclauses (a) and (b) hereof are met prior to Court's Order approving the motion.

16   For avoidance of doubt, (i) allowance and payment of administrative claims which are Permissible

17   Uses, included in the DIP Budget and paid in the ordinary course of Debtor's business shall not

18   constitute an Event of Default, (ii) the allowance of administrative claims by stipulation or order

19   providing for payment on or after the effective date of a plan of reorganization that provides for

20   full payment of the DIP Loan shall not constitute an Event of Default, (iii) allowance of

21   Professional Fees pursuant to Orders of the Court (each, a "Professional Fee Allowance") in

22   excess of the amounts theretofore allocated in the DIP Budget shall not constitute an Event of

23   Default, provided that the Debtor may pay, within permitted Variance parameters, Professional

24   Fee Allowances only in amounts not greater than the amounts provided for in the DIP Budget,

25   cumulative of all periods through the month in which the Professional Fee Allowance is ordered

26   by the Court.  For the purpose of clarity, Professional Fee Allowances may be paid by the Debtor

27   from the relevant line item of the DIP Budget for a Professional from periods of the DIP Budget

28   occurring either before or after the month in which the Court ordered the Professional Fee

-33-

\10011481.9

Allowance.

h.      The Bankruptcy Court shall have entered an order approving payment of any prepetition Claim (other than by application of a prepetition deposit), such as a critical vendor claim, unless the claim has been (i) identified as a line item by amount and creditor on a Rolling Sixteen Week Forecast, (ii) such Rolling Sixteen Week Forecast has been approved by the DIP Agent and has become the DIP Budget, it being understood that the filing of a motion to approve such a payment shall not constitute an Event of Default provided that the conditions of subclauses (i) and (ii) hereof are met prior to Court's Order approving the motion.

i.      Debtor (or any of its successors or assigns) files a motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of any claim or lien securing or pertaining to the DIP Obligations.

j.      The Court allows the setoff of a prepetition deposit from one of the Debtor's account debtors which, after giving effect to the setoff, causes the Debtor to breach a Financial Covenant of the Final DIP Order or the DIP Credit Agreement.

k.      Debtor has not filed a plan (and disclosure statement) in the Case at least ninety (90) days before the Scheduled Maturity Date, or has filed a plan which does not provide for the Payment In Full of the DIP Loan and all DIP Obligations on the effective date of such plan.

l.      A plan is confirmed in the Case that does not provide for termination of the DIP Obligations and payment in full in cash of outstanding obligations pursuant to the DIP Credit Agreement and DIP Documents (on the effective date of a plan of reorganization or liquidation), or any order is entered that dismisses the Case and which order does not provide for such termination and payment, or Debtor seeks support for or fails to contest the filing or confirmation of a plan or the entry of an order that does not provide for Payment In Full of the DIP Loan and all DIP Obligations on the effective date of such plan.

m.      The filing of a motion, pleading, or proceeding by Debtor, or any of its affiliates, that could reasonably be expected to result in any impairment of the rights or interests of the DIP Lenders and DIP Agent or a determination by a court with respect to a motion, pleading or proceeding brought by another party that results in any impairment of the rights, claims and liens

-34-

\10011481.9

1   relating to the DIP Loan and any DIP Obligations.

2               n.      Any other superpriority administrative expense claim or lien (other than the

3   Carve Out) which is pari passu with or senior to the Superpriority Claims or DIP Liens of the DIP

4   Agent for the benefit of DIP Lenders is granted in the Case, provided, however, for avoidance of

5   doubt, payment of operating expenses in the ordinary course of business pursuant to the DIP

6   Budget is permitted.

7               o.      If without DIP Agent's written consent the DIP Advances exceed at any

8   time the Borrowing Base.

