LISA HILL FENNING (SBN 89238)
HARRY GARNER (SBN 254942)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:    213.243.4000
Facsimile:    213.243.4199
Lisa.Fenning@aporter.com
Harry.Garner@aporter.com

*Counsel to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., a California non-profit, public benefit corporation,<br><br>Debtor.<br><br>Tax I.D. 95-1903935 | Case No.: 09-bk-34714-BB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF DEBTOR TO APPROVE BINDING PROVISIONS OF LETTER OF INTENT REGARDING PROPOSED AFFILIATION AND PLAN TERM SHEET WITH DAUGHTERS OF CHARITY HEALTH SYSTEM; EXHIBIT A; DECLARATION OF ROBERT E. FULLER**<br><br>PROPOSED HEARING DATE<br>DATE:  February 23, 2010<br>TIME:  11:00 a.m.<br>PLACE: Courtroom 1475<br>           United States Bankruptcy Court<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that as set forth in more detail below, Debtor has requested that a hearing has be scheduled on February 23, 2010 at 11:00 a.m. before the United States Bankruptcy Court for the Central District of California, Los Angeles, Division, in Courtroom 1475, Located at 255 East Temple Street, Los Angeles, California 90012, on this motion (the **"Motion"**) of Downey Regional Medical Center-Hospital, Inc., the debtor and debtor-in-possession in the above captioned case (the "**Debtor**" or "**Hospital**") for entry of an order approving the binding provisions of a letter of intent (the "**LOI**") regarding a proposed affiliation and plan term sheet (the "**Term Sheet**") with Daughters of Charity Health System ("**DCHS**"). In support of the Motion, Debtor submits the Declaration of Robert E. Fuller (the "**Fuller Declaration**") filed concurrently herewith.

## SUMMARY OF RELIEF REQUESTED[1]

Debtor hereby moves the Court, pursuant to Bankruptcy Code §§ 105(a) and 363, for an order approving certain binding provisions of the LOI entered into by Debtor and DCHS on February 4, 2010. The LOI and Term Sheet provide the outline for the negotiation and execution of one or more definitive agreements regarding Debtor's affiliation with DCHS and the terms of a proposed plan of reorganization. The LOI and Term Sheet are the result of extensive arm's-length negotiations with DCHS, and discussion of the terms with DIP lender Healthcare Finance Group; Wells Fargo Bank, National Association as Indenture Trustee; and the Official Committee of Unsecured Creditors. Debtor has also engaged in discussions with a number of other interested parties regarding the implementation of one or more alternative transactions. Debtor has determined in its business judgment that the LOI and Term Sheet provide for a potential transaction and plan of reorganization that are in the best interests of Debtor, its estate, its creditors, and other parties-in-interest.

---

[1] Capitalized terms used but not defined in this Motion shall have the meaning given to them in the accompanying Memorandum.

The binding provisions of the LOI, as set forth in more detail in the Memorandum, relate to confidentiality, publicity and nondisparagement, exclusivity of negotiations, back-up offers, term and termination, and payment of certain of DCHS' expenses. These provisions are reasonable and substantially similar to terms and conditions incorporated into comparable transactions, and should be approved. The relief requested herein will facilitate the further negotiation of a definitive agreement with DCHS, and should allow Debtor to file a confirmable plan of reorganization and disclosure statement by the March 15 exclusivity and plan filing deadline the Court has set.

This Motion is based on the Memorandum of Points and Authorities below (the "**Memorandum**"); the Fuller Declaration, filed with the Court concurrently herewith; and the arguments, evidence, and representations that may be presented at or prior to the hearing on this Motion.

Debtor has submitted an ex parte application pursuant to LBR 9075-1(b)(1) requesting that the Court enter an order shortening the time required for notice of the Motion, with a proposed hearing date of February 23, 2010 at 11:00 a.m., and a proposed deadline of February 19, 2010 at 12:00 noon, for written responses and objections. If the Court grants Debtor's request for shortened time, Debtor will serve notice of the hearing date for the Motion, which will include confirmation of the objection deadline.

**WHEREFORE** Debtor respectfully requests that the Court enter an order approving the binding provisions of the LOI entered into by Debtor and DCHS, and granting such other and further relief as is just and proper.

