# **EXHIBIT A**

## **LETTER OF INTENT AND TERM SHEET**

*Confidential Proposal Version*

## LETTER OF INTENT

This Letter of Intent (*"LOI"*) is entered into as of this 22nd day of December, 2009 by and between Daughters of Charity Health System, a California nonprofit religious corporation (*"DCHS"*) and Downey Regional Medical Center, Inc., a California nonprofit corporation (*"Hospital"*). DCHS and Hospital may be individually referred to as a *"Party"* or collectively referred to herein as the *"Parties."*

## RECITALS

A.   Hospital operates a nonprofit, general acute care hospital in Downey, California, which provides a variety of medical and surgical services to citizens of Downey and the surrounding communities.

B.   Hospital has a long-standing history of serving the local community on a charitable, nonprofit basis.

C.   On September 14, 2009, the Hospital filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the *"Chapter 11 Case"*).

D.   DCHS desires to explore an affiliation with Hospital whereby the Hospital would become an individual, locally managed hospital within the DCHS network of hospitals, subject to the DCHS policies (the *"Transaction"*).

E.   The Parties desire to evidence their intention to engage in exclusive good faith discussions to further explore the Transaction and exchange information in connection therewith and, if mutually agreeable, proceed to negotiations of definitive documents governing the proposed Transaction.

1.   **OBJECTIVES OF THE PARTIES**

The Transaction will be structured to achieve the following objectives:

   1.1   <u>Preservation of Hospital Services and Charitable Mission</u>.   DCHS acknowledges the importance of the Hospital in serving the acute care hospital needs of the Downey community, including the Hospital's history of providing community benefit and charity care. DCHS shares the Hospital's mission to provide care for the entire Downey community and is committed to continuing that mission through the Transaction by adding the Hospital to its network of hospitals backed by DCHS' long tradition of providing quality and compassionate health care to the sick and the poor through a nonprofit, charitable health care system. DCHS anticipates that Hospital will become an individual, locally managed hospital, subject to the DCHS policies, and will be governed by a separate board with separate officers and senior management, similar to the other hospitals in the DCHS network of hospitals.

   1.2   <u>Retention of Medical Staff and Key Physician Relationships</u>.   DCHS acknowledges the importance of the Hospital's medical staff and other health care

Exhibit A

professionals as well as its key physician relationships that enable the Hospital to provide quality health care services. DCHS is committed to structuring the Transaction in a manner that recognizes the importance of the medical staff and its future provision of care to Hospital patients. DCHS intends to maintain and facilitate good relations between DCHS, the Hospital and its existing medical staff.

1.3   Acknowledgement of the Role of Important Constituencies. The plan of reorganization for the Chapter 11 Case that is proposed by DCHS in this Letter of Intent is designed (i) to quickly complete the Transaction and (ii) to compensate the Hospital's tax-exempt bondholders and other creditors in a manner that will allow the reorganized Hospital to resume successful operations that will serve the best long-term interests of the Hospital, the Downey community and the Hospital's present employees, physician groups, vendors, and other stakeholders.

In addition to the foregoing attributes and other provisions of this Letter of Intent, the Transaction will include the terms and conditions as substantially set forth on the Term Sheet attached hereto as **Exhibit A** and incorporated herein by reference.

2.  **PROCEDURES**

2.1   Execution of Letter of Intent. Execution of this Letter of Intent by the Parties will initiate the negotiation process for the Transaction. Each Party's participation is conditioned on the agreement to participate by the other Party and such agreement begins the exclusive period.

2.2   Due Diligence. Following the execution of this Letter of Intent, each Party shall cooperate fully with the other with respect to, and, subject to compliance with applicable laws (including but not limited to HIPAA), permit the authorized business, legal and financial representatives of the other, to conduct an appropriate due diligence investigation of such matters relating to the Transaction as reasonably deemed advisable by the authorized business, legal and financial representatives of such Party. Each Party agrees to provide reasonable access to such materials and to cooperate, and to cause its agents and employees to cooperate, with the other Party and its representatives in the conduct of such due diligence review. Hospital agrees that DCHS will receive priority access over all other parties to such materials and Hospital personnel in order to facilitate a timely and efficient due diligence process. In addition, Hospital shall be entitled to conduct its own due diligence with regards to DCHS and its ability to perform its obligations under the terms of the proposed Transaction.

2.3   Confidential and Proprietary Information. The Parties acknowledge that they have previously entered into that certain Non-Disclosure and Confidentiality Agreement dated as of November 30, 2009 (the *"NDA"*) regarding the Parties' agreement for the confidential treatment of certain information and further acknowledge and agree that such NDA, as it may be amended or modified in writing from time to time, including any written waivers between the Parties

-2-

thereunder, covers any exchange of information under the terms of this Letter of Intent.

