LISA HILL FENNING (SBN 89238)
HARRY GARNER (SBN 254942)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:   213.243.4000
Facsimile:   213.243.4199
Lisa.Fenning@aporter.com
Harry.Garner@aporter.com

*Counsel to the Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:09-bk-34714-BB |
| DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., a California non-profit, public benefit corporation,<br><br>Debtor.<br><br><br>Tax I.D. 95-1903935 | Chapter 11<br><br>**APPLICATION OF DEBTOR FOR ORDER MODIFYING TERMS OF EMPLOYMENT OF SHATTUCK HAMMOND PARTNERS, N/K/A MORGAN KEEGAN, AS INVESTMENT BANKER; EXHIBITS A-B; DECLARATIONS OF MICHAEL HAMMOND AND ROBERT FULLER**<br><br>[NO HEARING REQUIRED UNLESS REQUESTED PER LOCAL BANKRUPTCY RULE 2014-1(b)(1)(C)] |

Downey Regional Medical Center-Hospital, Inc., the debtor and debtor-in-possession in the above captioned case (the "**Debtor**" or "**Hospital**"), hereby applies to this Court (the "**Application**") for entry of an order, pursuant to 11 U.S.C. §§ 327(a) and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") modifying the terms of the employment of Shattuck Hammond Partners ("**Shattuck Hammond**", and now known as Morgan Keegan but referred to herein as Shattuck Hammond) as Debtor's investment banker.  Debtor seeks (i) to settle the amount and authorize the immediate payment of Shattuck Hammond's outstanding invoices; (ii) to change Shattuck Hammond's compensation structure from a flat $50,000 monthly fee to billing and payment on an hourly basis for services rendered as needed; and (iii) to terminate Shattuck Hammond's right to an incentive fee, on substantially the terms and conditions of the revised engagement letter attached hereto as <u>Exhibit B</u>.  Debtor relies upon and incorporates by reference its Application for Order Pursuant to 11 U.S.C. §§ 327(A) and 328 and Bankruptcy Rule 2014 Authorizing Debtor to Retain Shattuck Hammond as Investment Banker [ECF Dkt. No. 294] (the "**Shattuck Hammond Application**"); the Court's Order entered on March 2, 2010 granting the Shattuck Hammond Application [ECF Dkt. No. 396] (the "**Shattuck Hammond Retention Order**");the Declaration of Michael Hammond (the "**Hammond Declaration**") and the Declaration of Robert Fuller in Support of this Application (the "**Fuller Declaration**"), filed with the Court concurrently herewith.

As described in more detail below, Debtor's need for Shattuck Hammond's investment banking services has been reduced as Debtor pursues a standalone exit from the Chapter 11 Case. Given Shattuck Hammond's reduced role, Debtor and Shattuck Hammond have determined that a transition from a flat monthly fee to hours-based compensation, including termination of Shattuck Hammond's right to an incentive fee, is appropriate.  The monthly cost of fees and expenses for work done on an as-needed basis will be substantially lower than the $50,000 per month currently payable to Shattuck Hammond.  As consideration for its agreement to such reduced responsibilities and compensation and the termination of its incentive fee, Shattuck Hammond has asked that Debtor seek the Court's approval to pay $450,000 on account of its outstanding invoices, which constitutes a discount of $150,000 in unpaid fees.  At present, Shattuck Hammond has been paid

1    through March 2010, as have all other estate professionals pursuant to the Court's prior directives to

2    treat all estate professionals in the same manner.  Shattuck Hammond has requested to be exempt

3    from this *pari passu* rule.

4         In further support of this Application, Debtor, by and through its undersigned counsel,

5    respectfully states as follows:

## I.     <u>JURISDICTION AND VENUE</u>

7       1.    The Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and

8    1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and this Application

9    in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

10   requested herein are 11 U.S.C. §§ 327(a) and 328, Bankruptcy Rule 2014, and Local Bankruptcy

11   Rule 2014-1(b).

## II.     <u>PROCEDURAL STATUS</u>

13       2.    On September 14, 2009 (the "**Petition Date**"), Debtor commenced a case by filing a

14   petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

15       3.    Debtor continues to operate its business and to manage its property as a debtor and

16   debtor-in-possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code,

17   11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "**Bankruptcy Code**").  No trustee or examiner has been appointed in

18   Debtor's Chapter 11 Case.

19       4.    On September 25, 2009, the Office of the United States Trustee appointed an official

20   committee of unsecured creditors (the "**Committee**").

## III.   <u>BACKGROUND</u>

22       A.    <u>The Business of the Hospital</u>

23       5.    The Hospital is a nonprofit general acute care and teaching hospital licensed for 199

24   beds located in Downey, California.  The Hospital currently operates 181 staffed inpatient beds,

25   including an intensive care unit, a neo-natal intensive care unit for newborns with special health

26   issues, a birth center, and definitive observation units, besides general medical-surgical beds.

27   It services approximately 14,000 inpatients per year in all services.  The Hospital provides virtually

28   all clinical services of a major tertiary university hospital except for organ transplants.  Its 22-bed

1   emergency room, while not designated as a trauma unit, is equipped for and services trauma patients

2   who are regularly brought to the Hospital in extremis or who come in via transportation other than

3   ambulance, and thus qualifies as one of the busiest in the area.

4          **B.**      **The Causes of the Bankruptcy Filing**

5         6.      Debtor commenced the Chapter 11 Case because of a liquidity crisis that resulted

6   from substantial losses as a result of severe problems (i) on the finance side of its business that

7   impaired collections, analysis, and revenues, and (ii) with respect to its "capitation" arrangements

8   with certain physician groups and health plans that caused Debtor to terminate its capitation

9   program and adopt a fee-for-service model during late 2008 and early 2009.  Debtor continues to

10  work on remediation of its accounting and financial infrastructure problems, but requires additional

11  capital investment to achieve the Hospital's potential.

12         **C.**      **Original Retention of Shattuck Hammond**

13        7.      Shattuck Hammond was first retained as of December 14, 2009, to provide

14  investment banking services, including assistance in the evaluation, negotiation and possible

15  implementation of one or more transactions including a sale, strategic affiliation, joint venture, or

16  partnership (a "**Transaction**"), pursuant to an engagement letter approved by the Court (the

17  "**Original Engagement Letter**").  Beginning in late 2009 and through later 2010, Debtor pursued

18  the consummation of a Transaction, first with Daughters of Charity Health System ("**DCHS**", and

19  then with Presbyterian Intercommunity Hospital of Whittier, California ("**PIH**").

20        8.      The retention of Shattuck Hammond as investment banker to Debtor was specifically

21  required by DIP lender Healthcare Finance Group ("**HFG**") and Wells Fargo Bank, National

22  Association as Indenture Trustee (the "**Indenture Trustee**," and collectively with HFG, the

23  "**Lenders**").  The Lenders wanted a large, nationally recognized investment banking firm working

24  with Debtor to assure that all affiliation or asset sale possibilities were fully explored, and to assure

25  the Lenders, the Committee, and other constituencies that Debtor would obtain a reasonable and

26  favorable outcome with respect to a Transaction.

27        9.      Shattuck Hammond's work has complemented the services offered by Debtor's other

28  restructuring professionals, including HNB Capital LLC ("**HNB Capital**"), Debtor's previously

-4-

1  retained investment banker with respect to the HFG DIP loan and Debtor's other loan and

2  refinancing transactions, and Focus Management ("**Focus**"), Debtor's financial advisor.

3        **D.**      **Shattuck Hammond's Reduced Role**

4        10.      The DCHS and subsequent PIH transactions did not close. It became apparent from

5  Debtor's analysis that the other offers and proposals would yield far less for Debtor's unsecured

6  creditors than a standalone plan. While a reorganization with an acquiring third party through a

7  Transaction is still a possibility, Debtor and its professionals have determined that none of the

8  potential participants in a Transaction has offered a proposal that provides for distributions to

9  unsecured creditors that are competitive with the projected distributions that Debtor believes would

10  be feasible under a standalone plan.

11        11.      Therefore, Debtor is now actively pursuing a standalone exit from the Chapter 11

12  Case. Debtor's need for Shattuck Hammond's investment banking services has been substantially

13  reduced as Debtor pursues this standalone exit from the Chapter 11 Case. Given Shattuck

14  Hammond's reduced role, Debtor and Shattuck Hammond have determined that a transition from a

15  flat monthly fee to hours-based compensation, including the termination of Shattuck Hammond's

16  incentive fee, is appropriate.