9               p.      Any failure of Debtor's actual performance to meet the requirement of the

10   DIP Budget, within permitted Variance parameters.

11               q.      Failure of Debtor to satisfy in a timely fashion any of the Reporting

12   Requirements of the Interim DIP Order, this Final DIP Order, DIP Documents and the DIP Credit

13   Agreement.

14               r.      Debtor default in the due and punctual payment of any payment, fee or

15   expense owing to a DIP Lender and/or DIP Agent pursuant to any of the DIP Documents, when

16   and as the same shall become due and payable, whether pursuant to this Final DIP Order or Article

17   II of DIP Credit Agreement, at maturity, by acceleration or otherwise, except that prior to an Event

18   of Default the Debtor shall have up to one business day to cure such a default on the DIP Loan

19   and/or DIP Obligations with respect to a Borrowing Base Deficiency (as defined in the DIP Credit

20   Agreement).

21               s.      Any material provision of DIP Credit Agreement or any other DIP

22   Document shall at any time fail for any reason to be in full force and effect, or the DIP Credit

23   Agreement or any other DIP Document shall terminate, be terminated or become void or

24   unenforceable by the DIP Agent for the benefit of the DIP Lenders for any reason whatsoever

25   without the prior written consent of the DIP Agent.

26               t.      The Credit Agreement and the other DIP Documents and the Interim DIP

27   Order and/or Final DIP Order shall, for any reason, cease to create a valid lien on any of the DIP

28   Collateral purported to be covered thereby or such lien shall cease to be a perfected lien having the

\10011481.9

1   priority provided herein pursuant to Section 364 of the Bankruptcy Code against Debtor, or Debtor

2   shall so allege in any pleading filed in any court.

3           u.      Debtor shall default in the performance or observance of any covenant,

4   agreement or provision contained in the DIP Credit Agreement or any other DIP Document or in

5   any other instrument or document evidencing or creating any obligation, guaranty or lien in favor

6   of the DIP Agent or the DIP Lenders in connection with or pursuant to the DIP Credit Agreement.

7           v.      The Debtor, without the DIP Agent's written consent, alters or modifies any

8   direction concerning (i) the remittances of government payors to the Governmental Remittance

9   Account, (ii)  the remittances of the holder of the Governmental Remittance Account to the DIP

10  Agent or (iii) the remittance of any non-government payor to the Designated Lockboxes or

11  Designated Lockbox Accounts, or otherwise.

12          w.      A "Revocation Order" (as defined in the depositary agreement) shall have

13  been sent or any change or replacement shall have been made in the standing revocable

14  instructions (as described in each of the depositary agreement(s)) or any bank at which any deposit

15  account, blocked account, or lockbox account (including the Designated Lockboxes and

16  Designated Lockbox Accounts) is maintained shall fail to comply with any of the terms of any

17  deposit account, blocked account, lockbox account or similar agreement (including any depositary

18  agreement) to which such bank is a party.

19          x.      Any Termination Event shall have occurred under the Interim Cash

20  Collateral Order or Final Cash Collateral Order.

21          y.      Any representation or warranty made or deemed made by the Debtor under

22  or in connection with the Interim DIP Order, this Final DIP Order, DIP Credit Agreement or any

23  other DIP Document or any information or report delivered by the Debtor pursuant to the Interim

24  DIP Order, this Final DIP Order, DIP Credit Agreement or any other DIP Document shall prove to

25  have been incorrect or untrue in any material respect when made or deemed made or delivered.

26          z.      As of any date of determination, Debtor is found to have been overpaid by

27  Governmental Entities (as defined in the DIP Credit Agreement) during any period covered by an

28  audit conducted by the Centers for Medicare and Medicaid Services of the United States

\10011481.9

Department of Health and Human Services or any state entity and such overpayment is not repaid within three days of its due date or reserved for in a manner reasonably acceptable to the Agent.

aa.    There shall have occurred any event, or any condition shall exist, other than the filing of the Case, that has had or resulted in, or could reasonably be expected to have or result in, a Material Adverse Effect (as defined in the DIP Credit Agreement) since the Petition Date.

bb.    If without the prior written consent of DIP Agent (which consent shall not be unreasonably withheld), the Debtor assumes, rejects, terminates or stipulates to relief from automatic stay with respect to its contracts with Siemens or Cymetrix, or if after being requested to do so by the DIP Agent, the Debtor unreasonably fails to oppose relief from the automatic stay or other relief sought by Siemens or Cymetrix, or if the Court lifts the automatic stay in favor of Siemens or orders rejection of Siemens' contracts with the Debtor.