Dated:  Los Angeles, California
        February 12, 2010

Respectfully Submitted,

 /s/  Lisa Hill Fenning
Lisa Hill Fenning (SBN 89238)
Harry Garner (SBN 254942)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:  213.243.4000
Facsimile:   213.243.4199

*Counsel to Debtor and Debtor-in-Possession*

## TABLE OF CONTENTS

**Page**

I. JURISDICTION AND VENUE ................................................................................................1

II. PROCEDURAL STATUS .......................................................................................................1

III. BACKGROUND .....................................................................................................................1
    A. The Business of the Hospital ......................................................................................1
    B. The Causes of the Bankruptcy Filing .........................................................................2
    C. The LOI and Term Sheet; Binding Provisions ...........................................................3

IV. RELIEF REQUESTED ............................................................................................................9

V. BASIS FOR RELIEF ...............................................................................................................9

VI. CONCLUSION ......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.*
  *(In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223 (6th Cir. 1986) ...................................................... 9

*Walter v. Sunwest Bank (In re Walter)*,
  83 B.R. 14 (B.A.P. 9th Cir. 1988) ................................................................................................ 9

**STATUTES AND RULES**

11 U.S. C. § 105(a) ............................................................................................................. 1, 2, 9

11 U.S. C. § 363 ................................................................................................................ 1, 2, 11

11 U.S.C. § 363(b) ..................................................................................................................... 9

11 U.S.C. § 1107(a) ................................................................................................................... 1

11 U.S.C. § 1108 ........................................................................................................................ 1

11 U.S.C. § 1121(b) ................................................................................................................. 10

11 U.S.C. § 112 1(c)(2) ............................................................................................................ 10

28 U.S.C. § 157 .......................................................................................................................... 1

28 U.S.C. § 157(b) ..................................................................................................................... 1

28 U.S.C. § 1334 ........................................................................................................................ 1

28 U.S.C. § 1408 ........................................................................................................................ 1

28 U.S.C. § 1409 ........................................................................................................................ 1

# MEMORANDUM OF POINTS AND AUTHORITIES

Downey Regional Medical Center-Hospital, Inc., the debtor and debtor-in-possession in the above captioned case (the "**Hospital**" or the "**Debtor**"), hereby moves the Court for entry of an order approving the binding provisions of a letter of intent (the "**LOI**") regarding a proposed affiliation and plan term sheet (the "**Term Sheet**") with Daughters of Charity Health System ("**DCHS**").  A true and correct copy of the LOI and Term Sheet is attached hereto as Exhibit A.  In support of the Motion, Debtor submits the Declaration of Robert E. Fuller (the "**Fuller Declaration**") filed concurrently herewith.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**").

## II. PROCEDURAL STATUS

4. On September 14, 2009 (the "**Petition Date**"), Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

5. Debtor continues to operate its business and to manage its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in Debtor's Chapter 11 Case.

6. On September 25, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") in this Chapter 11 Case.

## III. BACKGROUND

### A. The Business of the Hospital

7. The Hospital is a nonprofit general acute care and teaching hospital licensed for 199 beds located in Downey, California.  The Hospital currently operates 181 staffed inpatient beds, including an intensive care unit, a neo-natal intensive care unit for newborns with special health

issues, a birth center, and definitive observation units, besides general medical-surgical beds. It services approximately 14,000 inpatients per year in all services. The Hospital offers a wide variety of clinical services and provides virtually all clinical services of a major tertiary university hospital except for organ transplants. The Hospital has 11 operating rooms and a very busy surgical practice, operating on more than 7,000 patients annually. The Hospital also has numerous specialty outpatient services, seeing over 80,000 outpatients annually, including non-invasive cardiology, radiology, endoscopy, and physical therapy. Its 22-bed emergency room, while not designated as a trauma unit, is equipped for and services trauma patients who are regularly brought to the Hospital in extremis or who come in via transportation other than ambulance. The emergency room services over 50,000 patients annually qualifies as one of the busiest in the area.