2.4 <u>Negotiation of Definitive Agreement</u>. The Parties shall negotiate in good faith toward execution of one or more definitive agreements covering the Transaction (the *"Definitive Agreement"*), subject to the terms and conditions set forth in this Letter of Intent. Hospital hereby agrees and acknowledges that upon the execution of the Definitive Agreement it shall, within three (3) days of such execution, seek approval of the Bankruptcy Court in the Chapter 11 Case of any of the provisions of the Definitive Agreement that are intended to be binding in nature upon the execution of the Definitive Agreement, including, without limitation, the break-up fees and expense reimbursement provisions thereof.

2.5 <u>Chapter 11 Case</u>. As set forth in more detail in the Term Sheet, Hospital shall incorporate the Definitive Agreement in appropriate filings in the Chapter 11 Case to effectuate the Transaction. After the confirmation of the plan of reorganization in the Chapter 11 Case contemplated by the Transaction (the *"Plan"*), the Hospital shall be referred to as *"Reorganized DRMC."*

3. **CONDITIONS TO CLOSING**

The Definitive Agreement will include customary conditions of closing, including, without limitation, the following:

3.1 <u>Definitive Agreements</u>. Execution of all definitive agreements implementing the Transaction with such definitive agreements containing covenants, conditions, and representations and warranties customary to a sale transaction arising out of a bankruptcy on such matters as may be deemed necessary by the Parties.

3.2 <u>Completion of Due Diligence</u>. Completion of any due diligence review by DCHS, the results of which must be satisfactory to DCHS.

3.3 <u>Regulatory Actions</u>. There shall be no action or proceeding before any court or governmental body that is pending or threatened wherein an unfavorable judgment, decree or order would prevent the carrying out of the Definitive Agreement or would declare unlawful the Transaction or cause such Transaction to be rescinded.

3.4 <u>Court and Regulatory Approvals/Licenses.</u> The Parties shall have received any third party or regulatory approval applicable to the Transaction, including without limitation, the following:

3.4.1 Approval of the California Attorney General.

3.4.2 Approval of the City of Downey, if applicable.

3.4.3 Continuation of Medicare and MediCal provider numbers (to the extent possible) and California health care licenses or permits necessary to

operate Reorganized DRMC and carry on its business. DCHS' preferred strategy would be to assume existing licenses to the extent possible and keep Reorganized DRMC a separate licensed facility, subject to its due diligence review.

    3.4.4   Any applicable antitrust approvals.

    3.4.5   Confirmation and effectiveness of the Plan in the Chapter 11 Case.

3.5   Corporate Approvals. Approval of the Transaction and its Definitive Agreements by all Parties necessary including each Party's governing board and any corporate member, and all regulatory approvals including licensure, antitrust and appropriate assurances that the Transaction will be consistent with and will not jeopardize the tax-exempt status of the Parties.

3.6   Governance. Agreement on the initial post-closing governing board of Reorganized DRMC including community representation; provided, however that at least 51% of the members of the governing board of Reorganized DRMC are members of the Daughters of Charity as designated and required by the DCHS bylaws. DCHS acknowledges the governance requirements in the current Hospital lease with the City of Downey and will use good faith efforts to meet the lease requirements in addition to DCHS' internal requirements or, if not possible, to participate in good faith negotiations to modify or waive the lease requirements that take into account the City of Downey's desire for community involvement in the governance of Reorganized DRMC.

3.7   Seismic Requirements. Agreement, including agreement among DCHS, the Hospital and the California Attorney General, regarding any future seismic retrofit obligations by either Reorganized DRMC or DCHS and the impact of seismic obligations on future Reorganized DRMC operations. DCHS' goal in the Transaction is to continue to operate Reorganized DRMC and not to close Reorganized DRMC. Any seismic requirements included in any regulatory approvals must be acceptable to DCHS. Moreover, DCHS will not agree to assume any financial seismic retrofit obligations nor commit Reorganized DRMC to any such obligations in connection with the Transaction. DCHS will agree to reasonably pursue all appropriate and available exemptions for seismic compliance at Reorganized DRMC.

3.8   Terms of the Transaction. While the terms of the Definitive Agreement would be developed during negotiations between the Parties, the Definitive Agreement will require at least the following as of the closing of the Transaction:

    3.8.1   Reorganized DRMC to be operated in accordance with the Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Catholic Bishops, as interpreted by the Daughters of Charity, and all applicable federal and state laws, regulations and rules. More information about the Ethical and Religious Directives

-4-

for Catholic Health Care Services can be found at http://www.usccb.org/bishops/directives.shtml.

    3.8.2    Reorganized DRMC to be operated in furtherance of DCHS' charitable purposes and without adverse impact on DCHS' or Hospital's tax-exempt status.

    3.8.3    Reorganized DRMC to be operated consistent with the DCHS Mission Statement and Vincentian Values: Respect, Compassionate Service, Simplicity, Advocacy for the Poor and Inventiveness to Infinity.