17  **IV.**      **RELIEF REQUESTED**

18        12.      By this Application, Debtor requests that the Court enter an order, pursuant to

19  sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy

20  Rule 2014-1(b), in the form attached hereto as Exhibit A, modifying the terms of the employment of

21  Shattuck Hammond as Debtor's investment banker, on substantially the terms and conditions of the

22  revised engagement letter attached hereto as Exhibit B (the "**Revised Engagement Letter**").

23  Debtor seeks to settle the amount and authorize the immediate payment of $450,000 on account of

24  Shattuck Hammond's outstanding invoices, which constitutes a discount of $150,000 in unpaid fees,

25  notwithstanding the fact that Debtor is not in a position to bring all estate professionals current at

26  this time. Debtor further seeks to change Shattuck Hammond's compensation structure from a flat

27  $50,000 monthly fee to billing and payment on an hourly basis for services rendered as needed, up

28  to an aggregate monthly maximum of $25,000, and to terminate Shattuck Hammond's right to an

incentive fee, which in the case of a refinancing or Transaction would potentially be $500,000 (the minimum incentive fee due under the Original Engagement Letter).

## V.    SCOPE OF SERVICES

13.    Since its retention, Shattuck Hammond has provided investment banking services within the scope of the original Shattuck Hammond Retention Order and the Original Engagement Letter.  Shattuck Hammond will continue to provide the specific services described in the Shattuck Hammond Application and the Original Engagement Letter, but will only be compensated on an hourly basis, as set forth in the Revised Engagement Letter.  Debtor anticipates that during the remainder of the Chapter 11 Case, Shattuck Hammond's services will be required on a much less frequent, "as needed" basis to assist Debtor in the evaluation of a potential Transaction.  It is also possible that Shattuck Hammond may assist in finding financing for the standalone plan.

14.    As with its original retention, Debtor intends for Shattuck Hammond's services to complement, and not duplicate, the services to be rendered by any other professional retained in this case.  Shattuck Hammond continues to understand that Debtor has retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals, such as HNB Capital and Focus, to integrate any remaining work conducted by the professionals on behalf of Debtor.

## VI.    COMPENSATION

15.    Shattuck Hammond's compensation under the Shattuck Hammond Application and the Original Engagement Letter consists of (a) a retainer of $75,000, which was paid and applied to the period prior to January 15, 2010 (the "**Retainer**"); (b) a monthly fee of $50,000, payable on the 15th of each month, beginning January 15, 2010, until the consummation of a Transaction (the "**Monthly Fee**"); (c) monthly reimbursement for its travel and other reasonable out-of-pocket expenses (the "**Expenses**"); and (d) upon consummation of a Transaction, a minimum incentive fee of $500,000, based on the value of the Transaction (the "**Incentive Fee**").  The formula for calculating the Incentive Fee is based not only on amounts paid as the purchase price in a Transaction, but also any permanently committed working capital or funds for capital

///

improvements.  As such, it is possible that Shattuck Hammond could contend that the Incentive Fee is triggered by Debtor's exit financing in support of its plan of reorganization.

16.     Instead of the $50,000 Monthly Fee, Shattuck Hammond has agreed that its ongoing fees will be charged at the rates described in the Revised Engagement Letter, up to an aggregate monthly maximum of $25,000, that Expenses (if any) will be reimbursed on a monthly basis in the ordinary course, and that the Incentive Fee will be terminated.  Because of the reduction in the scope of its services, Shattuck Hammond's hourly fees will be substantially less than the Monthly Fee.

17.     Debtor has paid Shattuck Hammond for Monthly Fees and Expenses only through March 2010.  These payments were in compliance with the Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals Pursuant to Sections 331 and 105(a) of the Bankruptcy Code (the "**Interim Compensation Order**") [ECF Dkt. No. 171].  For the period from April 2010 through March 2011, Debtor owes Shattuck Hammond approximately $600,000 in allowed professional fees and expenses.  As a condition for accepting its reduced role, the transition from the Monthly Fee to hourly fees, and termination of the Incentive Fee, Shattuck Hammond has requested that Debtor make immediate payment of all outstanding professional fees and expenses in the reduced amount of $450,000 (the "**Catch-Up Payment**").  The reduction of $150,000 in fees is equivalent to approximately 25% of the net outstanding fees.

18.     Pursuant to the Interim Compensation Order, all estate professionals other than Focus have been paid their allowed fees and expenses through March 2010, including amounts held back for the first interim compensation period of September 2009 through December 2010.  Focus has been paid its allowed fees and expenses through February 2011 (including amounts held back for the period from February 2010 through April 2010), as required by a modification of the terms of Focus' retention approved by the Court in September 2010.  The Court has previously directed that all payments of outstanding professional fees and expenses are to be made on a *pro rata* basis from available funds.

19.     As funds become available from increased revenues due to the improved rates in Debtor's new health plan contracts, Debtor will gradually bring all professionals more current or

1    fully current, as cash flow permits.  Shattuck Hammond contends that, as a condition for

2    transitioning to hourly fees and extinguishing its rights to the Incentive Fee, it should be assured of

3    current payment of the Catch-Up Payment.  Shattuck Hammond is not receiving payment of any

4    amounts greater than those already allowed pursuant to the Interim Compensation Order--the Catch-

5    Up Payment is instead a settlement of outstanding invoices at a significant discount, and the

6    payment is simply a matter of timing.  Payment of Shattuck Hammond's ongoing fees and expenses

7    will remain subject to the Court's approval, and in accordance with Bankruptcy Code §§ 327 and

8    330, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of the Court.

9         20.    Shattuck Hammond restates that it will not share or agree to share any compensation

10   to be paid by Debtor in connection with services to be performed after the Petition Date with any

11   other person in accordance with § 504 of the Bankruptcy Code.

12        21.    Debtor respectfully submits that the employment of Shattuck Hammond on such

13   modified terms as are set forth herein and in the Revised Engagement Letter is in the best interests

14   of Debtor, its creditors, and its estate.

15   **VII.    <u>DISINTERESTEDNESS</u>**

16        22.    To the best of Debtor's knowledge, and except as otherwise set forth herein or in the

17   Hammond Declaration, Shattuck Hammond and its employees (a) continue to be "disinterested

18   persons" under § 101(14) of the Bankruptcy Code, as required by § 327(a) of the Bankruptcy Code;

19   (b) neither hold nor represent any interest adverse to Debtor or its estate; and (c) have no material

20   connection with Debtor, its creditors, any other party in interest, their respective attorneys, the

21   United States Trustee, or any person employed in the office of the United States Trustee.

22   **VIII.    <u>BASIS FOR RELIEF</u>**

23        23.    Debtor seeks to reduce the scope of Shattuck Hammond's services due to its pursuit

24   of a standalone exit strategy, to transition Shattuck Hammond from a flat $50,000 monthly fee to

25   billing and payment on an hourly basis for services rendered as needed (including termination of the

26   Incentive Fee), and to authorize the immediate payment of certain outstanding Shattuck Hammond

27   invoices in the form of the $450,000 Catch-Up Payment as described above, pursuant to Bankruptcy

28   Code §§ 327 and 328(a).

24.     Given these circumstances, and the market prices for Shattuck Hammond's services for engagements of this nature, Debtor believes that the terms described herein and in the Revised Engagement Letter are fair, reasonable, and market-based consistent with the standards set forth in Bankruptcy Code § 328(a).

## IX.    INDEMNIFICATION

25.     Debtor has agreed to continue indemnify Shattuck Hammond, its personnel and professionals on the same terms as set forth in the Original Engagement Letter, except to the extent that any damages are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from Shattuck Hammond's willful misconduct or gross negligence in performing the activities described in the Original Engagement Letter and the Revised Engagement Letter.