cc.    If the Debtor fails, within thirty days after entry of this Final DIP Order, to obtain the agreement in form satisfactory to the  DIP Agent in its discretion providing for Siemens to continue providing to DIP Agent the products, personnel, services and rights provided to the Debtor under its contracts with Siemens on terms no less favorable than the terms of Siemens' contracts with the Debtor.

dd.    The Debtor enters into any transaction or agreement that could reasonably be expected to result in a Change of Control (as defined in the DIP Credit Agreement) that is to become effective prior to payment in full of the DIP Loan and all DIP Obligations; or a Change of Control shall have occurred prior to payment in full of the DIP Loan and all DIP Obligations.

ee.    Debtor is enjoined, restrained or in any way prevented by the order of any court or any Governmental Entity from conducting all or any material part of its business for more than five (5) days.

25.    ***Protection of the DIP Agent's and DIP Lenders' Rights.***

a.    *Remedies on Termination Date.*  Subject to the following provisions of this paragraph and the Court's determination of the outcome on a Relief From Default Motion (as defined below), on and after the Termination Date, the DIP Agent for the benefit of the DIP Lenders shall have the exclusive right to exercise all rights and remedies under the DIP

\10011481.9

Documents as provided below, including in respect of exercising all rights and remedies to dispose

of the DIP Collateral, in such commercially reasonable manner as the DIP Agent may determine to

effect the repayment of the Final DIP Facility with the proceeds of such dispositions.  After the

occurrence and during the continuance of an Event of Default that has not either (i) been waived

by the DIP Agent or (ii) solely with regard to the remedies set forth in subparagraph c. below,

unless temporarily stayed by the filing of a Relief From Default Motion or by the Court's issuance

of a Relief From Default Order (as defined below), the DIP Agent for the benefit of the DIP

Lenders may undertake the following remedies, for which the automatic stay of section 362(a) of

the Bankruptcy Code is hereby lifted:

b.    ***Remedies Available Without Notice Or Further Court Approval.***  On the

Termination Date, without further Order of the Court, the automatic stay having been hereby lifted

for such purposes, and without regard to any temporary stay arising from the filing of a Relief

From Default Motion, (i) Debtor's right to obtain DIP Advances on the terms and conditions set

forth in the DIP Credit Agreement and in this Final DIP Order shall terminate automatically, (ii)

the unpaid balance of the DIP Obligations (and any unpaid and accrued interest) shall

automatically be accelerated and become immediately due and payable, (iii) the Debtor shall not

alter any direction given pursuant to this Final  DIP Order in regard to the remittances of payment

to the Governmental Remittance Account or to Designated Lockboxes and Designated Lockbox

Accounts, (iv) the DIP Agent may sweep funds from the Designated Lockbox Accounts and apply

them to outstanding DIP Loans and DIP Obligations and (v) the Debtor shall not alter or interfere,

and shall continue to cooperate as provided in its agreement with Cymetrix, or a replacement

servicer, with its role as servicer of the Accounts.

c.    ***Remedies Available Upon Three Business Days' Notice.***    Subject only to

the Court's issuance of a Relief From Default Order, except for the actions authorized to be taken

by the DIP Agent for the benefit of the DIP Lenders without notice or further Court order under

the prior subparagraph, upon providing three (3) business days' notice of an Event of Default

under this Final  DIP Order or under the DIP Credit Agreement to Debtor, the United States

Trustee, the Indenture Trustee, Apollo, the Committee, the Ombudsman and any other official,

-38-

\10011481.9

1   statutory committee hereinafter appointed herein DIP Agent shall be entitled to exercise all of its

2   rights and remedies against the DIP Collateral by foreclosure, collection, suit, receivership or

3   otherwise pursuant to the DIP Credit Agreement, any other DIP Document and applicable law.