### B. The Causes of the Bankruptcy Filing

8. The Hospital commenced the Chapter 11 Case because of a liquidity crisis that resulted from two primary causes. First, the Hospital has incurred substantial losses as a result of severe problems on the finance side of its business (now largely corrected) due to defective charge capture practices and software billing practices that resulted in the Hospital not collecting all the revenues to which it would be entitled. Second, the Hospital was incurring significant losses due to problems with respect to its "capitation" arrangements with certain physician groups and health plans – losses were so severe that the Hospital concluded it had to terminate its capitation program and adopt a fee-for-service model, despite the short term cash flow interruption and claims that would result. The Hospital continues to work on remediation of its accounting and financial infrastructure problems, but now believes its financial systems may require full replacement, which would entail considerable capital investment. The Hospital is actively pursuing the potential affiliation described in the LOI and Term Sheet as a means to accomplish an effective restructuring and to emerge from Chapter 11 promptly.

**C.     The LOI and Term Sheet; Binding Provisions**

9.     The LOI and Term Sheet provide the outline for the negotiation and execution of one or more definitive agreements regarding Debtor's affiliation with DCHS and the terms of a proposed plan of reorganization (the "**Transaction**"):

  a. **Structure:**  The anticipated structure is a substitution of the single member parent of Debtor. DCHS, directly or indirectly, would replace Downey Regional Medical Center, Inc. (Debtor's nonprofit parent), as the sole member of Downey Regional Medical Center-Hospital, Inc. (*i.e.*, Debtor). No auction sale is contemplated.

  b. **Local Management and Governance:**  The Hospital would become an individual, locally managed hospital within the DCHS network of hospitals, subject to the DCHS policies, but governed by a separate, local board with separate, local officers and senior management. At least 51% of the governing board of the reorganized Hospital would be members of the Daughters of Charity as designated and required by the DCHS bylaws.

  c. **Preservation of General Acute Care Hospital Service:**  The Hospital would continue to operate the Hospital as a general acute care hospital that would continue to serve the needs of the Downey community, including the Hospital's history of providing community benefit and charity care.

  d. **Emphasis on Preserving Good Working Relationships with Medical Staff:**  DCHS intends to maintain and facilitate good relations between the Hospital and its existing medical staff.

  e. **Active Participation by the Committee and Other Constituencies in Further Negotiations and Voting Under a Plan:**  DCHS' proposed term sheet for a plan of reorganization outlines proposed classification and treatment of the various categories of secured and unsecured creditors of this estate. DCHS has met with the Committee and various creditors and

1  contract counterparties, and will be meeting with others, to negotiate these
2  proposed terms of distribution.

3      f.    **Interim Assistance:**  The proposed LOI and plan term sheet contemplate that
4  DCHS will provide assistance to Debtor pending confirmation of the plan by:
5  (i) providing or arranging for a replacement DIP loan upon the execution of
6  Definitive Documents (as defined therein); and (ii) providing for Transition
7  Services that would support Debtor's continuing efforts to implement its
8  revenue cycle improvements and other projects (the terms and conditions of
9  such services are to be negotiated).

10      g.    **General Plan Concepts:**  Under the contemplated term sheet, the plan of
11  reorganization would provide that:  (i) DCHS would fund the cash payments
12  required on the effective date of the plan, including payment of the
13  replacement DIP loan; (ii) DCHS would provide certain guarantees of
14  distributions to creditors; (iii) the Hospital's tax-exempt bondholders and
15  other creditors would be repaid in a manner that will allow the reorganized
16  Hospital to resume successful operations; and (iv) DCHS would provide
17  adequate working capital and funds for capital expenditures to meet the
18  Hospital's operational needs.

19      h.    **Operative Principles:**  The reorganized Hospital would be operated (i) in
20  accordance with the Ethical and Religious Directives for Catholic Health
21  Care Services promulgated by the United States Conference of Catholic
22  Bishops, as interpreted by the Daughters of Charity, and all applicable federal
23  and state laws, regulations and rules; (ii) in furtherance of DCHS' charitable
24  purposes and without adverse impact on DCHS' or Hospital's tax-exempt
25  status; and (iii) consistent with the DCHS Mission Statement and Vincentian
26  Values: Respect, Compassionate Service, Simplicity, Advocacy for the Poor
27  and Inventiveness to Infinity.