## 4. OPERATIONS PENDING CLOSING

Except as DCHS may otherwise authorize in writing, Hospital hereby agrees to observe the following conditions from the date of this Letter of Intent through the earlier of (i) the termination of this Letter of Intent or (ii) the closing of the Transaction.

    4.1    <u>Operations</u>. To continue the Hospital's business and operations substantially in the same manner as conducted to date and not undertake any transactions or enter into any material contracts, commitments or arrangements without the prior written consent of DCHS, which consent shall not be unreasonably withheld or delayed. If such written consent is withheld, then Hospital shall have the option of seeking approval in the Chapter 11 Case of the proposed contract, commitment or arrangement. For purposes of this Letter of Intent and as set forth more fully in the Definitive Agreement, "material" shall mean a contract, commitment or arrangement with either (i) a duration of more than ninety (90) days or (ii) payments aggregating to one hundred thousand dollars ($100,000) or more. Hospital shall use commercially reasonable efforts to preserve its present business and organization, keep available without entering into any binding multi-year agreement the services of its employees, and preserve the goodwill dealings with it. Hospital shall collect accounts receivable and pay accounts payable in accordance with its ordinary course of business and current practices and policies, subject to the requirements of the Chapter 11 Case.

    4.2    <u>Permits and Licenses</u>. To maintain all material permits and applicable licenses and not take any action, or refrain from taking any action, which would cause any of the permits or other licenses which are material to its operation to be revoked, restricted or suspended.

    4.3    <u>Condition of Assets</u>. To maintain all of its assets in their state of repair as of the date of this Letter of Intent (normal wear and tear excepted) and take all commercially reasonable efforts necessary to maintain such assets and not dispose of any assets, except within the normal course of business.

## 5. PUBLICITY; NONDISPARAGEMENT

    5.1    <u>Publicity</u>. No publicity release or announcement concerning this Letter of Intent or any transaction contemplated hereby will be made by either of the Parties

without the advance written approval of the other Party hereto, both as to the timing and content of such release, except that upon any termination of this Letter of Intent, each Party may make a publicity release or announcement limited to the fact that the Parties have terminated negotiations with respect to the Transaction provided the Parties will permit each other prior review. The Parties agree to consult with each other if asked for information about or comments on this Letter of Intent, the Transaction or any situation arising out of or relating to the Transaction and either agree in writing on a response or, if such agreement is not reached or is not feasible, agree to reply to such request with a "no comment" response. Notwithstanding the foregoing, copies of the fully executed LOI and the fully executed Definitive Agreement may be provided to Hospital's DIP lender, bond indenture trustee, their professionals, and the professionals of the official committee in the Chapter 11 Case and share it with members of the official committee who are not anticipated to be bidders for any of the assets of the Hospital.

5.2   Nondisparagement. Each Party agrees that neither it nor its officers, agents, employees, directors, members or affiliates will make any disparaging remarks or statements about the other Party and its officers, agents, employees, directors, members or affiliates relating to the Transaction or the circumstances giving rise to the Transaction.

6.   **EXCLUSIVE NEGOTIATIONS**

6.1   Exclusive Negotiations; No Solicitation. During the term of this Letter of Intent, Hospital will exclusively negotiate with DCHS concerning a sale or other affiliation or disposition of the Hospital and any affiliates of Hospital or their respective assets and businesses except that Hospital may accept a back-up Section 363 asset sale transaction offer on the terms and conditions set forth in Section 6.2 below (the "*Back-Up Offer*"). Subject to Section 6.2 below, during this exclusive period, neither Hospital nor any of its affiliates shall encourage (directly or indirectly), accept, or respond to any form of solicitation regarding a sale or other affiliation or disposition of the Hospital or any of its affiliates.

6.2   Back-Up Offer. Prior to the execution of this Letter of Intent, Hospital may select one Back-Up Offer on the terms and conditions set forth in this Section 6.2. The Back-Up Offer (i) shall be structured as a Section 363 asset sale transaction, which does not contemplate a membership substitution structure whereby the offeror or any affiliate (the "*Back-Up Offeror*") becomes the corporate member of the Hospital or any of its affiliates and (ii) shall not include a break-up fee or expense reimbursement provision or any similar provision. Hospital shall provide DCHS a complete copy of the Back-Up Offer and any related descriptive materials upon the execution of this Letter of Intent by Hospital. Hospital shall neither conduct negotiations of the Back-Up Offer or the transactions contemplated thereby nor solicit or accept modifications to such Back-Up Offer until March 15, 2010. Hospital agrees that neither the Back-Up Offeror nor the Hospital shall conduct due diligence related to the Back-Up Offer or the

-6-

transactions contemplated thereby until March 15, 2010. Hospital further agrees that neither the Back-Up Offeror nor any professionals, consultants, agents, or employees acting on behalf of the Back-Up Offeror may be permitted to speak to or negotiate with (i) Hospital creditors or other material Hospital constituencies or (ii) regulatory agencies applicable to the Hospital or the Back-Up Offer, including, without limitation, the Office of Statewide Health Planning Development (OSHPD), the California Attorney General, or CMS during the term of the Letter of Intent. Hospital agrees that it shall obtain written assurances from the Back-Up Offeror with respect to the limitations on Back-Up Offeror's actions as set forth in this Section 6.2.