## X.    CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an Order, substantially in the form annexed hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated:  Los Angeles, California
      March 29, 2011

Respectfully Submitted,

 /s/  Lisa Hill Fenning
Lisa Hill Fenning (SBN 89238)
Harry Garner (SBN 254942)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:  213.243.4000
Facsimile:    213.243.4199

*Counsel to the Debtor and Debtor-in-Possession*

## **EXHIBIT A**

**Proposed Order**

1  LISA HILL FENNING (SBN 89238)
   HARRY GARNER (SBN 254942)
2  ARNOLD & PORTER LLP
   777 South Figueroa Street, 44th Floor
3  Los Angeles, California 90017
4  Telephone:  213.243.4000
   Facsimile:   213.243.4199
5  Lisa.Fenning@aporter.com
   Harry.Garner@aporter.com
6
7  *Counsel to the Debtor and Debtor-in-Possession*

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **LOS ANGELES DIVISION**

11

12  In re                              Case No.: 2:09-bk-34714-BB

13  DOWNEY REGIONAL MEDICAL CENTER-    Chapter 11
    HOSPITAL, INC., a California non-profit,
14  public benefit corporation,         **[PROPOSED] ORDER MODIFYING
                                        TERMS OF EMPLOYMENT OF
15                    Debtor.           SHATTUCK HAMMOND PARTNERS,
                                        N/K/A MORGAN KEEGAN, AS
16                                      INVESTMENT BANKER**

17
    Tax I.D. 95-1903935                [NO HEARING REQUIRED UNLESS
18                                      REQUESTED PER LOCAL BANKRUPTCY
19                                      RULE 2014-1(b)(1)(C)]

20
21          Upon consideration of the Application for Order Modifying the Terms of the Employment

22  of Shattuck Hammond Partners ("**Shattuck Hammond**", and now known as Morgan Keegan but

23  referred to herein as Shattuck Hammond) as Investment Banker (the "**Application**") filed by

24  Downey Regional Medical Center-Hospital, Inc., the debtor and debtor in possession the above-

25  captioned case (the "**Debtor**" or "**Hospital**"); and upon consideration of the Declarations of

26  Michael Hammond (the "**Hammond Declaration**") and Robert Fuller (the "**Fuller Declaration**")

27  in support of the Application; and the Court being satisfied, based on the representations made in

28  the Application, the Hammond Declaration, and the Fuller Declaration, that Shattuck Hammond

does not represent or hold any interest adverse to Debtor or Debtor's estate with respect to the matters upon which it is to be engaged and is disinterested as that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code, and that modification of the terms of the employment of Shattuck Hammond is necessary and in the best interests of Debtor, Debtor's estate, its creditors, and all parties in interest; and the Court having jurisdiction pursuant to §§ 157 and 1334 of Title 28 of the United States Code to consider the Application and the relief requested therein; and it appearing that due notice of the Application has been provided and no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application, the Hammond Declaration, and the Fuller Declaration establish just cause for the relief granted herein; it is hereby

**ORDERED** that the Application is GRANTED to the extent provided herein; and it is further

**ORDERED** that, pursuant to sections 105, 327(a), and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, Debtor is authorized to employ and retain Shattuck Hammond in accordance with the modified terms and conditions set forth in the Application and the Revised Engagement Letter[1]; and it is further

**ORDERED** that upon entry of this Order, Debtor is authorized and directed to pay Shattuck Hammond the amount of $450,000 (the "**Catch-Up Payment**") as payment for all outstanding professional fees and expenses; and it is further

**ORDERED** that for services rendered pursuant to the Revised Engagement Letter, Shattuck Hammond shall bill Debtor for services rendered on an hourly basis at the rates described in the Revised Engagement Letter, subject to an aggregate monthly maximum of $25,000 for fees; and it is further

**ORDERED** that Shattuck Hammond's compensation payable under the Revised Engagement Letter shall continue to be subject to the standard of review provided for in § 328(a) of

///

---

[1]  Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Application.

1   the Bankruptcy Code, and not subject to the standard of review under § 330 of the Bankruptcy

2   Code; and it is further

3        **ORDERED** that notwithstanding the preceding paragraph of this order and any provision to

4   the contrary in the Application or the Revised Engagement Letter, the United States Trustee (the

5   "**U.S. Trustee**") shall have the right to object to Shattuck Hammond's request(s) for compensation

6   and reimbursement based on the reasonableness standard provided in § 330 of the Bankruptcy

7   Code, not § 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall be

8   evaluated by comparing, among other things, the transaction fees payable in this case to fees paid to

9   comparable investment banking firms with similar experience and reputation offering comparable

10  services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-

11  case-based criteria; and it is further

12       **ORDERED** that Shattuck Hammond shall be compensated in accordance with the terms of

13  the Revised Engagement Letter, and, in particular, that Shattuck Hammond shall be compensated in

14  accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and any

15  applicable Bankruptcy Rules and Local Bankruptcy Rules, and such procedures as may be fixed by

16  order of this Court; provided, however, that Shattuck Hammond shall not be required to file

17  monthly, interim or final fee applications; and it is further

18       **ORDERED** that the application of the indemnification provision of the Revised

19  Engagement Letter is approved in its entirety; provided, however, that such indemnification shall

20  not apply to any claims that are found in a final judgment by a court of competent jurisdiction (not

21  subject to further appeal) to have resulted from Shattuck Hammond's willful misconduct or gross

22  negligence in performing the activities described in the Original Engagement Letter or the Revised

23  Engagement Letter; and it is further

24       **ORDERED** that Debtor is authorized to pay Shattuck Hammond's fees and to reimburse

25  Shattuck Hammond for its costs and expenses as provided in the Revised Engagement Letter,

26  including, without limitation, the fees, disbursements, and other charges of Shattuck Hammond's

27  counsel (which counsel shall not be required to be retained pursuant to § 327 of the Bankruptcy

28  Code or otherwise); and it is further

Exhibit A
3

**ORDERED** that notwithstanding anything to the contrary in the Bankruptcy Code, the

Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee

applications, in light of services to be provided by Shattuck Hammond and the structure of Shattuck

Hammond's compensation pursuant to the Revised Engagement Letter, Shattuck Hammond and its

professionals shall be excused from maintaining time records as set forth in Local Bankruptcy Rule

2016-2 and the United States Trustee Fee Guidelines in connection with the services to be rendered

pursuant to the Revised Engagement Letter; and it is further

**ORDERED** that Debtor is authorized to take all actions necessary to effectuate the relief

granted pursuant to this order in accordance with the Application; and it is further

**ORDERED** that this Court shall retain jurisdiction over any issues arising from the

implementation or interpretation of this Order.

Dated: _____, 2011

_____
THE HONORABLE SHERI BLUEBOND
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Revised Engagement Letter**

WEST: 30735546

# Morgan Keegan

M E M B E R   F I N R A , S I P C

Morgan Keegan & Company, Inc.
601 California Street, Suite 2150
San Francisco, CA  94108
415.788.6900
Fax 415.788.0822

March 29, 2011

Board of Trustees
c/o Mr. Robert Fuller
Executive Vice President and Chief Operating Officer
Downey Regional Medical Center
11500 Brookshire Avenue
Downey, CA 90241

RE:    Revised Engagement Letter for Investment Banking Services
*In re Downey Regional Medical Center-Hospital, Inc.*
Chapter 11 Case No. 2:09-bk-34714-BB (the "Case")

Dear Robert,

In accordance with our Engagement Letter dated as of December 28, 2009 (the "Original Engagement Letter"), we are pleased to submit to you this Revised Engagement Letter which sets forth the terms pursuant to which Morgan Keegan & Company, Inc. (formerly known as Shattuck Hammond Partners, a division of Morgan Keegan & Company, Inc., but referred to herein as "Shattuck Hammond") shall continue to provide investment banking services to Downey Regional Medical Center (the "Hospital"), as set forth herein.

## 1. Modifications to Engagement and Scope of Services

Upon the bankruptcy court's approval of Shattuck Hammond's retention by order entered on March 2, 2010 (the "Shattuck Hammond Retention Order"), the Hospital retained Shattuck Hammond as its exclusive investment banker as of December 14, 2009 to assist in the evaluation, negotiation and possible implementation of one or more transactions including: a sale (whether implemented through a plan of reorganization (a "Plan") or by a court-approved sale pursuant to Bankruptcy Code §363), strategic affiliation, joint venture, or partnership as more fully described below (a "Transaction").

Pursuant to the Original Engagement Letter, Shattuck Hammond agreed to provide general services to assist Debtor in the evaluation or consummation of a Transaction. Debtor is now actively pursuing a standalone exit from the Chapter 11 case. It is Shattuck Hammond's understanding that Debtor's need for Shattuck Hammond's investment banking services has been substantially reduced as Debtor pursues this standalone exit from the Chapter 11 Case.

Shattuck Hammond has provided investment banking services within the scope of the Shattuck Hammond Retention Order and the Original Engagement Letter. On the terms and conditions set forth herein, Shattuck Hammond will continue to provide the specific services described in the Shattuck Hammond Retention Order and the Original Engagement Letter under Section 2, "Scope of Services."

Downey Regional Medical Center
March 29, 2011
Page 2

## 2. Compensation

**2.1.    Termination of Incentive Fee.** Any and all of Shattuck Hammond's rights with respect to the incentive fee, as described in the Original Engagement Letter, are hereby terminated.