4   Following notice of an Event of Default, Debtor, the Indenture Trustee or the Committee may

5   contest whether an Event of Default has occurred and is material by filing a motion (the "Relief

6   From Default Motion") with the Court within three (3) business days of the notice of an Event of

7   Default.  The timely filing and service of a Relief From Default will temporarily stay the DIP

8   Agent from taking actions against the DIP Collateral (except for actions by the DIP Agent

9   pursuant to the prior subparagraph, which will not be so stayed) but until the Court enters its order

10  granting or denying the Relief From Default Motion (the "Relief From Default Order").  Subject to

11  the convenience of the Court's calendar, the hearing on a Relief From Default Motion shall be

12  within five (5) business days of Debtor's filing of the Relief From Default Motion.  If a Relief

13  From Default Motion is not timely filed and served and the hearing is not timely sought, or if the

14  Relief From Default Motion is denied, the DIP Agent will have relief from the automatic stay for

15  all purposes and Debtor shall have no further remedy or recourse with regard to the DIP

16  Collateral, including but not limited to no right to request use of DIP Collateral as cash collateral.

17  On a Relief From Default Motion, or any other hearing regarding any exercise of rights or

18  remedies after an Event of Default has occurred, the only issue that may be raised by the Debtor or

19  the Committee, and the only issue for the Court to determine, is whether an Event of Default under

20  the Final DIP Order or the DIP Credit Agreement has, in fact, occurred.  Debtor and the

21  Committee shall not have the right to seek relief, including, without limitation, under section 105

22  of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and

23  remedies of the DIP Agent set forth in this Final DIP Order, the DIP Credit Agreement or any

24  other DIP Document.  The delay or failure of the DIP Agent to seek relief or otherwise exercise or

25  enforce its rights and remedies under this Final DIP Order, the DIP Credit Agreement or any other

26  DIP Document shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights or

27  remedies.

28          d.    ***Limitations On Marshaling***.   Except to the extent set forth in Paragraph

-39-

\I0011481.9

1   20(b) above, the DIP Agent or the DIP Lenders shall not be subject to the equitable doctrine of

2   "marshaling" or any similar doctrine with respect to the DIP Collateral.

3        26.    ***Preservation of Rights Granted Under the Interim DIP Order and this Final DIP***

4   ***Order.***

5             a.    No claim or lien having a priority superior to or *pari passu* with those

6   granted by the Interim DIP Order or this Final DIP Order, to the DIP Agent for the benefit of the

7   DIP Lenders in respect to the DIP Collateral shall be granted or allowed while any portion of the

8   DIP Obligations remains outstanding.  Subsequent to the Petition Date, Debtor shall not grant to

9   any party or suffer any liens senior to the DIP Agent for the benefit of the DIP Lenders, except

10  with the DIP Agent's prior written consent.  The DIP Liens shall not be subject or subordinate to

11  (i) any lien or security interest that is avoided and preserved for the benefit of Debtor and its estate

12  under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date including,

13  without limitation, any liens or security interests granted in favor of any federal, state, municipal

14  or other governmental unit, commission, board or court for any tax liability of Debtor, whether

15  secured or unsecured, including property taxes for which liability is in rem, in personam, or both,

16  except a tax of a kind specified in section 507(a)(8) of the Bankruptcy Code, (iii) any

17  intercompany or affiliate liens of Debtor or (iv) subordinated to or made pari passu with any other

18  lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

19            b.    Unless all DIP Obligations shall have been indefeasibly paid in full and all

20  DIP Obligations terminated, Debtor shall not seek (i) any order modifying or extending this Final

21  DIP Order without the prior written consent of the DIP Agent, and no such consent shall be

22  implied by any other action, inaction or acquiescence of the DIP Agent, (ii) any order modifying

23  or extending this Final DIP Order or adversely affecting the rights, priorities and liens provided

24  herein without the prior written consent of the DIP Agent or (iii) an order converting or dismissing

25  the Case.  If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise

26  is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the

27  Bankruptcy Code) that (x) the DIP Liens and the Superpriority Claims in favor of the DIP Agent

28  for the benefit of the DIP Lenders pursuant to this Final DIP Order shall continue in full force and

\10011481.9

1  effect and shall maintain their priorities as provided by this Final DIP Order, until all DIP

2  Obligations shall have been indefeasibly paid in cash and satisfied in full and the DIP Obligations

3  shall have been terminated and that such Superpriority Claims and the DIP Liens remain binding

4  on all parties in interest, and (y) this Court shall retain jurisdiction, notwithstanding such

5  dismissal, for the purposes of enforcing the Superpriority Claims and the DIP Liens to the fullest

6  extent authorized by statute and applicable law.