LA616871                                         -4-

10. The LOI itself is generally non-binding, but provides for certain obligations to be binding on the parties and to survive termination of the LOI (the "**Binding Provisions**"). The Binding Provisions include the following provisions regarding confidentiality, publicity and nondisparagement, exclusivity of negotiations, back-up offers, term and termination, and payment of certain of DCHS' expenses (with all capitalized terms used therein having the meanings given to them in the LOI):

> 2.3 <u>Confidential and Proprietary Information.</u> The Parties acknowledge that they have previously entered into that certain Non-Disclosure and Confidentiality Agreement dated as of November 30, 2009 (the "**NDA**") regarding the Parties' agreement for the confidential treatment of certain information and further acknowledge and agree that such NDA, as it may be amended or modified in writing from time to time, including any written waivers between the Parties thereunder, covers any exchange of information under the terms of this Letter of Intent.
>
> 5.1 <u>Publicity</u>. No publicity release or announcement concerning this Letter of Intent or any transaction contemplated hereby will be made by either of the Parties without the advance written approval of the other Party hereto, both as to the timing and content of such release, except that upon any termination of this Letter of Intent, each Party may make a publicity release or announcement limited to the fact that the Parties have terminated negotiations with respect to the Transaction provided the Parties will permit each other prior review. The Parties agree to consult with each other if asked for information about or comments on this Letter of Intent, the Transaction or any situation arising out of or relating to the Transaction and either agree in writing on a response or, if such agreement is not reached or is not feasible, agree to reply to such request with a "no comment" response. Notwithstanding the foregoing, copies of the fully executed LOI and the fully executed Definitive Agreement may be provided to Hospital's DIP lender, bond indenture trustee, their professionals, and the professionals of the official committee in the Chapter 11 Case and share it with members of the official committee who are not anticipated to be bidders for any of the assets of the Hospital.
>
> 5.2 <u>Nondisparagement.</u> Each Party agrees that neither it nor its officers, agents, employees, directors, members or affiliates will make any disparaging remarks or statements about the other Party and its officers, agents, employees, directors, members or affiliates relating to the Transaction or the circumstances giving rise to the Transaction.
>
> 6.1 <u>Exclusive Negotiations; No Solicitation.</u> During the term of this Letter of Intent, Hospital will exclusively negotiate with DCHS concerning a sale or other affiliation or disposition of the Hospital and any affiliates of Hospital or their respective assets and businesses except that Hospital may accept a back-up Section 363 asset sale transaction offer on the terms and conditions set forth in Section 6.2

LA616871                                      -5-

below (the **"Back-Up Offer"**). Subject to Section 6.2 below, during this exclusive period, neither Hospital nor any of its affiliates shall encourage (directly or indirectly), accept, or respond to any form of solicitation regarding a sale or other affiliation or disposition of the Hospital or any of its affiliates.

6.2     Back-Up Offer. Prior to the execution of this Letter of Intent, Hospital may select one Back-Up Offer on the terms and conditions set forth in this Section 6.2.  The Back-Up Offer (i) shall be structured as a Section 363 asset sale transaction, which does not contemplate a membership substitution structure whereby the offeror or any affiliate (the **"Back-Up Offeror"**) becomes the corporate member of the Hospital or any of its affiliates and (ii) shall not include a break-up fee or expense reimbursement provision or any similar provision.  Hospital shall provide DCHS a complete copy of the Back-Up Offer and any related descriptive materials upon the execution of this Letter of Intent by Hospital.  Hospital shall neither conduct negotiations of the Back-Up Offer or the transactions contemplated thereby nor solicit or accept modifications to such Back-Up Offer until March 15, 2010.  Hospital agrees that neither the Back-Up Offeror nor the Hospital shall conduct due diligence related to the Back-Up Offer or the transactions contemplated thereby until March 15, 2010.  Hospital further agrees that neither the Back-Up Offeror nor any professionals, consultants, agents, or employees acting on behalf of the Back-Up Offeror may be permitted to speak to or negotiate with (i) Hospital creditors or other material Hospital constituencies or (ii) regulatory agencies applicable to the Hospital or the Back-Up Offer, including, without limitation, the Office of Statewide Health Planning Development (OSHPD), the California Attorney General, or CMS during the term of the Letter of Intent.  Hospital agrees that it shall obtain written assurances from the Back-Up Offeror with respect to the limitations on Back-Up Offeror's actions as set forth in this Section 6.2.

7.1     Term. The term of this Letter of Intent shall commence as of the date first written above and shall continue until the earlier to occur of (i) April 30, 2010 or (ii) the date this Letter of Intent is terminated by one of the Parties as provided herein.  This Letter of Intent shall terminate when superseded by execution of the Definitive Agreement. DCHS may terminate this Letter of Intent, with or without cause, by delivery of written notice to Hospital at any time. Hospital may terminate this Letter of Intent, with or without cause, beginning on March 15, 2010.  The Parties may agree in writing to extend the term of this Letter of Intent.  If either Party decides to terminate this Letter of Intent, it shall notify the other Party in writing within twenty-four hours of its decision.