7.  **TERM AND TERMINATION**

    7.1 <u>Term</u>. The term of this Letter of Intent shall commence as of the date first written above and shall continue until the earlier to occur of (i) April 30, 2010 or (ii) the date this Letter of Intent is terminated by one of the Parties as provided herein. This Letter of Intent shall terminate when superseded by execution of the Definitive Agreement. DCHS may terminate this Letter of Intent, with or without cause, by delivery of written notice to Hospital at any time. Hospital may terminate this Letter of Intent, with or without cause, beginning on March 15, 2010. The Parties may agree in writing to extend the term of this Letter of Intent. If either Party decides to terminate this Letter of Intent, it shall notify the other Party in writing within twenty-four hours of its decision.

    7.2 <u>Effect of Termination</u>. All rights and obligations of the Parties arising under this Letter of Intent shall terminate upon the termination of this Letter of Intent other than the rights and obligations set forth in Sections 2.3 (Confidentiality), 5 (Publicity; Nondisparagement) and 9.1 (Expenses).

8.  **BINDING AND NONBINDING TERMS**

Except for the obligations of the Parties under Sections 2.3 (Confidentiality), 5 (Publicity; Nondisparagement), 6 (Exclusive Negotiations), 7 (Term and Termination), 8 (Binding Terms) and 9.1 (Expenses) (collectively, the *"Binding Provisions"*), this Letter of Intent is nonbinding and represents an expression of intent only. Accordingly, neither Party shall be bound by the terms of this Letter of Intent (other than those terms set forth in the Binding Provisions, which shall survive termination of this Letter of Intent). The Parties agree to be bound by the Binding Provisions. Neither Party will be entitled to recourse, in the form of damages or otherwise, for expenses incurred or benefits lost before or after the date of this Letter of Intent if there is a failure, for any reason, of the Parties to agree on a term or on terms and provisions of a Definitive Agreement except as may be specifically provided for in writing, including, without limitation, the letter dated December 31, 2009 from counsel to Hospital regarding reimbursement of certain DCHS expenses (the "DRMC Reimbursement Letter"). All Binding Provisions shall be binding upon the Hospital and any of its successors and assigns, including a successor Chapter 7 trustee. Immediately upon the execution of this Letter of Intent, Hospital shall seek, on shortened notice, Bankruptcy Court approval in the Chapter 11 Case of the Binding

Provisions. If such approval is not granted, then this Letter of Intent shall be deemed to be immediately terminated and of no further force and effect.

9. **MISCELLANEOUS**

   9.1 <u>Expenses</u>. Except as otherwise agreed to by the Parties in writing, each Party shall bear its own legal, accounting and other fees and expenses and due diligence costs associated with the due diligence review and the negotiation and execution of the Definitive Agreement. Notwithstanding the foregoing, Hospital hereby agrees to reimburse DCHS for the expenses of its legal and financial consultants from the date of the Letter of Intent until the date of termination of this Letter of Intent up to an aggregate cap of $1 million payable if the Letter of Intent is terminated or the Parties fail to reach Definitive Agreement for any reason other than delivery of a notice of termination by DCHS under Section 7.1 of this Letter of Intent. Such expenses will be payable on the earlier of (i) the closing of a Section 363 sale of assets of the Hospital to a party other than DCHS; (ii) the effective date of a plan in the Chapter 11 Case that does not include the Transaction; or (iii) within fifteen (15) days after a conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or a soon as practicable thereafter. The expense reimbursement shall be secured by a lien on all of the assets of Hospital and non-debtor affiliates junior in priority to any existing pre-petition and post-petition liens and shall be an administrative claim under Section 503(b) of the Bankruptcy Code and shall have the status of a superpriority claim under Section 507(b) of the Bankruptcy Code in the Hospital's Chapter 11 Case and in any subsequent Chapter 7 case of the Hospital. The Parties acknowledge that if this Letter of Intent is superseded by the Definitive Agreement, then such expense reimbursement obligation will be included in, and made a part of, the Definitive Agreement.

   9.2 <u>No Third Party Beneficiaries</u>. This Letter of Intent is intended solely for the benefit of the Parties hereto and not for the benefit of any other person or entity.

   9.3 <u>Entire Agreement</u>. This Letter of Intent contains the entire understanding of the Parties with respect to the subject matter hereof, and supersedes all negotiations, prior or contemporaneous discussions, agreements or understandings, whether written or oral between the Parties. The terms and conditions of this Letter of Intent shall be superseded in their entirety only at such time as the Parties approve and execute the Definitive Agreement.