**2.2.    Elimination of Monthly Payments and Transition to Hourly Fees.** The monthly flat fee of $50,000 set forth in the Original Engagement Letter is hereby terminated as of March 15, 2011. Thereafter, all fees will be charged by each individual Shattuck Hammond employee shall be at the hourly rates described herein, up to an aggregate monthly maximum of $25,000, and shall be payable on the 15th of each month, subject to the Bankruptcy Court's approval of this Revised Engagement Letter. The applicable hourly rates are as follows:

| | |
|---|---|
| Managing Director | $875 per hour |
| Vice President/Senior Vice President | $725 per hour |
| Associate | $500 per hour |
| Analyst | $300 per hour |

**2.3.    Payment in Settlement of Outstanding Monthly Payments of Fees and Expenses.** Upon the Bankruptcy Court's entry of an order approving this Revised Engagement Letter and such order becoming a final order, the Hospital shall immediately pay to Shattuck Hammond $450,000 (the "Catch-Up Payment"), in full and final settlement of all outstanding Shattuck Hammond invoices for fees and expenses through March 15, 2011.

## 3. Expenses

In addition to the hourly fees payable by the Hospital to Shattuck Hammond hereunder, the Hospital shall reimburse Shattuck Hammond for its travel and other reasonable out-of-pocket expenses incurred in connection with or arising out of Shattuck Hammond's activities under or contemplated by, this Revised Engagement Letter. Shattuck Hammond may invoice the Hospital for such expenses monthly during the term of this Revised Engagement Letter and thereafter. The Hospital shall pay all such expense invoices promptly.

## 4. Term and Termination

This Revised Engagement Letter and Shattuck Hammond's engagement hereunder may be terminated by either the Hospital or Shattuck Hammond effective upon ten (10) days' prior written notice thereof to the other party; provided, however, that (a) unless the termination was by the Hospital for Shattuck Hammond's willful misconduct or gross negligence, termination of Shattuck Hammond's engagement hereunder shall not affect the Hospital's obligations set forth in Article I and Sections A and D of Article III of the attached Standard Terms and Conditions which obligations shall continue, (b) unless such termination was based upon Shattuck Hammond's gross negligence or intentional misconduct, Shattuck Hammond shall be entitled to all fees paid or payable to Shattuck Hammond hereunder through the effective date of such termination, and (c) unless such termination was based upon Shattuck Hammond's gross negligence or intentional misconduct any such termination of Shattuck Hammond's engagement hereunder shall not affect the Hospital's obligation to reimburse Shattuck Hammond's expenses accruing through the effective date of such termination.

Downey Regional Medical Center
March 29, 2011
Page 3

## 5.  Other Agreements

(A)    The Standard Terms and Conditions attached hereto which set forth additional terms and conditions pertaining to Shattuck Hammond's engagement hereunder are an integral part of this Revised Engagement Letter and the terms thereof are incorporated by reference herein and are hereby agreed to by the parties.

(B)    This Revised Engagement Letter may be executed in counterparts, each of which together shall be considered a single document.

We are pleased to accept the modifications to our engagement described herein and look forward to continuing our work with the Hospital.  Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Revised Engagement Letter, which shall, subject to approval by the Court, constitute a binding agreement between Shattuck Hammond and the Hospital as of the date appearing above.

Very truly yours,

**Morgan Keegan & Company, Inc.**

By: _____

Name:   Michael B. Hammond

Title:   Managing Director

Accepted and agreed to:

Downey Regional Medical Center

By: _____
Name: _____
Title: _____
Tax Identification Number (TIN):   95-1903935

## STANDARD TERMS AND CONDITIONS

The following standard terms and conditions (the "Standard Terms and Conditions") set forth below are an integral part of the Revised Engagement Letter between Shattuck Hammond Partners, a division of Morgan Keegan & Company, Inc. ("Shattuck Hammond"), and Downey Regional Medical Center (the "Company") dated March 29, 2011 (the "Engagement Letter"), attached hereto.  The parties have indicated their acceptance of the Standard Terms and Conditions by execution of the Revised Engagement Letter.

## ARTICLE I
## INDEMNIFICATION

A.      In partial consideration for the services to be rendered under the Revised Engagement Letter, the Company hereby indemnifies and holds harmless Shattuck Hammond, firms associated or affiliated with Shattuck Hammond, and its and their members, partners, principals, directors, officers, employees, affiliates, agents and any persons retained in connection with the performance of the services described in the Revised Engagement Letter (each an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any and all claims, losses, damages, deficiencies, liabilities (joint or several), lawsuits, judgments, costs and expenses (including reasonable fees and expenses of Shattuck Hammond's attorneys) (collectively, "Damages"), as the same are incurred, relating to or arising out of Shattuck Hammond's activities hereunder, except to the extent that any Damages are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from Shattuck Hammond's willful misconduct or gross negligence in performing the activities described herein

B.      In the event that the foregoing indemnity is unavailable to the Indemnified Parties or insufficient to hold them harmless, then the Company shall contribute to the amount paid or payable as a result of such Damages in such proportion as is appropriate to reflect not only the relative benefits received by the Company on the one hand and the Indemnified Parties on the other, but also the relative fault of the Company on the one hand and the Indemnified Parties on the other that resulted in such Damages, as well as any relevant equitable considerations.  Notwithstanding the foregoing provisions of this paragraph, Shattuck Hammond's share of the liability hereunder shall not exceed the amount of fees actually received by it under the Revised Engagement Letter (excluding any amounts received as reimbursement of legal fees and expense incurred by it).

C.      The indemnity and contribution provisions of this Article I shall remain in full force and effect regardless of the termination of this Agreement.

## ARTICLE II
## INFORMATION

A.    The Company shall make available to Shattuck Hammond all financial and other information requested by it to carry out its engagement hereunder and will provide Shattuck Hammond with access to the Company's officers, directors, employees, independent accountants and legal counsel.  The Company agrees that Shattuck Hammond in rendering its services to the Company under the Revised Engagement Letter will be entitled to rely entirely, without independent verification, upon (1) information supplied by the Company, which information the Company represents and warrants shall at all times during the period of Shattuck Hammond's engagement hereunder be complete and accurate in all material respects and not misleading, and (2) publicly available information.  The Company further represents and warrants that any projections provided by it to Shattuck Hammond shall have been prepared in good faith and will be based upon assumptions that, in light of the circumstances under which they are made, are reasonable.

B.    In connection with its engagement by the Company pursuant to this Revised Engagement Letter, the Company may be supplying to Shattuck Hammond certain confidential information concerning the Company and its businesses, operations and plans ("Confidential Information").  Shattuck Hammond hereby agrees to treat with confidentiality all Confidential Information provided by and relating to the Company and to use such Confidential Information solely for purposes consistent with its engagement as described herein.  Shattuck Hammond agrees not to disclose Confidential Information to any third party (other than directors, officers, employees or outside advisors of Shattuck Hammond) without the prior written consent of the Company.  The foregoing provisions shall not be applicable to any information that was known to Shattuck Hammond prior to the date of this Revised Engagement Letter, that is publicly made available or otherwise becomes public knowledge other than through a breach by Shattuck Hammond of its agreements contained herein, or that is required to be disclosed by Shattuck Hammond by judicial or administrative process in connection with any action, suit, proceeding or claim or otherwise by applicable law.  Information shall be deemed "publicly available" if it becomes a matter of public knowledge, is in the public domain, is contained in materials available to the public or is obtained by Shattuck Hammond from any source other than the Company (or the Company's directors, officers, employees or outside advisors), provided that such source is not, to the knowledge of Shattuck Hammond, bound by a confidentiality agreement with the Company with respect to such information.

## ARTICLE III
## ADDITIONAL AGREEMENTS

A.    Shattuck Hammond has been retained as an independent contractor with no fiduciary or agency relationship with the Company or to any other party.  All opinions, reports, analyses and advice (oral or written) rendered by Shattuck Hammond pursuant to the Revised Engagement Letter are intended solely for the benefit and use of the officers, directors, shareholders and legal and financial advisors of the Company in considering the matters to which the Revised Engagement Letter relates, and may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to, without the prior written consent of Shattuck Hammond; provided, however, any Fairness Opinion delivered by Shattuck Hammond may be reproduced in full in any

Company proxy statement which is required to be delivered in connection with a transaction. In addition, the Company agrees that any materials prepared with Shattuck Hammond's assistance, including any financing memoranda, shall not be used, reproduced, disseminated, quoted or referred to at any time or in any manner except with the prior written consent of Shattuck Hammond. Any termination of Shattuck Hammond's engagement under this Revised Engagement Letter shall not affect the Company's obligation to comply with this section.

B.      The Company agrees that Shattuck Hammond may place advertisements in financial and other news media at its own expense, describing its services to the Company under the Revised Engagement Letter.

C.      Any notice given under this Revised Engagement Letter shall be in writing and shall be mailed or delivered:  (a) if to the Company, at its offices at 11500 Brookshire Avenue, Downey, CA 90241, Attn:  Mr. Robert Fuller ; and (b) if to Shattuck Hammond, at its offices at 630 Fifth Avenue, New York, NY 10111, Attention: Chief Operating Officer.