7             c.      If any or all of the provisions of this Final DIP Order are hereafter reversed,

8  modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the

9  validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of

10  written notice by the DIP Agent, as applicable, of the effective date of such reversal, modification,

11  vacatur or stay or (ii) the validity or enforceability of the DIP Liens or the Superpriority Claims

12  authorized or created hereby with respect to any DIP Obligations.  Notwithstanding any such

13  reversal, modification, vacatur or stay, any DIP Obligations incurred by Debtor to the DIP Lenders

14  prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal,

15  modification, vacatur or stay shall be governed in all respects by the original provisions of this

16  Final DIP Order, as applicable, and the DIP Agent and the DIP Lenders shall be entitled to all the

17  rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy

18  Code and this Final DIP Order and all DIP Documents with respect to all DIP Obligations.

19             d.      Except as expressly provided in this Final DIP Order, the DIP Credit

20  Agreement or any other DIP Document, the DIP Liens, the Superpriority Claims, and the DIP

21  Obligations, and all other rights and remedies of the DIP Agent for the benefit of the DIP Lenders

22  granted by the provisions of this Final DIP Order and all the DIP Documents shall survive, and

23  shall not be modified, impaired or discharged by (i) the entry of an order converting the Case to a

24  case under chapter 7, dismissing the Case, terminating the joint administration of the Case or by

25  any other act or omission or (ii) the entry of an order confirming a plan of reorganization in the

26  Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, Debtor having hereby waived

27  any discharge of any remaining DIP Obligations.  The terms and provisions of this Final DIP

28  Order shall continue in this Case, in any successor Case if this Case ceases to be jointly

\10011481.9

1    administered, or in any superseding chapter 7 Case under the Bankruptcy Code, and the DIP

2    Liens, the Superpriority Claims, the DIP Obligations, and all other rights and remedies of the DIP

3    Agent for the benefit of the DIP Lenders granted by the provisions of this Final DIP Order shall

4    continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

5         27.    *Limitation on Use of the DIP Advances*.  By the Interim DIP Order the Debtor

6    waived, and the Debtor hereby waives any and all claims and causes of action against the DIP

7    Agent and the DIP Lenders and their respective agents, affiliates, subsidiaries, directors, officers,

8    representatives, attorneys or advisors, directly related to the DIP Credit Agreement, any DIP

9    Document and this Final DIP Order or the negotiation of the terms thereof.  Notwithstanding

10   anything herein or in any other order by this Court to the contrary, no borrowings under the DIP

11   Credit Agreement, any DIP Document, proceeds of the DIP Collateral or the Carve Out may be

12   used for any of the following without the prior written consent of each affected party: (a) to object,

13   contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any

14   amount due under the this Final DIP Order, the DIP Credit Agreement, any DIP Document, or the

15   DIP Liens or Superpriority Claims granted under the Final DIP Order, the DIP Credit Agreement

16   or any DIP Document, (b) to assert any claims or defenses or causes of action against the DIP

17   Agent, the DIP Lenders or their respective agents, affiliates, subsidiaries, directors, officers,

18   representatives, attorneys or advisors, (c) to prevent, hinder or otherwise delay the DIP Agent's

19   assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Credit

20   Agreement, any DIP Document or this Final DIP Order, (d) to seek or to modify any of the rights

21   granted to the DIP Agent for the benefit of the DIP Lenders hereunder, under this Final DIP Order

22   or under the DIP Credit Agreement or the DIP Documents, or (e) to pay any amount on account of