7.2     Effect of Termination. All rights and obligations of the Parties arising under this Letter of Intent shall terminate upon the termination of this Letter of Intent other than the rights and obligations set forth in Sections 2.3 (Confidentiality), 5 (Publicity; Nondisparagement) and 9.1 (Expenses).

LA616871                                       -6-

8.  Binding and Nonbinding Terms: Except for the obligations of the Parties under Sections 2.3 (Confidentiality), 5 (Publicity; Nondisparagement), 6 (Exclusive Negotiations), 7 (Term and Termination), 8 (Binding Terms) and 9.1 (Expenses) (collectively, the **"Binding Provisions"**), this Letter of Intent is nonbinding and represents an expression of intent only. Accordingly, neither Party shall be bound by the terms of this Letter of Intent (other than those terms set forth in the Binding Provisions, which shall survive termination of this Letter of Intent). The Parties agree to be bound by the Binding Provisions. Neither Party will be entitled to recourse, in the form of damages or otherwise, for expenses incurred or benefits lost before or after the date of this Letter of Intent if there is a failure, for any reason, of the Parties to agree on a term or on terms and provisions of a Definitive Agreement except as may be specifically provided for in writing, including, without limitation, the letter dated December 31, 2009 from counsel to Hospital regarding reimbursement of certain DCHS expenses (the **"DRMC Reimbursement Letter"**). All Binding Provisions shall be binding upon the Hospital and any of its successors and assigns, including a successor Chapter 7 trustee. Immediately upon the execution of this Letter of Intent, Hospital shall seek, on shortened notice, Bankruptcy Court approval in the Chapter 11 Case of the Binding Provisions. If such approval is not granted, then this Letter of Intent shall be deemed to be immediately terminated and of no further force and effect.

9.1  Expenses. Except as otherwise agreed to by the Parties in writing, each Party shall bear its own legal, accounting and other fees and expenses and due diligence costs associated with the due diligence review and the negotiation and execution of the Definitive Agreement. Notwithstanding the foregoing, Hospital hereby agrees to reimburse DCHS for the expenses of its legal and financial consultants from the date of the Letter of Intent until the date of termination of this Letter of Intent up to an aggregate cap of $1 million payable if the Letter of Intent is terminated or the Parties fail to reach Definitive Agreement for any reason other than delivery of a notice of termination by DCHS under Section 7.1 of this Letter of Intent. Such expenses will be payable on the earlier of (i) the closing of a Section 363 sale of assets of the Hospital to a party other than DCHS; (ii) the effective date of a plan in the Chapter 11 Case that does not include the Transaction; or (iii) within fifteen (15) days after a conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or a soon as practicable thereafter. The expense reimbursement shall be secured by a lien on all of the assets of Hospital and non-debtor affiliates junior in priority to any existing prepetition and post-petition liens and shall be an administrative claim under Section 503(b) of the Bankruptcy Code and shall have the status of a superpriority claim under Section 507(b) of the Bankruptcy Code in the Hospital's Chapter 11 Case and in any subsequent Chapter 7 case of the Hospital. The Parties acknowledge that if this Letter of Intent is superseded by the Definitive Agreement, then such expense reimbursement obligation will be included in, and made a part of, the Definitive Agreement.

11.     Debtor also agreed in the DRMC Reimbursement Letter that it would reimburse DCHS' reasonable and necessary diligence and transaction expenses (subject to a cap to be agreed between the parties) that were incurred from Sunday, January 3, 2010 (principally, travel expenses to Los Angeles) through January 13 or such other date on which DRMC informed DCHS that it had chosen to discontinue discussions with DCHS in favor of pursuing a transaction with a different party. The Lenders (as defined below) did not object to such a commitment by DRMC, provided that any such reimbursement payment was not carved out of their collateral, but rather was subordinate to their liens and claims. This reimbursement payment, if applicable, will be treated as a general administrative expense, payable upon completion of an alternative transaction.