   9.4 <u>Captions</u>. The captions to this Letter of Intent are for convenience of reference only and in no way define, limit or describe the scope or intent of this Letter of Intent or any part hereof, nor in any way affect this Letter of Intent or any part hereof.

   9.5 <u>Amendments</u>. This Letter of Intent may be amended only by a writing signed by both of the Parties.

9.6 **Assignment.** This Letter of Intent may not be assigned, delegated or transferred by either Party without the advance written consent of the other Party.

9.7 **Notices.** Any notice required or permitted to be given under this Letter of Intent shall be sufficient if in writing and delivered in person or sent registered or certified United States mail, return receipt requested, postage prepaid, or by recognized courier service, addressed as follows:

| **If to Hospital:** | **If to DCHS:** |
|---|---|
| Downey Regional Medical Center-Hospital, Inc.<br>11500 Brookshire Avenue<br>Downey, CA 90241 | Daughters of Charity Health System<br>26000 Altamont Road<br>Los Altos Hills, CA 94022 |
| Attn: Robert L. Fuller, Executive Vice President and COO | Attn: Robert Issai,<br>President and CEO |
| Tel: 562-904-5187<br>Fax: 562-904-5309 | Tel: 650-917-4504<br>Fax: 650-917-4534 |
| *with a copy to:* | *with a copy to:* |
| Arnold & Porter LLP<br>777 South Figueroa Street, 44th Fl.<br>Los Angeles, CA 90017 | Daughters of Charity Health System<br>26000 Altamont Road<br>Los Altos Hills, CA 94022 |
| Attn: Lisa Hill Fenning | Attn: Robynn Van Patten, Esq.,<br>Vice President and General Counsel |
| Tel: 213-243-4000<br>Fax: 213-243-4199 | Tel: 650-917-4519<br>Fax: 650-917-4539 |

or such other address as either Party may designate in writing.

9.8 **Governing Law.** This Letter of Intent shall be governed by and construed in accordance with the internal domestic laws of the State of California.

9.9 **Counterparts.** This Letter of Intent may be executed in one or more counterparts and may be exchanged by fax and/or email transmission, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

[Signatures appear on next page.]

Exhibit A

IN WITNESS WHEREOF, the undersigned have executed this Letter of Intent on the day and year first written above.

| DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC. | DAUGHTERS OF CHARITY HEALTH SYSTEM |
|---|---|
| By: *[signature]* <br> Name: Kenneth Strople <br> Title: President & CEO | By: *[signature]* 2-3-10 <br> Name: Robert Issai <br> Title: President and CEO |

-10-

Exhibit A

**Exhibit A**

## TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL

This term sheet summarizes the principal terms of the proposed affiliation between Downey Regional Medical Center-Hospital, Inc. ("DRMC," or "Hospital" or, after confirmation of the Plan, "Reorganized DRMC") and the Daughters of Charity Health System ("DCHS"), each of which may be individually referred to as a "Party" and collectively as the "Parties." This term sheet is for discussion purposes only; there is no obligation on the part of either Party unless and until definitive agreements are signed by the Parties intended to be bound thereby. This term sheet is subject to necessary corporate and regulatory approvals.

| | |
|---|---|
| Form of Transaction | Affiliation of Hospital with DCHS under a plan of reorganization (the "Plan"). Subject to DCHS' due diligence review, DCHS' preferred structure would be an affiliation through a corporate member substitution transaction. |
| Preservation of Hospital mission | As a Catholic health care provider, Reorganized DRMC to continue to serve all existing categories of patients, including MediCal; maintain its ER; and provide hospital services on a charitable, nonprofit basis. Reorganized DRMC to continue as a general hospital for the treatment of the sick and injured as contemplated by the lease with the City of Downey (as it may be amended or modified in good faith negotiations with the City of Downey). |
| Consent of the California Attorney General | As negotiated in the Definitive Agreement and subject to completion of its due diligence, in order to facilitate the California Attorney General approval process for the Transaction, DCHS agrees to negotiate in good faith reasonable covenants relating to continued operations at the Reorganized DRMC consistent with recent Attorney General conditional approval requirements (subject to the impact, if any, of any newly adopted Federal health reform legislation), including the following: (i) hospital and emergency room services; (ii) participation in the Medicare and MediCal programs; (iii) provision of community benefit services; and (iv) provision of charity care. |
| Governance | New local Reorganized DRMC board composed of community and other Hospital constituency representatives, provided that at least 51% of the members of the governing board are members of the Daughters of Charity as designated and required by the DCHS bylaws. |