D.      The validity and interpretation of this Revised Engagement Letter shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).  The Company irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court in the Case for the purpose of any suit, action or other proceeding arising out of or related to this Revised Engagement Letter, which is brought by or against the Company and agrees not to commence any such action, suit or proceeding other than in such courts.  The parties hereby waive any right to trial by jury in connection with any dispute, action or proceeding arising out of or related to this Revised Engagement Letter, or any matter contemplated hereby.

E.      This Revised Engagement Letter incorporates the entire understanding of the parties and supersedes all previous agreements and understandings between Shattuck Hammond and the Company relating to the subject matter hereof.  This Revised Engagement Letter may not be amended or modified except in writing, executed by the Company and Shattuck Hammond.  This Revised Engagement Letter shall be binding upon Shattuck Hammond and the Company and their respective successors and assigns.  Neither party may assign or transfer its rights or obligations under this Revised Engagement Letter without the prior written consent of the other party, except that Shattuck Hammond may without consent assign or transfer this Revised Engagement Letter to a successor to the business of Shattuck Hammond.  This Engagement Letter does not confer any rights upon any stockholder, owner, partner or member of the Company, or any other person not a party hereto.

F.      To help the Federal government fight the funding of terrorism and money laundering activities, Federal law requires Shattuck Hammond, as a member of FINRA, to obtain, verify, and record information that identifies each entity that engages Shattuck Hammond. The Company agrees to provide promptly such information as Shattuck Hammond may reasonably request in this regard.

LISA HILL FENNING (SBN 89238)
HARRY GARNER (SBN 254942)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:   213.243.4000
Facsimile:    213.243.4199
Lisa.Fenning@aporter.com
Harry.Garner@aporter.com

*Counsel to the Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:09-bk-34714-BB |
| DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., a California non-profit, public benefit corporation, | Chapter 11 |
| Debtor. | **DECLARATION OF MICHAEL HAMMOND IN SUPPORT OF APPLICATION OF DEBTOR FOR ORDER MODIFYING TERMS OF EMPLOYMENT OF SHATTUCK HAMMOND PARTNERS, N/K/A MORGAN KEEGAN, AS INVESTMENT BANKER** |
| Tax I.D. 95-1903935 | [NO HEARING REQUIRED UNLESS REQUESTED PER LOCAL BANKRUPTCY RULE 2014-1(b)(1)(C)] |

I, Michael Hammond, declare as follows:

  1.  I am a managing director of Morgan Keegan, formerly known as Shattuck Hammond Partners, whose business offices are located at 630 Fifth Avenue, New York, New York.  The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently testify to the matters set forth herein.

  2.  This Declaration is made in support of the Application for Order Modifying the Terms of the Employment of Shattuck Hammond Partners ("**Shattuck Hammond**", and now

known as Morgan Keegan but referred to herein as Shattuck Hammond) as Investment Banker (the "**Application**"), filed by Downey Regional Medical Center-Hospital, Inc., the debtor and debtor in possession the above-captioned case (the "**Debtor**" or "**Hospital**").  Unless stated otherwise, all capitalized terms used herein have the same meaning as ascribed to them in the accompanying Application.

3.       Shattuck Hammond is an investment banking and financial advisory firm with experience dealing with clients across a variety of healthcare industry sectors, including hospitals, senior living, managed care, pharmaceuticals, medical distribution and outsourcing, and healthcare information technology.  Shattuck Hammond also has provided investment banking services to specialty not-for-profit organizations.

4.       Shattuck Hammond was first retained as of December 14, 2009, to provide investment banking services, including assistance in the evaluation, negotiation and possible implementation of one or more transactions including a sale, strategic affiliation, joint venture, or partnership (a "**Transaction**"), pursuant to an engagement letter approved by the Court (the "**Original Engagement Letter**").  The retention of Shattuck Hammond as investment banker to Debtor was specifically required by DIP lender Healthcare Finance Group ("**HFG**") and Wells Fargo Bank, National Association as Indenture Trustee (the "**Indenture Trustee**," and collectively with HFG, the "**Lenders**").  The Lenders wanted a large, nationally recognized investment banking firm working with Debtor to assure that all affiliation or asset sale possibilities were fully explored, and to assure the Lenders, the Committee, and other constituencies that Debtor would obtain a reasonable and favorable outcome with respect to a Transaction.

5.       Shattuck Hammond's work complemented the services offered by Debtor's other restructuring professionals, including HNB Capital LLC ("**HNB Capital**"), Debtor's previously retained investment banker with respect to the HFG DIP loan and Debtor's other loan and refinancing transactions, and Focus Management ("**Focus**"), Debtor's financial advisor.

6.       Pursuant to its Original Engagement Letter, Shattuck Hammond agreed to provide general services to assist Debtor in the evaluation or consummation of a Transaction.  Shattuck Hammond's compensation under the Shattuck Hammond Application and the Original Engagement

Letter consists of (a) a retainer of $75,000, which was paid and applied to the period prior to January 15, 2010 (the "**Retainer**"); (b) a monthly fee of $50,000, payable on the 15th of each month, beginning January 15, 2010, until the consummation of a Transaction (the "**Monthly Fee**"); (c) monthly reimbursement for its travel and other reasonable out-of-pocket expenses (the "**Expenses**"); and (d) upon consummation of a Transaction, a minimum incentive fee of $500,000, based on the value of the Transaction (the "**Incentive Fee**").  The formula for calculating the Incentive Fee is based not only on amounts paid as the purchase price in a Transaction, but also any permanently committed working capital or funds for capital improvements.

7.     Debtor is now actively pursuing a standalone exit from the Chapter 11 Case.  It is Shattuck Hammond's understanding that Debtor's need for Shattuck Hammond's investment banking services has been substantially reduced as Debtor pursues this standalone exit from the Chapter 11 Case.  Given Shattuck Hammond's reduced role, Debtor and Shattuck Hammond have negotiated the terms of a Revised Engagement Letter pursuant to which they have agreed (i) to settle the amount and authorize the immediate payment of Shattuck Hammond's outstanding invoices; (ii) to change Shattuck Hammond's compensation structure from the flat $50,000 Monthly Fee to billing and payment on an hourly basis for services rendered as needed, up to an aggregate monthly maximum of $25,000; and (iii) to terminate Shattuck Hammond's right to the Incentive Fee.  Shattuck Hammond will continue to provide the specific services described in the Shattuck Hammond Application and the Original Engagement Letter, but will only be compensated on an hourly basis as set forth in the Revised Engagement Letter.

8.     As a condition for accepting its reduced role, the transition from the Monthly Fee to hourly fees, and termination of the Incentive Fee, Shattuck Hammond has requested that Debtor make immediate payment of all outstanding professional fees and expenses in the reduced amount of $450,000 (the "**Catch-Up Payment**").  Shattuck Hammond has agreed that its ongoing fees will be charged at the hourly rates described in the Revised Engagement Letter, up to an aggregate monthly maximum of $25,000, that Expenses (if any) will be reimbursed on a monthly basis in the ordinary course, and that the Incentive Fee will be terminated.

9.     Shattuck Hammond restates that it will not share or agree to share any compensation

to be paid by Debtor in connection with services to be performed after the Petition Date with any other person.

10.     Shattuck Hammond continues to understand that Debtor has retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals, such as HNB Capital and Focus, to integrate any respective work conducted by the professionals on behalf of Debtor.

11.     Neither Shattuck Hammond nor any of its staff hold or represent any interest adverse to Debtor or its estate.

12.     Shattuck Hammond is not related or connected to and, to the best of my knowledge, no other member of Shattuck Hammond's staff is related or connected to, Debtor, its creditors, any other party in interest, their respective attorneys, or the United States Trustee for Region 16 or any employee in the offices thereof.

13.     Neither Shattuck Hammond nor any of its staff is or was, within two years before the date of the filing of the petition, a director, officer, or employee of Debtor.

14.     Shattuck Hammond has been advised of and has agreed to accept employment subject to the provisions of Bankruptcy Code § 328(a).  Shattuck Hammond understands that, notwithstanding the approval of its employment by the Court in accordance with the terms set forth in this Application, the Court may allow compensation different from the compensation proposed above and in the Revised Engagement Letter if those terms prove to have been improvident in light of developments that could not have been anticipated at the time the Application was approved.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of March 2011.