23   any claims arising before the Petition Date unless such payments are approved by an order of this

24   Court and consented to by the DIP Agent.

25        28.    *Final DIP Order Governs*.  To the fullest extent permissible under the Bankruptcy

26   Code and existing law, the provisions of this Final DIP Order, including all findings, are binding

27   on all parties in interest in this Case, including the DIP Agent, the DIP Lenders, the Indenture

28   Trustee, Apollo, the Committee, and Debtor and their respective successors and assigns (including

-42-

1    any Chapter 7 or Chapter 11 trustee subsequently appointed or elected for the bankruptcy estate of

2    any of Debtor) and inures to the benefit of the DIP Agent for the benefit of the DIP Lenders and

3    Debtor and its respective successors and assigns; provided that the DIP Agent and the DIP

4    Lenders have no obligation to extend any financing to any Chapter 7 trustee or similar responsible

5    person appointed for the bankruptcy estate of Debtor.  To the extent that there is a conflict among

6    the Motion, the DIP Credit Agreement, the DIP Documents, the Interim DIP Order and this Final

7    DIP Order, this Final DIP Order will govern and control.

8        29.    ***Headings.***  Sections headings used herein are for convenience only and are not to

9    affect the construction of or to be taken into consideration in interpreting this Final DIP Order.

10       30.    ***Waiver of any Applicable Stay.***  Any applicable stay (including, without limitation,

11   under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final DIP Order.

12

13                                                        ###

14

15

16

17

18

19

20

21

22

23

24

25

26   DATED: October 19, 2009

27                                                        _____
                                                          United States Bankruptcy Judge
28

                                                  -43-

\10011481.9

1

2

3

4

**NOTE TO USERS OF THIS FORM**:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)**  **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)**  **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

5

6

7

# NOTICE OF ENTERED ORDER AND SERVICE LIST

8

9

Notice is given by the court that a judgment or order entitled **Final DIP Order (A) Authorizing Debtor to Obtain Postpetition Financing; (B) Granting Superpriority Expense Claims and Security Interests; and (C) Granting Other Relief Under 11 U.S.C. Sections 105, 361, 362, 363 and 364, F.R.B.P. 2002 and 4001; AND LBRS 2002-1 AND 4001-2** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

10

11

12

**I.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order.  As of October 16, 2009, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

13

14

15

Attorneys for Debtor: Lisa Hill Fenning (Arnold & Porter, LLP); Lisa_Fenning@aporter.com
United States Trustee (LA): Attn. Russell Clementson; russell.clementson@usdoj.gov
Martin J. Brill; mjb@lnbrb.com
Richard W. Brunette; rbrunette@sheppardmullin.com
Daniel H. Reiss; dhr@lnbrb.com

16

17

☒    Service information continued on attached page

18

**II.   SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

19

20

21

☐    Service information continued on attached page

22

**III.   TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

23

24

25

☐    Service information continued on attached page

26

27

28

\10011481.9

| In re:<br>DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:09-BK-34714-BB |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Mark Bradshaw; mbradshaw@shbllp.com
Jeffry A. Davis; jadavis@mintz.com
Raffi Khatchadourian; raffi@hemar-rousso.com
Randy P. Orlik; rorlik@coxcastle.com
Daniel H. Reiss; dhr@lnbrb.com
Christopher O. Rivas; crivas@reedsmith.com
Nathan A. Schultz; schultzn@gtlaw.com
Dawn M. Coulson; dcoulson@eyclaw.com
Jodie M. Grotins; jgrotins@mcguirewoods.com
Steven J. Schwartz; sschwartz@dgdk.com
Mark D. Houlse; mark.houle@pillsburylaw.com
Vanessa L. Au; vanessaau@paulhastings.com
Andrea M. Valdez; avaldez@fulbright.com
Lori Sinanyan; lsinanyan@jonesday.com
Bennet L. Spiegel; blspiegel@jonesday.com
Brian T. Harvey; bharvey@buchalter.com
Randye B. Soref; rsoref@buchalter.com
Mitchell B. Ludwig; mbl@kpclegal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                    **F 9021-1.1**