12.     The LOI and Term Sheet are the result of extensive arm's-length negotiations with DCHS and discussion of the terms with DIP lender Healthcare Finance Group ("**HFG**"), Wells Fargo Bank, National Association as Indenture Trustee (the "**Indenture Trustee**," and collectively with HFG, the "**Lenders**"), and the Committee. Debtor has also engaged in discussions with a number of other interested parties regarding the implementation of one or more alternative transactions (the "**Alternative Offers**"), and has disclosed those terms to the Lenders and the Committee.

13.     Compared to the Alternative Offers, Debtor has determined in its business judgment that the LOI and Term Sheet provide for a potential Transaction and plan of reorganization that are in the best interests of Debtor, its estate, its creditors, and other parties-in-interest. The principles that guided this decision were: (i) preservation of the charitable and community-focused mission of the Hospital; (ii) serving the needs of the entire community, including the citizens of Downey (by maintaining a full-service acute care hospital), employees (both with respect to the various business models contemplated by the Alternative Offers and with respect to honoring of their benefits and employment status), the medical staff and physician groups in their capacity as "customers" of the Hospital and creditors of the estate (the business models of some of the Alternative Offers would have significantly altered the medical staff contracts and relationships), the health plans in their capacities as future contract

LA616871                                    -8-

counterparties and creditors of the estate (again, the different business models would affect them differently), and the trade creditors (who primarily will be affected by the terms of the plan distributions, but also by future business relationships).

14. Finally, Debtor considered the paramount importance of selecting a process and a partner with the greatest likelihood of achieving a successful closing. A competitive auction process, in Debtor's view, would create such significant uncertainties about who would be the successful bidder that many key licensed staff, medical doctors, and health plans might abandon the Hospital before a transaction could be consummated, with devastating effect.

15. For all of these reasons, DCHS' proposal offers the best possible outcome for all concerned parties.

## IV.  RELIEF REQUESTED

16. By this Motion, Debtor seeks the entry of an order approving the Binding Provisions of the LOI entered into by Debtor and DCHS on February 4, 2010.

## V.  BASIS FOR RELIEF

17. Bankruptcy Code § 105(a) confers broad equitable powers on bankruptcy courts to achieve the protections and promote the purposes of chapter 11. While this authority is not unlimited, the Court may "issue any order that order, process or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

18. Bankruptcy Code § 363(b) further provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A proposed use of property or approval of an agreement entered into by a debtor in possession is appropriate pursuant to § 363(b) if "some articulated business judgment" exists for the transaction. See, e.g., Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (quoting Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.), 780 F.2d 1223, 1226 (6th Cir. 1986)).

19. The Court has already granted Debtor's Motion for Order Extending the Exclusive Periods During Which Debtor May File a Chapter 11 Plan and Solicit Acceptances Thereof,

pursuant to which the Court entered an order extending the exclusive period within which Debtor may file a plan of reorganization under Bankruptcy Code §§ 1121(b) and 112 1(c)(2) to March 15, 2010, and the exclusive period within which the Debtor may solicit acceptances to a plan to May 17, 2010 [ECF Dkt. No. #298]. The Transaction contemplated by the LOI and Term Sheet is premised on adherence to these deadlines, and the parties have targeted a confirmation hearing and effective date for the plan to occur by late June. Even in the absence of the LOI and Term Sheet, this would be an aggressive schedule for the proposal, confirmation, and consummation of a plan.

20. Debtor submits that the Binding Provisions are reasonable and substantially similar to terms and conditions incorporated into comparable transactions, and should be approved. The relief requested herein will facilitate the further negotiation of a definitive agreement with DCHS, and should allow Debtor to file a confirmable plan of reorganization and disclosure statement by the March 15 exclusivity and plan filing deadline.

21. The confidentiality, publicity, and nondisparagement provisions are necessary so that commercially sensitive or proprietary information and the terms of the Transaction are not publicly disclosed until a definitive agreement has been reached. This will protect the negotiations and provide for full and open communication among the parties. Notwithstanding the confidentiality provision, DCHS has agreed that Debtor may disclose the LOI and Term Sheet by attaching it as an exhibit to this Motion. The parties believe that this disclosure is necessary to give all parties in interest, including members of the Downey community, the opportunity to see the proposal between Debtor and DCHS as it currently stands, even though the terms of a transaction will evolve as negotiations continue. The nondisparagement provision simply ensures that the parties' involvement with the Transaction will not become a source of negative publicity, which is a reasonable concession by both Debtor and DCHS.