A-1

Exhibit A

<u>**Exhibit A**</u>

**TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL**

| Non-Debtor Affiliates | As part of the Transaction and as part of the overall consideration set forth in this Letter of Intent, DCHS intends to acquire the Hospital's active, non-debtor affiliates or their respective assets, subject to due diligence review. |
|---|---|
| Seismic Retrofit Requirements | Neither DCHS nor Reorganized DRMC shall be obligated to perform any seismic retrofit or replacement of structurally non-conforming buildings in order to maintain services. Future seismic retrofit requirements and related obligations are subject to DCHS due diligence review. Any seismic requirements included in any regulatory approvals must be acceptable to DCHS.<br><br>However, DCHS and Reorganized DRMC shall pursue all appropriate and available exemptions for seismic compliance at Reorganized DRMC and work towards maximizing Reorganized DRMC's ability to serve most fully its community including through seismic upgrades where feasible, as determined by DCHS in its sole discretion.<br>Subject to the foregoing, DCHS and Reorganized DRMC shall agree to cooperate fully with the Office of Statewide Health Planning and Development ("OSHPD") regarding seismic retrofit issues. |
| Medical staff | DCHS is committed to structuring the Transaction in a manner that recognizes the importance of the existing medical staff and its future provision of care to Reorganized DRMC patients. DCHS intends to maintain and facilitate good relations between DCHS, the Reorganized DRMC and its existing medical staff. |
| Physician Relations | DCHS shall work cooperatively with Hospital and Reorganized DRMC, as applicable, in maintaining and enhancing existing relationships with IPAs and medical groups in the community to provide a seamless transition in connection with the Transaction. |
| Management | As with the other hospitals in its network, DCHS intends to maintain local management of Reorganized DRMC, subject to DCHS system policies. Decisions regarding the retention of current officers and management and other related matters will be made after DCHS conducts its due diligence review. |

Exhibit A

<u>**Exhibit A**</u>

**TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL**

| Business Integration | • DCHS to manage all IT, billing, and collections functions<br>• DCHS to manage contracting, including insurance plans<br>• DCHS to manage financing<br>• DCHS to facilitate group purchasing of supplies, medications<br>• Other business integration opportunities as agreed to by the Parties<br>• DCHS to arrange for compliance functions<br>• The costs and expenses for such services shall be allocated by DCHS to the Reorganized DRMC on a reasonable pro rata basis consistent with system policies. |
|---|---|
| Transition Services | DCHS shall make available reasonable transition services as requested by Hospital. Such services will be available beginning within a reasonable period of time following the execution of the Letter of Intent and upon reasonable notice of the services requested and agreed to by DCHS. Services would be reimbursed at fair market value on terms and conditions to be agreed by the Parties. |
| Treatment of DIP/Exit Financing | Unless replaced as set forth below, DIP loan to be paid in full on the effective date of the Plan. Replaced with exit financing based on analysis of collateral available for exit financing.<br><br>After the execution of the Definitive Agreement, at the option of Hospital, DCHS will facilitate a replacement DIP loan, such replacement loan to be on substantially the same terms and conditions (*e.g.*, full $10 million loan amount, interest rate, term, and collateral), provided that the replacement DIP loan will not have either an up front fee or an exit fee. The replacement DIP loan shall be due and payable upon the earlier of (i) the date it is payable under the terms of the Final DIP Order in the Chapter 11 Case or (ii) thirty (30) days after the termination of the Transaction. At DCHS' option, DCHS will act as the lender under the replacement DIP loan or facilitate a third party DIP loan by agreeing to pay a reasonable up front fee and exit fee, if any, of a third party DIP lender. |

A-3

Exhibit A

**Exhibit A**

## TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL

| | |
|---|---|
| Working Capital | DCHS will capitalize Reorganized DRMC to provide for adequate working capital and capital expenditures post-closing. DCHS will agree to provide or arrange for a third party lender to provide a $5 million senior secured working capital line of credit. |
| Timeline for DRMC Plan of Reorganization | • Negotiation of Definitive Agreement beginning in January, 2010<br>• Continued diligence by DCHS through Plan filing.<br>• Plan/Disclosure Statement based upon proposed Transaction to be filed no later than mid-March<br>• Notice and application for approval by Attorney General to be concurrently submitted upon execution of the Definitive Agreement.<br>• Disclosure hearing no later than mid to late April<br>• Confirmation no later than mid-June<br>• Closing/Effective Date no later than late June |
| General terms of DRMC Plan | The initial proposed classification and treatment plan is attached hereto as <u>Schedule 1</u>. The goal is to develop a classification and treatment plan with certain types of claims legally and appropriately separately classified with any final classification and treatment plan agreed to by the Parties after completion of due diligence. Upon Plan confirmation, Reorganized DRMC will pay the Plan payments as they come due. DCHS will fund Plan payments payable on the effective date of the Plan, which are now estimated to be approximately $2.5 million, consisting of the estimated payment of $1.2 million for Administrative Expense Claims, the estimated payment of $250,000 for Priority Claims and the estimated payment of $1.15 million for Convenience Class of Trade Claims as set forth on <u>Schedule 1</u>. Under the Plan, DCHS will offer to each unsecured creditor in classes 5, 6, 7, and 8 (as set forth in <u>Schedule 1</u>) the option to elect to reduce its claim by twenty-five (25%) and receive from Reorganized DRMC seventy-five (75%) of the amount that would otherwise be payable to that unsecured creditor under the Plan in exchange for DCHS' guaranty of Reorganized DRMC's principal payment obligation under the Plan, as reduced, to any such electing creditors. All the other terms and conditions of the treatment of the electing creditor under the Plan would remain unchanged. |