_____
MICHAEL HAMMOND
Managing Director, Shattuck Hammond

LISA HILL FENNING (SBN 89238)
HARRY GARNER (SBN 254942)
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:    213.243.4000
Facsimile:    213.243.4199
Lisa.Fenning@aporter.com
Harry.Garner@aporter.com

*Counsel to the Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | Case No.: 2:09-bk-34714-BB |
|---|---|
| DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., a California non-profit, public benefit corporation, | Chapter 11 |
| Debtor. | **DECLARATION OF ROBERT E. FULLER IN SUPPORT OF APPLICATION OF DEBTOR FOR ORDER MODIFYING TERMS OF EMPLOYMENT OF SHATTUCK HAMMOND PARTNERS, N/K/A MORGAN KEEGAN, AS INVESTMENT BANKER** |
| Tax I.D. 95-1903935 | [NO HEARING REQUIRED UNLESS REQUESTED PER LOCAL BANKRUPTCY RULE 2014-1(b)(1)(C)] |

I, Robert E. Fuller, declare as follows:

1.    I am the Chief Operating Officer ("**COO**") and Executive Vice President of Downey Regional Medical Center-Hospital, Inc., the debtor in the above-captioned Chapter 11 case (referred to herein as the "**Hospital**" or "**Debtor**"). I have been associated with the Hospital in one form or another since 1998. Prior to becoming the Hospital's COO, I was the chief operating officer of a health plan brokerage affiliated with the Hospital, and ran my own law firm of which the Hospital

was a client.  I have been COO of the Hospital since 2003.  As COO, I am familiar with the hospital's day-to-day operations, business affairs, and books and records.

2.      I submit this declaration (the "**Declaration**") in support of Debtor's Application for Order Modifying the Terms of the Employment of Shattuck Hammond Partners ("**Shattuck Hammond**", and now known as Morgan Keegan but referred to herein as Shattuck Hammond) as Investment Banker (the "**Application**").  Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of Debtor's senior management, my review of relevant documents, reports, and other information provided by the Hospital's senior management, and my familiarity with Debtor's books and records. Unless stated otherwise, all capitalized terms used herein have the same meaning as ascribed to them in the accompanying Application.  If I were called to testify, I could and would testify competently to the facts set forth herein.

3.      Shattuck Hammond was first retained as of December 14, 2009, to provide investment banking services, including assistance in the evaluation, negotiation and possible implementation of one or more transactions including a sale, strategic affiliation, joint venture, or partnership (a "**Transaction**"), pursuant to an engagement letter approved by the Court (the "**Original Engagement Letter**").  Beginning in late 2009 and through later 2010, Debtor pursued the consummation of a Transaction, first with Daughters of Charity Health System ("**DCHS**", and then with Presbyterian Intercommunity Hospital of Whittier, California ("**PIH**").

4.      The retention of Shattuck Hammond as investment banker to Debtor was specifically required by DIP lender Healthcare Finance Group ("**HFG**") and Wells Fargo Bank, National Association as Indenture Trustee (the "**Indenture Trustee**," and collectively with HFG, the "**Lenders**").  The Lenders wanted a large, nationally recognized investment banking firm working with Debtor to assure that all affiliation or asset sale possibilities were fully explored, and to assure the Lenders, the Committee, and other constituencies that Debtor would obtain a reasonable and favorable outcome with respect to a Transaction.

5.      The DCHS and subsequent PIH transactions did not close.  It became apparent from Debtor's and Shattuck Hammond's analysis that the other offers and proposals would yield far less

-2-

1   for Debtor's unsecured creditors than a standalone plan.  While a reorganization with an acquiring

2   third party through a Transaction is still a possibility, Debtor and its professionals have determined

3   that none of the potential participants in a Transaction has offered a proposal that provides for

4   distributions to unsecured creditors that are competitive with the projected distributions that Debtor

5   believes would be feasible under a standalone plan.

6        6.      Therefore, Debtor is now actively pursuing a standalone exit from the Chapter 11

7   Case.  Debtor's need for Shattuck Hammond's investment banking services has been substantially

8   reduced as Debtor pursues this standalone exit from the Chapter 11 Case.  Given Shattuck

9   Hammond's reduced role, Debtor and Shattuck Hammond have determined that a transition from a

10  flat monthly fee to hours-based compensation, including the termination of Shattuck Hammond's

11  incentive fee, is appropriate.

12       7.      Since its retention, Shattuck Hammond has provided investment banking services

13  within the scope of the original Shattuck Hammond Retention Order and the Original Engagement

14  Letter.  Shattuck Hammond will continue to provide the specific services described in the Shattuck

15  Hammond Application and the Original Engagement Letter, but will only be compensated on an

16  hourly basis, as set forth in the Revised Engagement Letter.  Debtor anticipates that during the

17  remainder of the Chapter 11 Case, Shattuck Hammond's services will be required on a much less

18  frequent, "as needed" basis to assist Debtor in the evaluation of a potential Transaction.  It is also

19  possible that Shattuck Hammond may assist in finding financing for the standalone plan.  As with

20  its original retention, Debtor intends for Shattuck Hammond's services to complement, and not

21  duplicate, the services to be rendered by any other professional retained in this case.

22       8.      Shattuck Hammond's compensation under the Shattuck Hammond Application and

23  the Original Engagement Letter consists of (a) a retainer of $75,000, which was paid and applied to

24  the period prior to January 15, 2010  (the "**Retainer**"); (b) a monthly fee of $50,000, payable on the

25  15th of each month, beginning January 15, 2010, until the consummation of a Transaction (the

26  "**Monthly Fee**"); (c) monthly reimbursement for its travel and other reasonable out-of-pocket

27  expenses (the "**Expenses**"); and (d) upon consummation of a Transaction, a minimum incentive fee

28  of $500,000, based on the value of the Transaction (the "**Incentive Fee**").  The formula for

-3-

1   calculating the Incentive Fee is based not only on amounts paid as the purchase price in a

2   Transaction, but also any permanently committed working capital or funds for capital

3   improvements.  As such, it is possible that Shattuck Hammond could contend that the Incentive Fee

4   is triggered by Debtor's exit financing in support of its plan of reorganization.

5          9.      Instead of the $50,000 Monthly Fee, Shattuck Hammond has agreed that its ongoing

6   fees will be charged at the rates described in the Revised Engagement Letter, up to an aggregate

7   monthly maximum of $25,000, that Expenses (if any) will be reimbursed on a monthly basis in the

8   ordinary course, and that the Incentive Fee will be terminated.  Because of the reduction in the

9   scope of its services, Shattuck Hammond's hourly fees will be substantially less than the Monthly

10  Fee.

11         10.     Debtor has paid Shattuck Hammond for Monthly Fees and Expenses only through

12  March 2010.  These payments were in compliance with the Court's Order Establishing Procedures

13  for Interim Compensation and Reimbursement of Professionals Pursuant to Sections 331 and 105(a)

14  of the Bankruptcy Code (the "**Interim Compensation Order**") [ECF Dkt. No. 171].  For the period

15  from April 2010 through March 2011, Debtor owes Shattuck Hammond approximately $600,000 in

16  allowed professional fees and expenses.  As a condition for accepting its reduced role, the transition

17  from the Monthly Fee to hourly fees, and termination of the Incentive Fee, Shattuck Hammond has

18  requested that Debtor make immediate payment of all outstanding professional fees and expenses in

19  the reduced amount of $450,000 (the "**Catch-Up Payment**").  The reduction of $150,000 in fees is

20  equivalent to approximately 25% of the net outstanding fees.

21         11.     Pursuant to the Interim Compensation Order, all estate professionals other than

22  Focus have been paid their allowed fees and expenses through March 2010, including amounts held

23  back for the first interim compensation period of September 2009 through December 2010.  Focus

24  has been paid its allowed fees and expenses through February 2011 (including amounts held back

25  for the period from February 2010 through April 2010), as required by a modification of the terms

26  of Focus' retention approved by the Court in September 2010.  The Court has previously directed

27  that all payments of outstanding professional fees and expenses are to be made on a *pro rata* basis

28  from available funds.

12.     As funds become available from increased revenues due to the improved rates in Debtor's new health plan contracts, Debtor will gradually bring all professionals more current or fully current, as cash flow permits.   Shattuck Hammond contends that, as a condition for transitioning to hourly fees and extinguishing its rights to the Incentive Fee, it should be assured of current payment of the Catch-Up Payment.  Shattuck Hammond is not receiving payment of any amounts greater than those already allowed pursuant to the Interim Compensation Order--the Catch-Up Payment is instead a settlement of outstanding invoices at a significant discount, and the payment is simply a matter of timing.  Payment of Shattuck Hammond's ongoing fees and expenses will remain subject to the Court's approval, and in accordance with Bankruptcy Code §§ 327 and 330, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of the Court.