22. The exclusivity, back-up offer and expense reimbursement provisions operate together to provide DCHS with certainty that it will be the only party with which Debtor will negotiate a potential affiliation or sale during the term of the LOI, and that if Debtor voluntarily terminates the LOI, DCHS will recover $1 million of its expenses. DCHS has represented to

LA616871                                                    -10-

Debtor and the Committee that it has already incurred expenses in excess of $1 million for its various professionals who have already been engaged in extensive due diligence, analysis and preliminary documentation of the Transaction.

23. By the LOI's terms, Debtor may select a back-up offer received from another party to carry out a section 363 sale, but such a sale cannot be structured to include a member substitution or a break-up fee or expense reimbursement for the back-up offeror. After carefully evaluating the Alternative Offers, Debtor concluded that none of them met the Hospital's needs for stability and support during the period necessary to implement a section 363 auction sale process. Moreover, Debtor continues to believe that, by framing this as a negotiation of both the deal and the plan, the Transaction would offer the opportunity for creditors to negotiate the terms of a plan of reorganization, so that they would know what distributions they would likely receive from the Transaction. The consideration offered by the Alternative Offers was far insufficient to outweigh these concerns.

24. Since DCHS has taken the risk and incurred the substantial expense associated with the structuring of this Transaction, the due diligence necessary to determine viability, and the negotiations with the creditors and contract counterparties about the terms and conditions of both the plan and their future relationships with the Hospital, it is reasonable to provide for reimbursement of a portion of their expenses, since any Alternative Offeror will necessarily benefit from the work already completed by the parties.

25. The term and termination provisions are necessary to establish an appropriate deadline for the expiration of the LOI or its termination by one of the parties, and the effect that such termination would have. While DCHS may terminate the LOI at any time, if it does so, it forfeits its right to the expense reimbursement, which is reasonable. In any event, the term of the LOI, unless and until it is superseded by a definitive agreement, is intended to comport with the existing plan filing and exclusivity deadlines, and does not unfairly prejudice creditors or other parties in interest.

26. The Hospital has been a major provider of healthcare services in the Downey area for decades, and its importance to local residents has only increased as other nearby hospitals have recently closed. The proposed Transaction with DCHS is expressly intended to preserve this role for the Hospital, but subject to Catholic directives regarding health care and DCHS' Mission Statement and core values. Debtor believes that in spite of these changes, the essential mission of the Hospital would remain the same after a Transaction with DCHS, especially with respect to the Hospital's charitable services and position within the Downey community.

27. Further, if a definitive agreement is reached, Debtor believes that a plan substantially as described in the Term Sheet can be promptly confirmed and consummated, and will maximize the recovery to holders of allowed claims when compared to all other currently known alternatives. The approval of the Binding Provisions is a necessary precursor to this process.

## VI. CONCLUSION

28. The relief requested by this Motion is warranted and appropriate under the circumstances. Debtor submits that the Binding Provisions of the LOI will not prejudice the legitimate interests of creditors and other parties in interest, and will afford Debtor a reasonable opportunity to pursue a meaningful and consensual plan. Accordingly, Debtor submits that granting the relief requested in this Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest.

1  WHEREFORE, for the reasons set forth herein and in the Fuller Declaration, Debtor respectfully requests that the Court enter an order approving the Binding Provisions of the LOI and granting such other and further relief as is just and proper.

Dated: Los Angeles, California　　　　　　　　　Respectfully Submitted,
　　　　February 12, 2010

　　　　　　　　　　　　　　　　　　　　　　　 /s/  Lisa Hill Fenning
　　　　　　　　　　　　　　　　　　　　　　　Lisa Hill Fenning (SBN 89238)
　　　　　　　　　　　　　　　　　　　　　　　Harry Garner (SBN 254942)
　　　　　　　　　　　　　　　　　　　　　　　Arnold & Porter LLP
　　　　　　　　　　　　　　　　　　　　　　　777 South Figueroa Street, 44th Floor
　　　　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90017
　　　　　　　　　　　　　　　　　　　　　　　Telephone:　213.243.4000
　　　　　　　　　　　　　　　　　　　　　　　Facsimile:　213.243.4199

　　　　　　　　　　　　　　　　　　　　　　　*Counsel to the Debtor and Debtor-in-Possession*