A-4

Exhibit A

Exhibit A

# TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL

| | |
|---|---|
| Purchased Assets | Includes, but is not limited to, claims, credits, causes of action, prepayments, rights of recovery, rights of recoupment and rights of setoff of any kind or nature Hospital may have, including (i) under contract or tort, or under federal, state, local or foreign Law or under the Bankruptcy Code, (ii) for avoidance actions, including actions commenced by such Hospital or any party pursuant to Chapter 5 of the Bankruptcy Code, including claims, credits, causes of action or rights of setoff against third parties under vendors' or manufacturers' warranties, indemnities and guaranties; and (iii) claims, demands, proceedings and causes of action asserted by Hospital under all insurance policies relating directly to any Hospital asset. |
| Hospital Tax-Exempt Bonds | To be assumed or advance refunded. |
| Financing Contingency | None. DCHS represents that the final structure of the Transaction and the terms of the Definitive Agreement will be in compliance with any covenants or requirements of its bonds or other material contracts. |
| Fees and Costs | Each party to bear its own attorney and advisor fees and costs unless otherwise agreed to in writing, including, without limitation, the DRMC Reimbursement Letter. |
| Transaction Break-up Fee and Expense Reimbursement | • **Break-Up Fee**. The Definitive Agreement will include a break-up fee payable to DCHS if the Transaction is terminated or fails to close for any reason other than a termination by DCHS; provided, however, that the break-up fee shall not be payable if (i) Attorney General consent is not obtained for reasons beyond the Hospital's control or (ii) the Hospital satisfies its conditions to close, but DCHS fails to close. The break-up fee will equal three percent (3%) of the total consideration of the Transaction.<br><br>• **Expense Reimbursement**. The Definitive Agreement will include an expense reimbursement provision whereby Hospital will reimburse DCHS for the expenses of the legal and financial consultants of DCHS from the date of the Letter of Intent until the date of termination of the Transaction up to a cap of $1 million for DCHS' financial consultants reimbursement and $1 million for DCHS' legal consultants reimbursement payable if the Transaction is |

A-5

Exhibit A

Exhibit A

## TERM SHEET FOR PROPOSED AFFILIATION – DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL

|  | terminated or fails to close for any reason other than a termination by DCHS.<br><br>• <u>Replacement DIP Fees</u>. The Definitive Agreement will include a provision providing reimbursement of any fees paid by DCHS to facilitate the replacement DIP lender as contemplated in the Letter of Intent if the Transaction is terminated or fails to close for any reason other than a termination by DCHS.<br><br>• <u>Payment</u>. Any break-up fee and any expense reimbursement will be payable on the earlier of (i) the closing of a Section 363 sale of assets of the Hospital to a party other than DCHS; (ii) the effective date of a plan in the Chapter 11 Case that does not include the Transaction; or (iii) within fifteen (15) days after a conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or a soon as practicable thereafter.<br><br>• <u>Other Agreements Regarding Expenses</u>. The break-up fee and expense reimbursement to be set forth in the Definitive Agreement is separate and apart from any agreement between the Parties regarding reimbursement of DCHS' expenses outside the scope of this Letter of Intent, including, without limitation, reimbursement arising out of the DRMC Reimbursement Letter. The Definitive Agreement expense reimbursement provision would incorporate any agreement by Hospital to reimburse DCHS expenses set forth in Section 9 of the Letter of Intent. The break-up fee and expense reimbursement shall be secured by a lien on all of the assets of Hospital and non-debtor affiliates junior in priority to any existing pre-petition and post-petition liens and shall be an administrative claim under Section 503(b) of the Bankruptcy Code and shall have the status of a superpriority claim under Section 507(b) of the Bankruptcy Code in the Hospital's Chapter 11 Case and in any subsequent Chapter 7 case of the Hospital. |
|---|---|

CONFIDENTIAL DISCUSSION DRAFT - NOT FOR DISTRIBUTION
SUBJECT TO NDA DATED NOVEMBER 30, 2009
SUBJECT TO FURTHER DUE DILIGENCE REVIEW OF DRMC'S DEBTS AND OPERATIONAL PERFORMANCE POTENTIAL