26.     Debtor seeks to reduce the scope of Shattuck Hammond's services due to its pursuit of a standalone exit strategy, to transition Shattuck Hammond from a flat $50,000 monthly fee to billing and payment on an hourly basis for services rendered as needed (including termination of the Incentive Fee), and to authorize the immediate payment of certain outstanding Shattuck Hammond invoices in the form of the $450,000 Catch-Up Payment.

13.     To the best of Debtor's knowledge, and except as otherwise set forth in the Application or the Hammond Declaration, Shattuck Hammond and its employees (a) continue to be "disinterested persons" under § 101(14) of the Bankruptcy Code, as required by § 327(a) of the Bankruptcy Code; (b) neither hold nor represent any interest adverse to Debtor or its estate; and (c) have no material connection with Debtor, its creditors, any other party in interest, their respective attorneys, the United States Trustee, or any person employed in the office of the United States Trustee.

14.     Given these circumstances, and the market prices for Shattuck Hammond's services for engagements of this nature, Debtor believes that the terms described herein and in the Revised Engagement Letter are fair, reasonable, and market-based consistent with the standards set forth in Bankruptcy Code § 328(a).

///

///

-5-

1        I declare under penalty of perjury that the foregoing is true and correct and that this

2    Declaration was executed in Downey, California on March 29, 2011.

3

4    Robert E. Fuller

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
|---|---|

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  16501 Ventura Boulevard, Suite 440, Encino, California, 91436-2068.

A true and correct copy of the foregoing document described as **APPLICATION OF DEBTOR FOR ORDER MODIFYING TERMS OF EMPLOYMENT OF SHATTUCK HAMMOND PARTNERS, N/K/A MORGAN KEEGAN, AS INVESTMENT BANKER; EXHIBITS A-B; DECLARATIONS OF MICHAEL HAMMOND AND ROBERT FULLER** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(D), and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 29, 2011 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):

On March 29, 2011  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 29, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Ctrm. 1475
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 03/29/2011 | Mario Diaz | /s/ Mario Diaz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

32

| In re:<br>Downey Regional Medical Center-Hospital, Inc.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-bk-34714-BB |
| --- | --- |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**By Court NEF**

Ralph Ascher – ralphascher@aol.com
Vanessa L. Au – vanessaau@paulhastings.com
Richard D. Burstein – rburstein@ebg-law.com
Bruce J. Borrus – bborrus@riddellwilliams.com
Mark Bradshaw – mbradshaw@shbllp.com
Martin J. Brill – mjb@lnbrb.com
Richard W. Brunette – rbrunette@sheppardmullin.com
Richard D. Burnstein – rburstein@ebg-law.com
Russell Clementson – russell.clementson@usdoj.gov
Dawn M. Coulson – dcoulson@eyclaw.com
Jeffry A Davis – jadavis@mintz.com
Joseph R Dunn – jrdunn@mintz.com, dsjohnson@mintz.com, kjenckes@mintz.com
Lisa Hill Fenning – lisa.fenning@aporter.com
Keith D. Fraser – kfraser@cblh.com
Thomas M. Gaa – tgaa@bbslaw.com
Paul R. Glassman – glassmanp@gtlaw.com
Irving M. Gross  – img@lnbrb.com
Jodie M. Grotins – jgrotins@mcguirewoods.com
Brian T. Harvey – bharvey@buchalter.com
Michael J. Heyman – michael.heyman@klgates.com
Mark D. Houle – mark.houle@pillsburylaw.com
Ivan L. Kallick – ikallick@manatt.com, ihernandez@manatt.com
Raffi Khatchadourian – raffi@hemar-rousso.com
William H. Kiekhofer – wkiekhofer@mcguirewoods.com
Stuart I Koenig – Skoenig@cmkllp.com
Mitchell B Ludwig – mbl@kpclegal.com
Frank F. McGinn – ffm@bostonbusinesslaw.com
Byron Z. Moldo – bzmoldo@ecjlaw.com
Jane O'Donnell – jane.odonnell@doj.ca.gov
Randy P. Orlik – rorlik@coxcastle.com
Christopher E. Prince – cprince@lesnickprince.com
Nikhila Raj –nraj@fulbright.com
Daniel H. Reiss – dhr@lnbrb.com
Christopher O. Rivas – crivas@reedsmith.com
Johanna A Sanchez – jasanchez@lbbslaw.com
Nathan A. Schultz – schultzn@gtlaw.com
Steven J. Schwartz – sschwartz@dgdk.com
Nada I. Shamonki – nshamonki@mintz.com
Randye B. Soref – rsoref@buchalter.com
Adam M. Starr– starra@gtlaw.com
Derrick Talerico – dtalerico@loeb.com, kpresson@loeb.com, ljurich@loeb.com
David P. Tonner – operations@blueheroncapital.com
United States Trustee (LA) – ustpregion16.la.ecf@usdoj.gov
Andrew M. Valdez – avaldez@fulbright.com
Annie Verdries – verdries@lbbslaw.com
David Weinstein – david.weinstein@hro.com
Michael S Winsten – mike@winsten.com
Douglas Wolfe – dwolf@amscapital.com

**In re Downey Regional Medical Center-Hospital, Inc.**
**Case No. 2:09-bk-34714-BB**
**2002 Service List**

| | |
|---|---|
| **Debtor**<br>Downey Regional Medical Center<br>11500 Brookshire Avenue<br>Downey, CA 90241-7010 | **Counsel for Prime Healthcare Management, Inc.**<br>Shulman Hodges & Bastian LLP<br>Mark Bradshaw<br>8105 Irvine Center Drive, Suite 600<br>Irvine, CA 92618 |
| **Debtor's Counsel**<br>Counsel for Downey Regional Medical Center<br>Lisa Hill Fenning<br>Arnold & Porter LLP<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-5844 | **Counsel for Tenet Healthcare Corporation**<br>Tenet Health Care<br>Lynn E Iba<br>1500 South Douglass Road<br>Anaheim, CA  92806 |
| **UST**<br>Russell Clementson<br>United States Trustee<br>725 South Figueroa Street. 26th Floor<br>Los Angeles, CA 90017 | **Indenture Trustee for Secured Bonds**<br>California Health Facilities Financing Authority<br>915 Capitol Mall, Suite 590<br>Sacramento, CA 95814 |
| **Counsel to OCC**<br>Daniel Reiss<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>William W. Kannel<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| Martin J. Brill<br>Levene, Neale, Bender, Rankin & Brill<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA  90067 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Charles W. Azano<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>One Financial Center<br>Boston, MA 02011 |
| **Counsel for Blue Cross**<br>Creim Macias Koenig & Frey LLP<br>Stuart I. Koenig<br>633 West 5th Street, 51st Floor<br>Los Angeles, CA 90071 | **Counsel For Wells Fargo, N.A., Secured Creditor**<br>Jeffry Davis<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA  92130 |
| **Counsel for Siemens Medical Solutions, USA**<br>Reed Smith LLP<br>Marsha Houston, Christopher Rivas<br>355 South Grand Avenue, Suite 2900<br>Los Angeles, CA  90071 | Wells Fargo Corporate Trust Services<br>Attn: Gavin Wilkinson<br>625 Marquette Avenue<br>MAC N9311-115<br>Minneapolis, MN 55479 |
| **Counsel for Siemens Medical Solutions, USA**<br>Reed Smith LLP<br>Claudia Springer<br>2500 One Liberty Place<br>1650 Market Street<br>Philadelphia, PA  19103 | **Counsel for Healthcare Finance Group**<br>William Kiekhofer<br>Jodie M. Grotins<br>McGuireWoods<br>1800 Century Park East, 8th Fl.<br>Los Angeles, CA 90067 |

| | **Lienholders of Record**<br>Cerner Corp<br>2800 Rockcreek Parkway<br>Kansas City, MO  64117-2521 |
|---|---|
| **Secured Creditor**<br>Apollo Health Street Inc<br>2 Broad Street<br>Bloomfield, NJ  07003 | Cisco Systems Capital Corporation<br>170 West Tasman Drive<br>MS SJ13-3<br>San Jose, CA  95134 |
| **Counsel for Apollo Health Street, Inc.**<br>David R. Weinsten<br>Sharon Weiss<br>Holme, Roberts & Owen LLP<br>800 West Olympic Blvd., 45th Floor<br>Los Angeles, CA  90015 | Computer Sales International, Inc.<br>10845 Olive Boulevard<br>Suite 300<br>St. Louis, MO  63141 |
| **Lienholders of Record**<br>Alaris Medical System, Inc.<br>10221 Wateridge CR<br>San Diego, CA  92121 | Computer Sales International, Inc.<br>9990 Old Olive Street Road<br>St. Louis, MO  63141 |
| Bank of the West<br>9001 East Whittier Boulevard<br>Pico Rivera, CA  90660 | Dade Behring Financial Services<br>10 Riverview Drive<br>Danbury, CT 06810 |
| Bank of the West<br>201 North Civic Drive<br>Suite 360 B<br>Walnut Creek, CA  94596 | U.S. Bank National Association<br>400 City Center<br>Oshkosh, WI  54901 |
| Baxter Healthcare Corporation<br>Attn: Gail D Alesandro - DF6/3W<br>One Baxter Parkway<br>Deerfield, IL  60015 | United California Bank<br>9001 East Whittier Boulevard<br>Pico Rivera, CA  90660 |
| Cadwell Laboratories, Inc.<br>909 North Kellogg Street<br>Kennewick, WA  99336 | United California Bank<br>9001 East Whittier Boulevard<br>Pico Rivera, CA  90660 |