SCHEDULE 1 TO EXHIBIT A

DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL
CLASSIFICATION & TREATMENT PROPOSAL

| CLASS | DESCRIPTION OF CLASS | WHO IS INCLUDED | IMPAIRED | TREATMENT UNDER THE PLAN | ESTIMATED AMOUNT OF ALLOWED CLAIMS | ESTIMATED % RECOVERY | ESTIMATED PAYMENT |
|---|---|---|---|---|---|---|---|
| N/A | Administrative Expense Claims | * Professional fees<br>* Reclamation Claims<br>* Cure Costs | N/A | In full in cash on later of Effective Date or when allowed | $1.2 million | 100% | $1.2 million |
| N/A | Priority Tax Claims | * Federal<br>* State | N/A | In equal quarterly cash payments commencing on the Effective Date and quarterly thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at 2.5% above the Treasury rate fixed upon confirmation but not to exceed 6% per annum (the "Rate"), over a period not exceeding six (6) years after the date of assessment | $50,000 | 100% | $50,000 |
| Class 1 | Priority Claims | * 507(a) claims not in above two classes | No | In full in cash on later of Effective Date or when allowed | $250,000 | 100% | $250,000 |
| Class 2 | Secured Claims | * Bond Debt (2A)<br>* Apollo A/R (2B)<br>* Equipment Leases1 | | Bonds reinstated; same term; same due date; no additional collateral | $25.0 million bond debt (includes $6 million reserve)<br>$1.2 million Apollo A/R<br>$1.8 million for leases | 100% | $28.0 million |
| Class 3 | Pass-Through Employee Related Claims | | No | Pass-through unimpaired | $150,000 | 100% | $150,000 |

---
1 Subject to evaluation and determination if equipment leases will be assumed or rejected.

CONFIDENTIAL DISCUSSION DRAFT - NOT FOR DISTRIBUTION
SUBJECT TO NDA DATED NOVEMBER 30, 2009
SUBJECT TO FURTHER DUE DILIGENCE REVIEW OF DRMC'S DEBTS AND OPERATIONAL PERFORMANCE POTENTIAL

SCHEDULE 1 TO EXHIBIT A

DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL
CLASSIFICATION & TREATMENT PROPOSAL

| Class | Description of Class | Who is Included | Impaired | Treatment Under the Plan | Estimated Amount of Allowed Claims | Estimated % Recovery | Estimated Payment |
|---|---|---|---|---|---|---|---|
| Class 4 | Convenience Class of Trade Claims | * claimants who have claims at/under $7,500 or, if claim amount is greater, otherwise willing to take discount and accept payment of $3,750 as satisfaction in full | Yes | To be paid on the Effective Date or as soon as practicable thereafter. No limitation on number of convenience class members. | $3.0 million | 50% | $1.15 million |
| Class 5 | Trade Claims | * Trade other than convenience<br>* rejection costs<br>* other litigation claims not separately classified | Yes | Payment of interest only in annual cash payments commencing on the first anniversary of the Effective Date and annually thereafter at an interest rate of the Rate; principal payment aggregating 25% of allowed amount payable, not to exceed $4.0 million, to be paid in full on the 7-year anniversary of the Effective Date. | $16.0 for trade claims, rejection damage claims, and other litigation claims not otherwise classified | 25% | $4.0 million |
| Class 6 | Risk Pool Disputes | * AppleCare<br>* Alliance<br>* Pioneer | Yes | Payment of interest only in annual cash payments commencing on the first anniversary of the Effective Date and annually thereafter at an interest rate of the Rate; principal payment aggregating 25% of allowed amount payable, not to exceed $800,000, to be paid in full on the 7-year anniversary of the Effective Date. | $3.2 million | 25% | $800,000 |

Page 2 of Schedule 1

Exhibit A

SCHEDULE 1 TO EXHIBIT A

CONFIDENTIAL DISCUSSION DRAFT - NOT FOR DISTRIBUTION
SUBJECT TO NDA DATED NOVEMBER 30, 2009
SUBJECT TO FURTHER DUE DILIGENCE REVIEW OF DRMC'S DEBTS AND OPERATIONAL PERFORMANCE POTENTIAL

DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL
CLASSIFICATION & TREATMENT PROPOSAL

| CLASS | DESCRIPTION OF CLASS | WHO IS INCLUDED | IMPAIRED | TREATMENT UNDER THE PLAN | ESTIMATED AMOUNT OF ALLOWED CLAIMS | ESTIMATED % RECOVERY | ESTIMATED PAYMENT |
|---|---|---|---|---|---|---|---|
| Class 7 | Capitation Providers | * Capitated Service Providers | Yes | Payment of interest only in annual cash payments commencing on the first anniversary of the Effective Date and annually thereafter at an interest rate of the Rate; principal payment aggregating 15% of allowed amount payable, not to exceed $1.3 million, to be paid in full on the 7-year anniversary of the Effective Date. | $8.7 million | 15% | $1.3 million |
| Class 8 | Unsecured Loans | * Healthnet and United | Yes | Payment of interest only in annual cash payments commencing on the first anniversary of the Effective Date and annually thereafter at an interest rate of the Rate; principal payment aggregating 90% of allowed amount payable, not to exceed $5 million, to be paid in full on the 7-year anniversary of the Effective Date. | $5.5 million | 90% | $5 million |

LA1-3079610v15

Page 3 of Schedule 1

Exhibit A