| **Lienholders of Record** | **Lienholders of Record** |
|---|---|
| E.I. Dupont De Nemours & CO<br>Susan Herr<br>Legal Department<br>1007 Market Street<br>D8052-2 Legal<br>Wilmington, DE  19898 | Olympus Corp<br>4 Nevada Drive<br>Lake Success, NY 1 1042-1114 |
| Employment Development Department<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA  94280-0001 | Philips Medical Capital LLC<br>1111 Old Eagle School Road<br>Wayne, PA  19087 |
| First Bank of Highland Park<br>1835 First Street<br>Highland Park, IL 60035 | Sanwa Bank<br>Attn: Rick Lopez, VP<br>Pico Rivera Office<br>9001 East Whittier Blvd<br>Pico Rivera, CA 90660 |
| First Interstate BK of Calif Trustee<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017 | Sovereign Bank<br>3 Huntington Quadrangle<br>Suite 101N<br>Melville, NY 11747 |
| Graybar Financial Services<br>201 West Big Beaver Road<br>Troy, MI 48084 | Terumo Cardiovascular System<br>6200 Jackson Road<br>Ann Arbor, MI 48103 |
| Johnson & Johnson Finance Corporation<br>501 George Street<br>New Brunswick, NJ 08901 | The BK of Tokyo, Ltd.<br>Legal Department<br>1251 Avenue of the Americas<br>New York, NY  10020 |
| Lanier Worldwide, Inc.<br>4667 North Royal Atlanta Drive<br>Tucker, GA 30084-3802 | |
| Leasing Associates of Barrington, Inc.<br>33 West Higgins Road<br>Suite 1030<br>South Barrington, IL 60010 | |

| | |
|---|---|
| **Other Interested Parties**<br>California Department of Public Health<br>Licensing and Certification<br>County of Los Angeles District Office<br>12440 East Imperial Highway, Suite 200<br>Norwalk, CA 90650 | **Other Interested Parties**<br>State of California - Health and Human Services<br>Agency<br>Medi-Cal<br>Department of Health Care Services<br>1501 Capital Avenue<br>Sacramento, CA 95814-5005 |
| California Department of Public Health<br>Health Facilities Inspection Division<br>Branch Chief: James L. Lawson. Ph.D., RN<br>12440 East Imperial Highway, Suite 522<br>Norwalk, CA 90650 | Centers for Medicare & Medicaid Services<br>7500 Security Boulevard<br>Baltimore MD 21244-1850 |
| Franchise Tax Board<br>Attention: Bankruptcy<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114 |
| Los Angeles County Tax Assessor<br>500 W. Temple St. Room 225<br>Los Angeles, CA 90012-2770 | Meyer Christian & Associates<br>Attn Tim Denton<br>15061 Springdale Street, Suite 113<br>Huntington Beach, CA  92649 |
| Office of the Attorney General<br>State of California<br>Registry of Charitable Trusts<br>1300 I Street, Suite 125<br>Sacramento, CA  95814-2951 | **Auditor**<br>BDO Seidman, LLP<br>3200 Bristol St., 4th Floor<br>Costa Mesa, CA  92626 |
| **Special Counsel to Debtor**<br>Pamela S. Kaufman<br>Hanson & Bridgett LLP<br>425 Market St., 26th Fl.<br>San Francisco, CA  94105 | **Financial Advisor to OCC**<br>Fenix Management LLC<br>1874 S. Pacific Coast Hwy, #378<br>Redondo Beach, CA  90277 |
| **Patient Care Ombudsman**<br>Susan Koenig<br>SAK Management Services, LLC<br>4055 W. Peterson Avenue, Suite 101<br>Chicago, IL  60646 | **Special Litigation Counsel to Debtor**<br>David McLeod<br>McLeod, Witham & Flynn LLP<br>707 Wilshire Blvd., Suite 4125<br>Los Angeles, CA  90017 |
| | |

| Request for Special Notice Parties | Request for Special Notice Parties |
|---|---|
| **Counsel to Suzanne Koenig Patient Care Ombudsman**<br>Buchalter Nemer<br>Randy Soref<br>Brian Harvey<br>1000 Wilshire Boulevard, Suite 1500<br>Los Angeles, CA 90017 | **Counsel for Applecare Medical Group**<br>Eric Klein<br>Sheppard Mullin Richter & Hampton LLP<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067 |
| **Counsel to The Regents of the Univ. of California**<br>Charles F. Robinson and Eric K Behrens<br>University of Southern California<br>Office of the General Counsel<br>111 Franklin Street, 89th Floor<br>Oakland, CA 94607-5200 | **Counsel to Blythe Ventures, Inc. dba Windsor Gardens of Long Beach**<br>Alexander Merino<br>Merino Yebri LLP<br>1880 Century Park East<br>Suite 1100<br>Los Angeles, CA 90067 |
| **Counsel to United PacificCare**<br>Karl Block<br>Loeb & Loeb<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067 | **Counsel to Edmund G. Brown, Jr.**<br>Office of the Attorney General<br>Wendi A. Horwitz<br>300 S. Spring St., Suite 1702<br>Los Angeles, CA 90013 |
| **Counsel to Cisco Systems Capital Corporation**<br>Lawrence M. Schwab<br>Gaye Nell Heck<br>Bialson, Bergen & Schwab<br>2600 El Camino Real, Suite 300<br>Palo Alto, CA 94306 | **Counsel to Presbyterian Intercommunity Hospital**<br>Mark Kadzielski & Andrea Valdez<br>Fulbright & Jaworski LLP<br>555 South Flower Street, Suite 4100<br>Los Angeles, CA 90071 |
| **Counsel to Stephen Wen & Associates Architects**<br>Stephen W. Reed<br>Reed & Brown LLP<br>35 N. Lake Avenue, Suite 960<br>Pasadena, CA 91101-1819 | **Counsel to Presbyterian Intercommunity Hospital**<br>Michael Parker<br>Fulbright & Jaworski LLP<br>300 Covent Street, Suite 2200<br>San Antonio, TX 78205-3792 |
| **Counsel to Philips Healthcare**<br>Bruce J. Borrus<br>Riddell Williams p.S.<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154 | **Counsel to Presbyterian Intercommunity Hospital**<br>Kevin Duthoy<br>Bewley Lassleben & Miller<br>13215 E. Penn Street, Suite 510<br>Whittier, CA 90602 |
| **Counsel to Health Facilities Financing Authority**<br>Jane O'Donnell, Deputy Attorney General<br>1300 I Street, Suite 125<br>P.O. Box 944255<br>Sacramento, CA 94244 | Ricoh Business Solutions<br>c/o Ikon Office Solutions<br>Recovery & Bankruptcy Group<br>3920 Arkwright Road, Suite 400<br>Macon, GA 31210 |
| **Counsel to National Fire & Marine Ins. Co.**<br>Sonnenschein Nath & Rosenthal LLP<br>Robert B. Miller<br>Stefanie L. Wowchuk<br>233 S. Wacker, Suite 7800<br>Chicago, IL 60606 | **Counsel to National Fire & Marine Ins. Co.**<br>Lesnick Prince LLP<br>Christopher E. Prince<br>185 Pier Avenue, Suite 103<br>Santa Monica, CA 90405 |

| **Counsel to MidCap Financial LLC**<br>**VEDDER PRICE P.C.**<br>1633 Broadway, 47th Floor<br>New York, New York 10019<br>Attention: Michael J. Edelman, Esq. | **Counsel to MidCap Financial LLC**<br>**VEDDER PRICE P.C.**<br>222 North LaSalle Street, Suite 2600<br>Chicago, Illinois 60601<br>Attention: Paul Hoffman, Esq. |
| --- | --- |
| **Counsel to MidCap Financial LLC**<br>**ARENT FOX LLP**<br>Gas Company Tower<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA 90013<br>Attention: Aram Ordubegian, Esq. | |